KENJI M. PRICE #10523
United States Attorney
District of Hawaii

JEREMY J. BUTLER
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: Jeremy.Butler@usdoj.gov

Attorneys for Defendant
UNITED STATES DEPARTMENT OF STATE,
U.S. EMBASSY TOKYO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACK STONE,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF STATE; U.S. EMBASSY TOKYO,<br><br>Defendants. | CIVIL NO. 19-00065 JAO-WRP<br><br>RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO REISSUE MINOR'S PASSPORT [ECF NO. 45]; EXHIBIT "1"; CERTIFICATE OF SERVICE<br><br>HRG DATE: October 25, 2019<br>TIME: 10:30 a.m.<br>JUDGE: Hon. Jill A. Otake |

RESPONSE TO PLAINTIFF'S
EMERGENCY MOTION TO REISSUE MINOR'S PASSPORT

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... i

I. Procedural Background .................... 1

II. Jurisdiction and Sovereign Immunity .................... 3

III. The Effects of an APA Claim on this Action. .................... 6

A. Plaintiff Has Not Established He is Likely to Succeed on the Merits of His Claim .................... 8

B. Plaintiff Cannot Demonstrate a Likelihood of Irreparable Harm .................... 13

C. Granting a Preliminary Injunction Would Harm Defendant, Third Parties, and the Public Interest .................... 15

D. Scope of Relief .................... 17

IV. Venue is Not Proper .................... 18

V. Standing .................... 20

VI. Conclusion .................... 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Asarco, Inc. v. U.S. Envtl. Prot. Agency*,
616 F.2d 1153 (9th Cir. 1980) ........ 10

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) ........ 15

*Camp v. Pitts*,
411 U.S. 138 (1973) ........ 7,8

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ........ 13

*City of Los Angeles. v. Lyons*,
461 U.S. 95 (1983) ........ 14

*Connection Distrib. Co. v. Reno*,
154 F.3d 281 (6th Cir. 1998) ........ 16

*Cornish v. Dudas*,
540 F. Supp. 2d 61 (D.D.C. 2008) ........ 15

*Coury v. Prot*,
85 F.3d 244 (5th Cir. 1996) ........ 19

*Ctr. for Food Safety v. Salazar*,
898 F. Supp. 2d 130 (D.D.C. 2012) ........ 7

*Delaware Valley Fin. Grp., Inc. v. Principal Life Ins. Co.*,
640 F. Supp. 2d 603 (E.D. Pa. 2009) ........ 8

*Downey v. U.S.*,
CIV. NO. 19-00406 LEK-WRP, 2019 WL 4143288
(Aug. 30, 2019 D. Haw.) ........ 19

<u>Cases</u> <u>Page(s)</u>

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014)....................7

*Drakes Bay Oyster Co. v. Salazar*,
921 F. Supp. 2d 972 (N.D. Cal. 2013)....................3

*Haig v. Agee*,
453 U.S. 280 (1981)....................16

*Heckler v. Ringer*,
466 U.S. 602 (1984)....................6

*Hughes v. United States*,
953 F.2d 531 (9th Cir. 1992)....................4

*In re Donald*,
328 B.R. 192 (B.A.P. 9th Cir. 2005)....................19

*Johns v. Cty. of San Diego*,
114 F.3d 874 (9th Cir. 1997)....................21

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986)....................19

*Lewis v. Casey*,
518 U.S. 343 (1996)....................20

*Long v. JP Morgan Chase Bank, Nat. Ass'n*,
848 F. Supp. 2d 1166 (D. Haw. 2012)....................3

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983)....................7

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006)....................6

Cases Page(s)

*Nken v. Holder*,
556 U.S. 418 (2009) ....................16

*Powelson v. U.S.*,
150 F.3d 1103 (9th Cir. 1998) ....................4

*Power v. Barnhart*,
292 F.3d 781 (D.C. Cir. 2002) ....................6

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*,
499 F.3d 1108 (9th Cir. 2007) ....................10

*Salt Pond Assocs. v. U.S. Army Corps of Engineers*,
815 F. Supp. 766 (D. Del. 1993) ....................18

