# EXHIBIT "1"

**Cover Sheet for Family Court Cases**

I. Case Style

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT,
IN AND FOR HIGHLANDS COUNTY, FLORIDA

Case No.:__________________
Judge: _____________________

Jack Stone
Petitioner

and

Miyuki Suzuki
Respondent

**II.** Type of Action/Proceeding. Place a check beside the proceeding you are initiating. If you are simultaneously filing more than one type of proceeding against the same opposing party, such as a modification and an enforcement proceeding, complete a separate cover sheet for each action being filed. **If you are reopening a case, choose one of the three options below it.**

(A) ☒ Initial Action/Petition
(B) ☐ Reopening Case
1. ☐ Modification/Supplemental Petition
2. ☐ Motion for Civil Contempt/Enforcement
3. ☒ Other

**III.** Type of Case. If the case fits more than one type of case, select the most definitive.

(A) ☐Simplified Dissolution of Marriage
(B) ☐ Dissolution of Marriage
(C) ☐ Domestic Violence
(D) ☐ Dating Violence
(E) ☐ Repeat Violence
(F) ☐ Sexual Violence
(G) ☐ Stalking
(H) ☐ Support IV-D (Department of Revenue, Child Support Enforcement)
(I) ☐ Support Non-IV-D (**not** Department of Revenue, Child Support Enforcement)
(J) ☐ UIFSA IV-D (Department of Revenue, Child Support Enforcement)
(K) ☐ UIFSA Non-IV-D (**not** Department of Revenue, Child Support Enforcement)
(L) ☒ Other Family Court




EXHIBIT "1"

(M) ☐ Adoption Arising Out Of Chapter 63
(N) ☐ Name Change
(O) ☐ Paternity/Disestablishment of Paternity
(P) ☐ Juvenile Delinquency
(Q) ☐ Petition for Dependency

(R) ☐ Shelter Petition
(S) ☐ Termination of Parental Rights Arising Out Of Chapter 39
(T) ☐ Adoption Arising Out Of Chapter 39
(U) ☐ CINS/FINS

**IV.** Rule of Judicial Administration 2.545(d) requires that a Notice of Related Cases Form, Family Law Form 12.900(h), be filed with the initial pleading/petition by the filing attorney or self-represented litigant in order to notify the court of related cases. Is Form 12.900(h) being filed with this Cover Sheet for Family Court Cases and initial pleading/petition?

☒ No, to the best of my knowledge, no related cases exist.

☐ Yes, all related cases are listed on Family Law Form 12.900(h).-

**ATTORNEY OR PARTY SIGNATURE**

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Jack Stone FL Bar No.:
Attorney or party (Bar number, if attorney)

Jack Stone 09/09/2019
(Type or print name) Date

**IF A NONLAWYER HELPED YOU FILL OUT THIS FORM, HE/SHE MUST FILL IN THE BLANKS BELOW:** [fill in **all** blanks]

I, *{full legal name and trade name of nonlawyer}*____________________________ , a nonlawyer, whose address is *{street}*____________________________ , *{city}*__________________________, *{state}*______ , *{phone}*_____________________, helped {name}___________________________, who is the [choose **one** only] ___ petitioner or ___ respondent, fill out this form.

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR HIGHLANDS COUNTY, FLORIDA
FAMILY COURT DIVISION**

JACK STONE,

Plaintiff, Case No.

vs.

MIYUKI SUZUKI,

Defendants,

______________________________________/

**MOTION FOR EX PARTE EMERGENCY CHILD CUSTODY**

**A. Plaintiff Motions for an Ex Parte Emergency Child Custody Order**

Plaintiff Motions for an Ex Parte Emergency Child Custody Order due to plaintiff's minor child (child), age five, being abducted into Japan, by the child's mother (mother), without the consent of the plaintiff. The mother is a Japanese national. Plaintiff has been the sole financial provider of the child since birth.

Florida Statute 787.01 under subsection 13(b) states, "Confinement of a child under the age of 13 is against her or his will within the meaning of this subsection if such confinement is without the consent of her or his parent..."