*San Luis & Delta-Mendota Water Auth. v. Locke*,
776 F.3d 971 (9th Cir. 2014) ....................7

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ....................20

*Sierra Forest Legacy v. Rey*,
577 F.3d 1015 (9th Cir. 2009) ....................17

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ....................13

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ....................6

*Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006) ....................7

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
136 F.3d 641 (9th Cir. 1998) ....................4

Cases Page(s)

*United States v. Mitchell*,
463 U.S. 206 (1983) ....................4

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) ....................17

*W. Watersheds Project v. Zinke*,
336 F. Supp. 3d 1204 (D. Idaho 2018) ....................6

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ....................16

*Williamson v. Osenton*,
232 U.S. 619 (1914) ....................19

*Winter v. Nat. Res. Def. Council*,
555 U.S. 7 (2008) ....................7

Statutes

5 U.S.C. § 700 ....................1

5 U.S.C. § 702 ....................1, 5

5 U.S.C. § 705 ....................17

22 U.S.C. § 213 ....................17

28 U.S.C. § 1346 .................... 3, 4, 5

28 U.S.C. § 1346(a)(2) ....................4

28 U.S.C. § 1346(c)-(g) ....................5

28 U.S.C. § 1361 ....................6

28 U.S.C. § 1391(e) ....................18

Statutes Page(s)

28 U.S.C. §§ 1331 ........................................ 3, 4

Pub. L. No. 106-113 § 236 ........................................ 11

Rules

Fed. R. Civ. P. 65 ........................................ 3, 6, 7

Regulations

22 C.F.R. 51.28 ........................................ 2, 3, 5, 17

22 C.F.R. § 51.28(a)(2) ........................................ 11

22 C.F.R. § 51.28(a)(3)-(5) ........................................ 11

22 C.F.R. § 51.28(a)(5) ........................................ 3, 12, 17

22 C.F.R. § 51.28(a)(5)(i) ........................................ 13

Other Authorities

72 Fed Reg. 10095 ........................................ 16

Wright and Miller 2019 ........................................ 4

Defendants, the U.S. Department of State, CA/OCS/CI, U.S. Embassy Tokyo (from herein the "Department of State") files the following Response to Plaintiff's Emergency Motion.[1] Plaintiff's Motion seeks to overturn a decision by a federal agency. However, review of agency decisions is controlled by the Administrative Procedure Act (APA), 5 U.S.C. § 700 et. seq. Plaintiff fails to establish a likelihood that he will prevail in an APA action. Furthermore, the Second Amended Complaint, as currently pled, does not establish this Court as the proper venue or that Plaintiff has standing for his claims. For these and the following reasons, Plaintiff's Motion should be denied.

## I. Factual & Procedural Background

On February 8, 2019, Plaintiff Jack Stone applied for a replacement passport for his son, M.S., at the U.S. Embassy in Tokyo, Japan.[2] (Doc. No. 11 at ¶¶ 20-21.; 45-27.) To apply for the passport, Plaintiff scheduled an interview with the Embassy, at which he was given an opportunity to submit a passport application and any supporting documentation. (Doc. No. 11 at ¶¶ 20-21.) Following the interview, on February 15, 2019, the Embassy notified Plaintiff that he would need to submit a written, notarized statement of consent from M.S.'s mother in order to

[1] The Defendant's position is that neither the U.S. Embassy nor the Office of Children's Issues are proper defendants in this case, and moves to dismiss those parties as Defendants. *See*, 5 U.S.C. § 702, 703.