Immediately after the child was wrongfully retained into Japan, the mother destroyed the child's U.S. issued passport. The sole purpose of the destruction of the child's passport was to prevent the child from returning to the U.S., where the child immediately habitually resided prior to abduction and wrongful retention into Japan. Exhibit A., is a copy of child's U.S. issued passport. Exhibit B1-B2., is a copy of child's birth certificate, submitted

to show child is a U.S. citizen. Exhibit C., is a copy of plaintiff's birth certificate, submitted to show plaintiff is a U.S. citizen. Exhibit D., is a copy of plaintiff's Florida drivers license, submitted to show plaintiff is a residence of the state of Florida, and resides in the city of Sebring.

Because abduction initiated in Sebring, Florida, and the plaintiff and child reside in Sebring, Florida, the Tenth Judicial Circuit Court in Highlands County has jurisdiction, and is this Court has proper venue to hear plaintiff's Motion for Emergency Child Custody.

Plaintiff is currently located in Japan, and has lawful physical custody of the child, obtained through the aid of Japanese attorney Yohei Suda (Suda), one of Japan's experts on international child abduction. Since having lawful physical custody of the child, Suda other attorneys and the Sendai Police Department, have aided the plaintiff in two reabduction attempts made by the mother.

Communications between the plaintiff and Japanese officials is nearly impossible as the Japanese do not communicate in English and the plaintiff cannot communicate in Japanese.

Although the plaintiff has obtained lawful physical custody of the child, plaintiff must obtain an Ex Parte Emergency Child Custody Order from this Court to obtain a passport to be reissued to the child. The passport would be used to return the child to the U.S. Code of Federal Regulation Title 22 Vol.1 §51-28(2) provides this Court the power to issue the order plaintiff seeks.

The plaintiff has been in Japan for several months attempting to resolve this matter. Japan's Central Authorities (JCA) of the Convention on the Civil Aspects of International Child Abduction (Convention) refuse to aid the plaintiff in obtaining a return order for the child, claiming the plaintiff "resides" in Japan, which plaintiff does not. Appealing JCA's decision could take

several years. In that, **the plaintiff's permission to remain in Japan will expire November 7th 2019, making this matter urgent.**

The plaintiff is being financially ruined as plaintiff is not employed in Japan. The financial harm the plaintiff is suffering extends to the child as well. The proximate cause of the harms the plaintiff and child suffer is a direct result of the destruction of the child's passport by the mother. But for abduction and wrongful retention into Japan, and the destruction of the child's passport, plaintiff and child would not be located in Japan, and none of the irreparable harm plaintiff and child have suffered and continue to suffer would have occurred.

A custody order is required by the U.S. Dept. of State, and/or the U.S. Tokyo Embassy to issue a replacement passport, as generally a passport for a U.S. citizen minor child requires both parents' approval. See: Exhibit E., which is a June 4th 2019 communication provided to the plaintiff from the U.S. Embassy Consulate in Tokyo, regarding what is required to obtain a passport for plaintiff's child.

Given the circumstances that brought about this emergency filing, and where it is the mother who destroyed the child's passport, it is unreasonable to presume the mother would cooperate in the child being reissued a passport to return home. In that, the plaintiff has sought the aid of the mother to obtain a reissued passport, but the mother refuses to cooperate, even where the mother has only seen the child a few times since abduction and wrongful retention into Japan. Moreover, the mother has repeatedly stated the plaintiff should return to the U.S. with the child. Exhibit F1-F2., is an email communication made by the mother, to the plaintiff, in regards to the child returning to the U.S. In the aforementioned email communication, the mother states, "[Y]ou should leave Japan with [child's name redacted] then our problem will be solved." Regardless as to the mother's repeated

communications that the plaintiff should return to the U.S. with the child, the mother takes no action to aid the plaintiff in obtaining a passport for the child to return home.

After abduction and wrongful retention into Japan, the child was hidden from the plaintiff for nearly two months at an undisclosed location. The plaintiff feared never seeing his child again. Plaintiff sought the whereabouts of the child, but email and telephone contacts with the mother were ignored. Exhibit G., is but one of numerous attempts of the plaintiff seeking to discover the child's location after abduction and wrongful retention into Japan. In the Exhibit G email communication exchange between the plaintiff and mother, the plaintiff is attempting to obtain the addresses and phone numbers of the mother's family member. The mother responds by stating, "I don't know the address where they live." The email exchange also addresses the child's passport which the plaintiff demands the mother turn over to the plaintiff.