[2] Plaintiff filed his lawsuit in this Court on February 6, 2019 prior to submitting a passport application on behalf of M.S. (Doc. No. 1.).

process the passport application. (Doc. No. 11-5.) The Embassy informed Plaintiff that failure to provide the document within 90 days could result in denial of the application. (*Id.*)

On June 4, 2019, the State Department issued a final decision and denied Plaintiff's request for a replacement passport for M.S. (Doc. No. 45-27.) Specifically, it stated:

> Thank you for applying for your child [M.S.] passport. Your child's passport application was submitted on February 8, 2019 at the American Embassy Tokyo. Since [M.S.] is under age 16, parent(s) or legal guardian(s) must execute the application on his behalf. An individual applying for a passport on behalf of a minor child must either obtain the consent of the non-applying parent or demonstrate sole authority to obtain a passport, as outlined in 22 C.F.R. 51.28. You submitted insufficient documentation to show sole authority to apply for, and receive your child's U.S. passport. Therefore, we are unable to issue the passport at this time and your child's application is denied. By law and per Department of State regulations, if additional evidence is not submitted within 90 days and the applicant has not requested additional time to submit such evidence, the application must be denied. The fee(s) are not refundable
>
> We will consider any evidence you may provide in the future. However, you will need to file a new application, submit all evidence and pay the appropriate fees.

(*Id.*)

Plaintiff's Complaint remained unserved for several months after this decision, even after this Court appointed pro bono counsel, and Plaintiff did not file his Second Amended Complaint until October 7, 2019. (Doc. No. 39.)

Plaintiff requests that "this Court issue an order to Defendants to reissue the child's lost or stolen passport, and (or in the alternative), hold that "exigent" and "special family circumstances" exist in this case within the meaning of 22 C.F.R. § 51.28(a)(5) such that the U.S. Embassy may and must re-issue the son's U.S. passport…" (*Id*. at 7-9.) On October 9, 2019, Plaintiff filed his Emergency Motion to Reissue Minor's Passport seeking injunctive relief for his claims in the Second Amended Complaint pursuant to Fed. R. Civ. P. 65. (Doc. No. 45.)

Plaintiff does not indicate that he has filed a second or additional application for a replacement passport for M.S. Defendants are not aware of any additional applications.

## II. Jurisdiction and Sovereign Immunity

As a threshold issue to resolving any request for a preliminary injunction, the Court must have subject matter jurisdiction. *Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972, 976 (N.D. Cal. 2013). Requesting injunctive relief, by itself, is not a basis for jurisdiction. *See Long v. JP Morgan Chase Bank, Nat. Ass'n*, 848 F. Supp. 2d 1166, 1180 (D. Hawaii 2012). It is a remedy and not a cause of action. Plaintiff's Second Amended Complaint alleges three jurisdictional bases for his cause of action: 28 U.S.C. §§ 1331, 1346 and 22 C.F.R. § 51.28.

Title 28 U.S.C. § 1331 provides "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, "[i]n an action against the United States, in addition to statutory authority granting subject matter jurisdiction, there must be a waiver of sovereign immunity." *Powelson v. U.S.*, 150 F.3d 1103, 1105 (9th Cir. 1998). Sovereign immunity prevents a party from suing the United States unless Congress waives that immunity by creating some cause of action via a statute. *United States v. Mitchell*, 463 U.S. 206, 2012 (1983); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998). Even if § 1331 provides jurisdiction in this case, it does not constitute a waiver of sovereign immunity. *Hughes v. United States*, 953 F.2d 531, 539 n.5 (9th Cir. 1992).

Plaintiff also cites to 28 U.S.C. § 1346 as a basis for jurisdiction, which is a statute where the Government has waived sovereign immunity. For example, 28 U.S.C. § 1346(a)(2) is the codification of the Tucker Act and provides for suits against the United States for money damages in contract actions. *See generally* 14 Fed. Prac. & Proc., § 3657 (Wright and Miller 2019.) Subsection (b) is a codification of the Federal Tort Claims Act, which provides for some suits against the United States sounding in tort. *Id*. at § 3658. But, Plaintiff's Second Amended Complaint, Emergency Motion, and other filings do not allege any facts

consistent with pursuing a contract action or a personal injury action. Therefore, § 1346 cannot be the basis for Plaintiff's suit.[3]

The remaining basis for suit is 22 C.F.R. § 51.28. This Federal Regulation does not provide a waiver of sovereign immunity. It also does not provide a basis for jurisdiction generally.