Japan is internationally condemned as a black hole for child abduction, even after Japan became a signatory to the Convention on April 1st 2014. In case, after case, after case, non-Japanese parents of abducted children have relied on Japan's Central Authorities of the Convention, and Japan's family courts to act fairly and in good faith, regarding the safe return of abducted children. In case, after case, after case, Japanese authorities take no action to preserve the non-Japanese parent/child relationship, but instead reward the abductors with sole parental authority. Attorney Suda has communicated with the plaintiff there is no case in Japan's history where either the JCA or Japan's family courts have returned an abducted child, or have issued a custody order for any non-Japanese parent.

Chris Smith, Congressional Representative to the United Nations and Senior Member of the House Foreign Affairs Committee has stated, "We need our President, our Secretary of State, and the Congress to get behind left behind parents. This is a bipartisan issue. This is a human rights issue affecting American parents and American children. Japan is a safe harbor for child abductors and that brings dishonor to the Japanese government."

The conditions the mother has created results in the child being retained in Japan in near hostage-like conditions. Plaintiff and child dwell at a temporary location that has no furnishing whatsoever, including no blinds for privacy, no washing machine, no chairs, bedding, or other items associated with a civilized existence. As well, the plaintiff and child live out of suitcases. See: Exhibits H1-H8., which are photographic images that expose the living conditions the plaintiff and child suffer, due to abduction, wrongful retention, and the destruction of the child's passport, violating the plaintiff's parental authority.

**B. Federal Regulation Title 22 Vol.1 §51-28(2) Provides this Court the Power to Compel Issuance of a Passport for Plaintiff's Child**

Code of Federal Regulation Title 22 Vol.1 §51-28(2) states, "... both parents, whether applying for a passport for the first time or for a renewal, must execute the application on behalf of a minor under age 16."

Subsection (3) of the aforementioned federal regulation addresses execution of passport application by one parent, "A passport application may be executed on behalf of a minor under age 16 by only one parent if such person provides:

(ii) Documentary evidence that such person has sole custody of the minor. Such evidence includes, but is not limited to, the following:

(E**) An order of a court of competent jurisdiction granting sole legal custody to the applying parent containing no travel restrictions inconsistent with issuance of the passport; or,**

**specifically authorizing the applying parent to obtain a passport for the minor, regardless of custodial arrangements; or specifically authorizing the travel of the minor with the applying parent;**

**(F) An order of a court of competent jurisdiction terminating the parental rights of the non-applying parent or declaring the non-applying parent to be incompetent.**

22 CFR § 51.28(2) permits, "exigent circumstances, waiving the requirement of both parents to be present at the time a passport is issued.

22 CFR § 51.2(3)(5)(i) states, "Exigent circumstances are defined as time-sensitive circumstances in which the inability of the minor to obtain a passport would jeopardize the health and safety or welfare of the minor or would result in the minor being separated from the rest of his or her traveling party. Time sensitive generally means that there is not enough time before the minor's emergency travel to obtain either the required consent of both parents/legal guardians or documentation reflecting a sole parent's/legal guardian's custody rights." Subsection (ii) addresses, **"Special family circumstances" which are defined as circumstances in which the minor's family situation makes it exceptionally difficult for one or both of the parents to execute the passport application; and/or compelling humanitarian circumstances where the minor's lack of a passport would jeopardize the health, safety, or welfare of the minor; or, pursuant to guidance issued by the Department, circumstances in which return of a minor to the jurisdiction of his or her home state or habitual residence is necessary to permit a court of competent jurisdiction to adjudicate or enforce a custody determination.** A passport issued due to such special family circumstances may be limited for direct return to the United States in accordance with § 51.60(e).

Under 22 CFR § 51.2(3)(5)(i), the circumstances the petitioner and the child are currently in provides a clear showing this Court must act immediately, as the child is in in a foreign nation, and the child's health, safety and welfare are at risk, and, the child has in fact suffered abuse and injury as a result of the conduct of the mother.