Therefore, Plaintiff's Second Amended Complaint fails to establish subject matter jurisdiction. However, in reading Plaintiff's Second Amended Complaint liberally, Plaintiff could assert a cause of action against the Federal Government pursuant to the APA. Title 5 U.S.C. § 702 of the APA waives the Government's sovereign immunity for suits that seek equitable relief only. Specifically, it states:

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under the color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is a dispensable party.

*Id*. Primarily, Plaintiff seeks declaratory and equitable relief compelling the State Department to act—specifically to re-issue a passport for his son. (Doc. No. 39 at 7-9.) He also cites federal regulations and claims the Government failed to

[3] The remaining subsections of § 1346, (c)-(g), are also clearly not applicable. Subsection (c) pertains to claims by the United States, which are not present. The Second Amended Complaint and other filings indicate that this case is not about a pension (subsection d), an action with the Internal Revenue Service (subsection e), pertaining to real property (subsection f) or a federal employee issue (subsection g).

properly apply them. (*Id*.) While Plaintiff does not cite the APA, his request against the Government, as alleged, could only be brought under the APA.[4]

### III. The Effects of an APA Claim on this Action

"The type of claim asserted in the complaint dictates the nature of the relief that may be afforded to the plaintiff." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 n.6 (9th Cir. 2006). The State Department's June 4, 2019, denial of Plaintiff's request to replace his son's passport was a final agency action. Because Plaintiff could only seek to review the State Department's decision under the APA, the governing APA standards and principles control in applying the analysis for a Fed. R. Civ. P. 65 injunction. *See, e.g.*, *W. Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204, 1218 (D. Idaho 2018).

[4] Plaintiff also does not claim he is seeking mandamus relief, but to the extent Plaintiff's claim for relief could be read as a claim for mandamus relief, such claim would also fail. Mandamus jurisdiction in federal courts is governed by 28 U.S.C. § 1361, which provides that, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is a "drastic "remedy that is "to be invoked only in extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). Courts have no mandamus jurisdiction to order an official to perform a discretionary duty. *Heckler*, 466 U.S. at 616 (1984); *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996) ("Courts do not have authority under the mandamus statute to order any government official to perform a discretionary duty."). "Generally speaking, a duty is discretionary if it involves judgment, planning or policy decisions." *Swan*, 100 F. 3d at 977. The Department's decision whether to issue M.S. a passport is a discretionary one, and in any event, it has already issued a final decision on the only application submitted to the Department on M.S.'s behalf.

The APA provides a limited cause of action for parties adversely affected by final agency action. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006). Challenging a discretionary administrative agency action like the State Department's June 4, 2019 decision is reviewed under the deferential standard of review embodied in the APA, which is to set aside only a decision that is arbitrary, capricious, and an abuse of discretion. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 94 (9th Cir. 2014). This is a narrow standard of review as courts defer to the agency's expertise. *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Generally, judicial review is limited to the administrative record compiled by the relevant agency and independent fact-finding by the district court is strongly disfavored. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

To obtain a Fed. R. Proc. 65 injunction, Plaintiff must show: (1) a likelihood of success on the merits; (2) irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that the public interest favors an injunction." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). When the Government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Unless Plaintiff meets his burden of establishing each of these elements in his favor, "a preliminary injunction is

inappropriate." *Delaware Valley Fin. Grp., Inc. v. Principal Life Ins. Co.*, 640 F. Supp. 2d 603, 616 (E.D. Pa. 2009). Plaintiff's request for a preliminary injunction should be denied as every factor resolves against the Plaintiff's requested relief.

A. Plaintiff Has Not Established He is Likely to Succeed on the Merits of His Claim

Plaintiff has the burden to prove a likelihood that the Department's decision denying M.S.'s passport application on June 4, 2019 was arbitrary and capricious based on the administrative record of evidence which was before the agency at the time the decision was made, and not in light of any additional facts or evidence later developed. Plaintiff cannot establish a likelihood of success without an administrative record, which has not been submitted to the Court. Review of agency action is limited to the administrative record compiled by the relevant agency as opposed to independent fact-finding by the district court. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Government was only properly served with this lawsuit on the week of October 8, 2019. (Doc. No. 44.) The Court provided the Government approximately one week to respond to Plaintiff's emergency motion. (Doc. No. 53.) It has not had time to compile and submit the administrative record.