Plaintiff asks this Court to issue an Order under Federal Regulation Title 22 Vol.1 §51-28(2) Section ii, Subsections (E) and (F); 1.) granting the plaintiff temporary sole custody of the child; 2.) granting no travel restrictions inconsistent with the terms of CFR Title 22 Vol.1 §51-28(2)(ii)(E); 3.) to authorize permission to the plaintiff to obtain a passport for the child, regardless as to custodial arrangements; 4.) authorize travel of the child with the plaintiff to return to the U.S. where the child immediately habitually resided prior to abduction, wrongful retention into Japan, and the destruction of the child's passport.

As per plaintiff seeking emergency relief, there are currently no divorce proceedings, and no custody orders in any family, civil, or criminal court in the U.S. or Japan, that have stripped the plaintiff of any parental right. As well, there are no orders issued for the plaintiff to turn the child over to the mother. In regards to the marriage, the plaintiff does not seek divorce at this time, but instead continues to attempt to resolve the marital issues, as it is in the best interest of the child to have a proper family environment. This Court may want to note that the plaintiff has a juris doctorate obtained from an ABA accredited law school, and has experience working in both family and juvenile courts. However, the plaintiff is not employed as an attorney, and is not licensed to practice law in the state of Florida.

### C. <u>The Child is in Imminent Danger due to Immediate Threat of Irreparable Harm or Injury, which Outweighs the Mother's Rights</u>

Generally regarding emergency relief, the petitioner must show the child is in imminent danger from an immediate threat of irreparable harm or injury, and that the child's right not to be threatened outweighs the parent's rights. In Florida, evidence of child abuse, neglect, threats and abandonment of the child outweighs a parent's interests. Exhibits I1-I5., show the mother is negligent, has abused the child, and has put the child in situations that are dangerous. Exhibits I1-I5 are photographic images of the child's physical condition on the day the plaintiff took physical custody of the child in Japan. These photographic images were provided to investigating officers of the Kita Sendai Police Headquarters on April 20th 2019, after the mother had attempted a third reabduction attempt of the child. The Kita Sendai investigating officers concluded the photographic images of the child are the results of neglect and abuse.

Further, on May 1st 2019, plaintiff took the child to visit with the mother. At the end of visitation, the plaintiff notified the mother that it was time to end the visit, so the plaintiff and child could return to their temporary dwelling. The plaintiff could not wait any longer as the last available means of public transportation on that day was about to cease operating. The mother was aware of this fact. Even so, the mother became combative, and, as the plaintiff and child were departing, the mother made an emergency phone call to police, claiming plaintiff had abducted the child. First, there was no emergency, as plaintiff was not confrontational, argumentative or violent, and second, there was no abduction attempt as the child lawfully dwelled with that plaintiff, and the mother filed all relevant paperwork,

acquiescing to the child dwelling with the plaintiff, and this was done through the aid of attorneys.

After visitation ended, plaintiff was walking to the train station. The plaintiff was holding the child in his arms, as the child was suffering emotionally due to the actions of the mother. Plaintiff and child were suddenly swarmed by numerous police officers and police vehicles. Both plaintiff and child were recklessly, and without cause, physically assaulted by Japanese police, who attempted to rip the child from plaintiff's arms. The assault resulted in significant injuries to the child's neck, shoulders and back. Exhibit J., is a photographic image that shows the injuries the child sustained during this assault. Plaintiff audio and video recorded the assault. During the assault the child can be heard telling the police:

1. Go away. (Numerous times)
2. Stop circling us.
3. Leave us alone.
4. I'm scared. (Twice)

The assault culminated in the child loudly screaming out in pain, crying over a long duration of time, and immediately complaining of neck and back pain. For several days thereafter the child complained of neck and back pain.

The mother has made verbal threats that she will harm the child if plaintiff attempts to limit the mother's rights. The mother has the ability to make good on these threats, as she has repeatedly attempted reabduction. Moreover, the mother and her entire family are members of the Rhissho Kosei Cult, a religious organization that has had a lot of issues with Japan's Ministry of Justice, most notably undue influence over cult members, undue influence that affects the rights of non-cult family members.

The abductor's oldest sister, and oldest sister's husband have been employed by this cult for at least a decade. The abductor's

oldest sister travels to several third world countries where this cult engages in attempts to proselytize converts. Many of these third world nations are not Contracting States to the Convention. Moreover, the Rhissho Kosei Kai cult had interfered with plaintiff's parental rights even before the child was born. This includes naming the child over plaintiff's objection.