Plaintiff has submitted many items which he labels as exhibits. He submits a declaration from himself (Doc. No. 45-2), photos of his living conditions (Doc.

No. 45-3), a dismissal from a Japanese Ministry of Foreign Affairs dated September 3, 2019, (Doc. No. 45-4), and a litany of other materials. (*See Generally* Doc. No. 45.) He does not indicate if these materials were before the State Department prior to June 4, 2019, and several of them could not have been because they are dated, on their face, after the Department's decision. The only references he has to the application process with the Embassy are at the end of his declaration. (Doc. No. 45-2 at 30; ¶¶ 118-120.) He does not provide a copy of his application. He only indicates he provided the State Department with M.S.'s birth certificate, social security card, and a copy of M.S.'s previous passport. (*Id.* at ¶ 118.)

However, Plaintiff argues that this Court should find "exigent or special family circumstances" exist now, and he requests the Court to consider these additional documents. (Doc. No. 45-1 at 5-11.) His request to the Court does not properly pray for relief under the APA, but rather it invites the Court to substitute its judgment for the State Department without a properly developed record as required under the APA. Furthermore, Plaintiff submits some evidence that occurred or was created *after* the Department's decision. (*See* Doc. Nos. 45-2 at 27-30; 45-3.) Therefore, the Agency could not have possibly considered these materials, and it is not relevant to whether its decision on June 4, 2019 was

arbitrary and capricious.[5] Reviewing evidence outside of the administrative record is only appropriate in very limited circumstances which all depend first on a record being compiled and submitted to the Court.[6] Considering evidence outside of the administrative record is inappropriate because it "inevitably leads the reviewing court to substitute its judgment for that of an agency." *Id*. (quoting *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980)). Because there is no administrative record before the Court, the Plaintiff cannot establish a likelihood of success on the merits that the Department's decision was arbitrary and capricious. Plaintiff should not be permitted to use emergency injunctive proceedings as an end run-around the proper procedure for judicial review of agency action under the APA.

Moreover, the State Department's June 4, 2019, letter informing Plaintiff it denied M.S.'s passport application stated that the Department would consider any

---

[5] To the extent the Court reviews these materials as proof of exigency as required for a preliminary injunction, the Defendant notes that much of the evidence submitted is self-serving documentation generated by the Plaintiff, much of which is internally inconsistent or irrelevant. There is no piece of objective evidence provided by a third party source despite the voluminous exhibits provided by the Plaintiff.

[6] *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1117 (9th Cir. 2007) (indicating admission of evidence outside of the record to determine 1) whether the agency has considered all relevant factors and has explained its decision, 2) if the agency has relied on documents not in the record, 3) supplementing the record to explain complex subject matter, and 4) to establish agency bad faith.)

evidence that Plaintiff may provide in the future. (Doc. No. 45-27.) However, in order to do so, Plaintiff must file a new application with his new or additional evidence. The Department has no pending application before it.

Even if this Court considers Plaintiff's evidence to conduct a *de novo* review of this issue, and it should not, Plaintiff still fails to establish that a passport should be issued. Congress has established a general requirement that both parents must consent to the issuance of a minor's passport application. *See* Pub. L. No. 106-113 § 236. To comply with this mandate, the State Department has promulgated a regulation requiring both parents to execute the application on behalf of the child in person. 22 C.F.R. § 51.28(a)(2). However, this regulation also provides a set of limited circumstances when the Department will issue a passport for a minor when only one parent or guardian executes the application on behalf of the minor. 22 C.F.R. 51.28(a)(3)-(5). The application may be executed in person by only one of the parents if that parent has a notarized statement from the absent parent consenting to the issuance of the passport. *See id*. § 51.28(a)(3)(i). A passport may also be issued without both parents' consent when one parent or legal guardian provides documentary evidence (such as an order from a court of competent jurisdiction) that such person is the sole parent or has sole custody of the minor. *See id.* § 51.28(a)(3)(ii).