Due to undue influence, and interference with plaintiff's parental rights by the Rhissho Kosei Kai cult, plaintiff has sent cease and desist letters threatening suit to obtain permanent injunctive relief to keep the cult from having any contact with the child. Plaintiff fears the child could be abducted into one of the countries where the cult proselytizes converts, and never see the child again.

**A ruling granting plaintiff's request is in the best interest of the child, as injuries sustained, and threats to the child's health, safety, and well-being creates an urgency requiring this Court to act expeditiously, and without the participation of the mother.** Finally, if this matter ends in the dissolution of the marriage, this Court has jurisdiction over such proceedings, as this Court has jurisdiction, and venue as the Tenth Judicial Circuit is where plaintiff and child reside.

**D. CONCLUSION**

The plaintiff Motions for an Ex Parte Emergency Child Custody Order as per the requirements of Federal Regulation Title 22 Vol.1 §51-28(2) Section ii, Subsections (E) and (F); 1.) granting the plaintiff temporary sole custody of the child; 2.) granting no travel restrictions that would be inconsistent with the issuance of the child's passport. 3.) to authorize the plaintiff permission to obtain a passport for the child, regardless as to custodial arrangements, and 4.) authorize the travel of the child with the plaintiff to return to the U.S. where the child immediately

habitually resided prior to abduction and wrongful retention into Japan.

Respectfully submitted,

September 10th 2019

Jack Stone
/s/ Jack Stone
Maison Sato #101
2-2-15 Tsunogoro
Aoba, Sendai
Miyagi, Japan 980-0874
Telephone: 863-451-6240
Email: mail@stackjones.com

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR HIGHLANDS COUNTY, FLORIDA
FAMILY COURT DIVISION**

JACK STONE,

Plaintiff, Case No.

vs.

MIYUKI SUZUKI,

Defendants,

_______________________________________/

**EXHIBITS LIST SUPPORTING PLAINTIFF'S MOTION FOR EX PARTE EMERGENCY CHILD CUSTODY**

Exhibit A.
Child's U.S. issued passport. Page 1.
Exhibit B1-B2.
Child's U.S. issued birth certificate. Page 1.
Exhibit C.
Plaintiff's U.S. issued birth certificate. Page 2.
Exhibit D.
Plaintiff's Florida issued drivers license. Page 2.
Exhibit E.
U.S. Tokyo Embassy communication. Page 3.
Exhibit F1-F2.
Defendant's email communication. Page 3.
Exhibit G.
Email exchange between plaintiff and defendant. Page 4.
Exhibit H1-H8.
Photographs of plaintiff and child's living conditions while located in Japan. Page 5.
Exhibit I1-I5.
Photographic images of child's abuse. Page 8.
Exhibit J.
Photograph of child's injuries sustained due to police assault. Page 9.



Electronically Filed Highlands Case # 19000903FCAXMX 09/09/2019 11:56:26 PM

Respectfully submitted,

September 10th 2019

Jack Stone
/s/ Jack Stone
Maison Sato #101
2-2-15 Tsunogoro
Aoba, Sendai
Miyagi, Japan 980-0874
Telephone: 863-451-6240
Email: mail@stackjones.com

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR HIGHLANDS COUNTY, FLORIDA**
**FAMILY COURT DIVISION**

JACK STONE,

Plaintiff, Case No.

vs.

MIYUKI SUZUKI,

Defendants,

_____________________________________/

## Clerk Notes

Attached are documents pertaining to a request for an Ex Parte Emergency Relief Order for Custody of a Minor Child. This matter is urgent, and the health, safety and welfare of the child is currently at risk.

The Florida address listed on these filings is correct. However, due to circumstances relevant to this filing for emergency relief, the address of the plaintiff is currently, and temporarily located in Japan. Please make a note of this.

Respectfully submitted,

September 10th 2019

Jack Stone
/s/ Jack Stone
Maison Sato #101
2-2-15 Tsunogoro
Aoba, Sendai
Miyagi, Japan 980-0874
Telephone: 863-451-6240
Email: mail@stackjones.com

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR HIGHLANDS COUNTY, FLORIDA**
**FAMILY COURT DIVISION**

JACK STONE,

Plaintiff, Case No.

vs.