Plaintiff sometimes concedes that his spouse did not grant him permission

for the issuance of a United States passport to M.S., though at other times he denies that fact. (Doc. No. 45 at 2.; 45-2 at 14; ¶ 44.) Regardless, he does not allege that he has provided the Department with a notarized written statement of consent from M.S.'s mother for issuance of the passport. Further, while he notes that there are other judicial proceedings pending, he does not allege that he has a court order granting him sole legal custody or terminating his wife's parental rights.

The State Department may also, in its discretion, issue a passport when "exigent or special family circumstances" exist. *Id*. 22 C.F.R. 51.28(a)(5). "Exigent Circumstances" are defined as "time-sensitive circumstances in which the inability of the minor to obtain a passport would jeopardize the health and safety or welfare of the minor or would result in the minor being separated from the rest of his or her traveling party." 22 C.F.R. § 51.28(a)(5)(i). And "'[t]ime sensitive' generally means that there is not enough time before the minor's emergency travel to obtain either the consent of both parents/legal guardians or documentation reflecting a sole parent's/legal guardian's custody rights." *Id*. Plaintiff indicates his residency in Japan will expire in November 2019, but he does not indicate what happens on that date and provides no proof that he or M.S. have set travel plans. Plaintiff has not demonstrated that he cannot remain in Japan by renewing his visa, or depart Japan leaving M.S. in the custody of his wife. Therefore, his argument

is based on speculative harm. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.") He also provides no explanation why he waited between June 4—the date of final agency action—until now to make his requests. He has failed to meet the requirements of 22 C.F.R. § 51.28(a)(5)(i) that would permit the State Department to issue a United States passport with only one parent's consent.

The Department has not had an adequate opportunity to assemble the only evidence this Court should review—the administrative record of M.S.'s passport denial. Some materials Plaintiff submitted were created after the Department's decision, and in any event, Plaintiff has made no effort to indicate to the Court exactly what he submitted to the Department before the Defendant made its administrative decision. Because Plaintiff has made no showing that the Department's decision was arbitrary and capricious based on the administrative record as of June 4, 2019, he cannot demonstrate any likelihood of success on the merits of his APA action.

B. Plaintiff Cannot Demonstrate a Likelihood of Irreparable Harm

A party seeking a preliminary injunction must establish that he is likely to suffer irreparable injury in the absence of the requested relief. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). The threat of irreparable injury

must be "real," "substantial," and "immediate," not speculative or conjectural. *City of Los Angeles. v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiff fails to state specific, cognizable, irreparable harm caused by the State Department's denial of his son's passport application. Plaintiff provides a lengthy self-serving declaration which is internally inconsistent, confusing, and at times incredible. (Doc. No. 45-2.) It details visits with his wife and her family that ended in verbal and physical altercations and sometimes law enforcement intervention. (*Id*. at 11-17; 21.) It also details sporadic, potential resolution at times between him and his wife (*Id*. at 18, ¶ 65; 19, ¶ 69; 20, ¶¶ 74-75) and references court proceedings in Japan. (*Id*. at 4, ¶ 9.) Furthermore, outside of Japan, Plaintiff has initiated custody proceeding at a Florida state court. (Exhibit 1, Florida Proceeding Documents. Doc. No. 45-2 at 24, ¶ 93; 26, ¶ 100.) In sum, it adequately details a complicated domestic divorce and custody situation. Plaintiff attempts to allege that his departure from Japan will cause irreparable harm to him and/or his son, but evaluating this claim requires this Court to speculate on a variety of issues. Local proceedings in Japan or Florida will establish the extent of his custody rights regarding the child, and this Court is not in a position to evaluate how those proceedings are likely to resolve because it only has information from one party to this family law dispute. These relevant authorities have proper jurisdiction and are better suited to address Plaintiff's

claims of child neglect and parental alienation -- claims over which this Court has no jurisdiction. Plaintiff appears to be attempting to use this Court's authority to circumvent other court proceedings in which he is involved. Because this Court cannot know the outcome of the parallel proceedings to resolve this custody dispute, any assumption about harm to the Plaintiff is speculative.