MIYUKI SUZUKI,

Defendants,

_______________________________________/

**MOTION FOR CONFIDENTIAL FILING UNDER FLORIDA RULES OF JUDICIAL ADNIMISTRATION RULE 2.425**

Plaintiff Motions for this Court under Florida Rules of Judicial Administration Rule 2.425 to ensure plaintiff’s minor child’s information remains confidential, given the sensitive nature of the underlining matter.

Exhibits presented in support of Plaintiff’s Motion to obtain Ex Parte Emergency Relief exposes the child’s likeness, identification, and relevant documentation. The plaintiff asks this Court, and the Clerks thereof to ensure that these matters are kept from public viewing.

Respectfully submitted,

September 10th 2019

Jack Stone
/s/ Jack Stone
Maison Sato #101
2-2-15 Tsunogoro
Aoba, Sendai
Miyagi, Japan 980-0874
Telephone: 863-451-6240
Email: mail@stackjones.com

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR HIGHLANDS COUNTY, FLORIDA
FAMILY COURT DIVISION**

JACK STONE

Plaintiff, Case No.

vs.

Miyuki Suzuki,

Defendants,

______________________________________/

**SUPPLEMENT FOR THE APPROVAL OF APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS**

The plaintiff provides supplemental information in regards to the waiver of the filing fees that pertain to this action.

The plaintiff is located overseas in Japan, due to the consequences resulting from the underlying matter, which is abduction and wrongful retention of plaintiff's minor child into Japan. After the child was abducted into Japan by the mother, a Japanese national, the child's passport was destroyed for purposes of preventing the child from returning to the U.S., where the child immediately habitually resided prior to abduction.

The plaintiff has two dependents, and due to being located in Japan, attempting to resolve the child's passport issue, is currently unemployed while temporarily located in Japan. This

matter, which has been ongoing for several months has caused the plaintiff and child undue hardship.

Due to the aforementioned facts, the plaintiff asks the Tenth Judicial Circuit Court Clerks to accept plaintiff's IFP filing, and permit plaintiff Emergency Motion to move forward expeditiously, so this matter can be resolved as quickly as possible, and so the plaintiff can return the child to a stable life that doesn't negatively affect the child's health, safety and welfare.

Respectfully submitted,

September 10th 2019

Jack Stone
/s/ Jack Stone
Maison Sato #101
2-2-15 Tsunogoro
Aoba, Sendai
Miyagi, Japan 980-0874
Telephone: 863-451-6240
Email: mail@stackjones.com

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR HIGHLANDS COUNTY, FLORIDA**
**FAMILY COURT DIVISION**

JACK STONE,

Plaintiff, Case No.

vs.

MIYUKI SUZUKI,

Defendants,

_______________________________________/

**NOTICE OF EXHIBITS FILING**

As per Clerk instructions, plaintiff is providing this notice, notifying the Court that exhibits pertinent to plaintiff's Motion for Emergency Child Custody Order are included in this filing.

Please accept these pertinent exhibits as part of this filing.

Respectfully submitted,

September 10th 2019

Jack Stone
/s/ Jack Stone
Maison Sato #101
2-2-15 Tsunogoro
Aoba, Sendai
Miyagi, Japan 980-0874
Telephone: 863-451-6240
Email: mail@stackjones.com

Filing # 95418135 E-Filed 09/09/2019 11:56:26 PM




# EXHIBIT A.



UNITED STATES OF AMERICA — DEPARTMENT OF STATE

[redacted]

Consular Report of Birth Abroad

OF A CITIZEN OF THE UNITED STATES OF AMERICA

This is to certify that:

[redacted] STONE

Sex MALE born at YONEZAWA, JAPAN

[redacted]

Acquired United States CITIZENSHIP at birth as established by documentary evidence

Presented to the Consular Service of the United States at

TOKYO, JAPAN

On OCTOBER 29, 2014

MOTHER/FATHER/PARENTS

JACK STONE — Date of Birth: [redacted]

MIYUKI SUZUKI — Date of Birth: [redacted]

Michele Thoren Bond

Acting Assistant Secretary for Consular Affairs

Date of Issuance: OCTOBER 29, 2014

# EXHIBIT B1.

[illegible]

[illegible]

**EXHIBIT B2.**