In addition, a preliminary injunction forcing the State Department to ignore the applicable law and issue a passport to M.S. without the mother's consent would not help Plaintiff's custody situation. Moreover, such an injunction might cause irreparable harm to Plaintiff's spouse should Plaintiff use the United States passport to remove the child from Japan while custody and divorce proceedings are ongoing. Preserving the status quo would be the most appropriate course at this time. *See Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (indicating the primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered).

C. Granting a Preliminary Injunction Would Harm Defendant, Third Parties, and the Public Interest

As a general matter, "there is inherent harm to an agency" in preventing it from enforcing statutes and regulations that "Congress found it in the public interest to direct that [it] develop and enforce." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281,

296 (6th Cir. 1998) ("[T]he granting of an injunction against the enforcement of a likely constitutional statute would harm the government."); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) ("[Courts] should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); *Nken v. Holder*, 556 U.S. 418, 420 (2009) (consideration of harm to the opposing party and the public interest "merge when the Government is the opposing party").

The State Department has a strong discretionary interest in deciding whether and under what circumstances to issue United States passports. *Haig v. Agee*, 453 U.S. 280, 306 (1981) ([T]he freedom to travel abroad with a 'letter of introduction' in the form of a passport issued by the sovereign is subordinate to national security and foreign policy considerations; as such, it is subject to reasonable governmental regulation."). In deciding whether to issue a passport, the State Department has to weigh public safety concerns, and specifically with regard to minors, concerns about international child abductions. The State Department specifically wrote the proposed regulation at issue in this case with these concerns in mind. *See* 72 Fed Reg. 10095 (". . . to improve our ability to combat international parental child abduction.").

Granting a preliminary injunction forcing the State Department to issue a passport for M.S. without the mother's consent under the conjectural facts alleged by Plaintiff would run afoul of custody arrangements contemplated before a

foreign or state court of competent jurisdiction and would nullify the procedures and requirements set forth in 22 U.S.C. § 213 n.1 and 22 C.F.R. § 51.28, substituting the Court's judgment for that of Congress and the State Department. Such an action would harm the public and render the regulations pointless. Granting a preliminary injunction would also reward people like the Plaintiff who fail to challenge agency decisions through the proper course and, instead, seek to circumvent available avenues of review by filing emergency petitions instead.

D. Scope of Relief

One last consideration that renders the relief inappropriate here is the relief requested itself. Plaintiff seeks to compel the State Department to perform a specific action: issue a passport for M.S. (Doc. No. 45 at 5.) More specifically, Plaintiff states, "Plaintiff seeks a determination that exigent circumstances exist that require re-issuance of a passport for his minor son on his sole authority as legal guardian pursuant to 22 C.F.R. § 51.28(a)(5)." (*Id*.)

With injunctions, a plaintiff's request must have the purpose of preserving the status quo. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009). The APA authorizes the court to grant interim relief, *see* 5 U.S.C. § 705, but that authority "does not confer jurisdiction onto the Court to alter the status quo nor does it allow the Court in issuing interim relief to actually dictate specific terms or conditions to a

governmental agency." *Salt Pond Assocs. v. U.S. Army Corps of Engineers*, 815 F. Supp. 766, 775–76 (D. Del. 1993). As indicated in Plaintiff's own filings, the State Department issued a decision regarding his son's passport on June 4, 2019. (Doc. No. 45-27.) More specifically, the State Department denied Plaintiff's request for a new passport for his son. Issuing the injunction he requests would have the effect of reversing the agency's decision. Essentially, Plaintiff has improperly classified his request to review the State Department's decision as a request for a preliminary injunction to interject a more favorable standard of review into the well-established standards of APA review. For this reason as well, the emergency relief must be denied.

**IV. Venue is Not Proper**

An additional concern is that venue is not proper. Plaintiff generally avers that venue is proper because Plaintiff "ultimately intends to reside" in Hawaii when his child obtains a passport. (Doc. No. 39 at 2.) He does not cite a specific statute. (*Id*.)

Pursuant to 28 U.S.C. § 1391(e), an action where the Defendant is an officer or employee of the United States, venue is proper in a district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (C) the plaintiff resides." Here, Plaintiff has

named federal agencies as the Defendants. "District courts within the Ninth Circuit have generally ruled that federal agencies are deemed residents of the District of Columbia, regardless of their regional offices." *Downey v. U.S.*, 2019 WL 4143288 at *4 (D. Hawai'i 2019). Also, Plaintiff does not claim any of the events in his Second Amended Complaint occurred in Hawaii. Therefore, the only possible basis for this Court to be a proper venue is if the Plaintiff resides in the District of Hawaii.

Section 1391(c)(1) provides that a natural person is deemed to reside in the judicial district where that individual is domiciled. In general, "domicile is one's permanent home, where one resides with the intention to remain or to which one intends to return." *In re Donald*, 328 B.R. 192, 202 (B.A.P. 9th Cir. 2005) (citing *Williamson v. Osenton*, 232 U.S. 619, 625 (1914)). The difficult question is usually whether a person has the requisite subjective intent. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). "One's own declarations regarding intent are pertinent but ordinarily will be substantially discounted by the court when inconsistent with objective facts." *In re Donald*, 328 B.R. at 203. (citing *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996)).

Plaintiff admits he currently resides in Japan. (Doc. No. 45-2 at 1, ¶ 2.) He indicates only that he "intends" to reside in Hawaii when he leaves Japan. (*Id*. at 7, ¶ 17.) Prior to the events that led up to this action, he also admits he resided in

Florida for several months. (Doc. No. 45-2 at 8, ¶¶ 20-24.) In fact, he has brought a Florida state court action against his spouse as recently as September, 2019, in which he alleges he was residing in Florida before leaving for Japan. (Ex. 1.) Plaintiff's claim that he intends to reside in Hawaii is irrelevant as he cannot prospectively establish residence there, and the objective facts establish the likelihood that his last residence within the United States was Florida. Therefore, venue is improper in this case. It must be transferred or dismissed, which means it is not appropriate for this Court to issue injunctive relief first. *See e.g. Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017).

## V. Standing

Article III of the Constitution provides that a federal court may only hear "cases" and "controversies," which means a plaintiff must have standing to confer jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). To have standing, a plaintiff must have suffered an 1) "injury in fact" 2) that is fairly traceable to the challenged action of the defendant 3) and it will likely be redressed by a favorable decision. *Id*. The named plaintiff must have standing to press for each claim. *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996).

Here, the State Department denied M.S. a passport. If there is any injury in fact in this case, it would sprout from the rights of M.S., and not from Plaintiff.

Therefore, the Plaintiff lacks standing to seek the relief sought in his Emergency Motion or alleged in the Second Amended Complaint.

Further, "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997). The Court has appointed the Plaintiff a lawyer, but because he has only sued on his own behalf instead of his child's, it is unclear if *Johns* is satisfied.[7]

## VI. Conclusion

For the reasons stated, the Plaintiff's Emergency Motion should be denied.

DATED: October 18, 2019, at Honolulu, Hawaii.

KENJI M. PRICE
United States Attorney
District of Hawaii

/s/ Jeremy J. Butler
By ________________________
JEREMY J. BUTLER
Assistant U.S. Attorney

Attorneys for Defendant
UNITED STATES
DEPARTMENT OF STATE,
U.S. EMBASSY TOKYO

[7] Given the complexity of the underlying custody situation, the Court should not presume the best interests of the child are in line with those of the Plaintiff, and as such, any counsel for the Plaintiff cannot properly represent M.S.'s interests if Plaintiff directs that counsel.

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

GLENN T. MELCHINGER, ESQ. glenn.melchinger@dentons.com
DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, Hawai`i 96813 -3689

Pro Bono Attorney for Plaintiff

Dated: October 18, 2019, at Honolulu, Hawaii.

/s/ Valerie Domingo

U.S. Attorney's Office
District of Hawaii