UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACK STONE,

        *Plaintiff*,

              v.

U.S. EMBASSY TOKYO, *et al.*,

        *Defendants*.

Civil Action No. 19-3273 (RC)

**MEMORANDUM OF POINTS AND AUTHORITIES [1] IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND [2] IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.    Procedural History ......................................................................................................... 2

    II.    Statutory and Regulatory Framework ........................................................................... 6

STATEMENT OF FACTS ....................................................................................................... 8

STANDARD OF REVIEW ................................................................................................... 16

    I.    Rule 56 Summary Judgment Standard ........................................................................ 16

    II.    Standard for Judicial Review of Administrative Agency Action .................................. 17

ARGUMENT ......................................................................................................................... 18

    I.    The Department of State's Decision Was Not Arbitrary, Capricious, an Abuse of
        Discretion, or Otherwise Not in Accordance with Law.................................................. 18

    II.    Plaintiff's Demand for Monetary Damages Is Barred By Sovereign Immunity ............. 20

CONCLUSION...................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Air Cargo v. U.S. Postal Serv.*,
   674 F.3d 852 (D.C. Cir. 2012) ................................................................................. 3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................. 16

*AT&T Corp. v. FCC*,
   220 F.3d 607 (D.C. Cir. 2000) ............................................................................... 17

*Auer v. Robbins*,
   519 U.S. 452 (1997) .............................................................................................. 17

*Benoit v. USDA*,
   608 F.3d 17 (D.C. Cir. 2010) ................................................................................. 20

*Brodie v. U.S. Dep't of Health & Human Servs.*,
   796 F. Supp. 2d 145 (D.D.C. 2011) ....................................................................... 17

*Canales v. Paulson*,
   No. 06-cv-1330, 2007 WL 2071709 (D.D.C. July 16, 2007) ................................. 17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................. 16

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) .............................................................................................. 18

*Consarc Corp. v. Iraqi Ministry*,
   27 F.3d 695 (D.C. Cir. 1994) ................................................................................. 18

*Consarc Corp. v. U.S. Treasury Dep't, Office of Foreign Assets Control*,
   71 F.3d 909 (D.C. Cir. 1995) ................................................................................. 17

*Ctr. for Food Safety v. Salazar*,
   898 F. Supp. 2d 130 (D.D.C. 2012) ....................................................................... 17

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) .............................................................................................. 17

*Gore v. Wilkie*, Civ. A.,
   No. 19-1134 (RDM), 2020 WL 2838662 (D.D.C. May 31, 2020) .......................... 21

*Hi-Tech Pharmacal Co. v. FDA*,
   587 F. Supp. 2d 13 (D.D.C. 2008) ................................................................... 18, 19

*Johnson v. Perez*,
   66 F. Supp. 3d 30 (D.D.C. 2014) ........................................................................... 16

*Laningham v. United States Navy*,
   813 F.2d 1236 (D.C. Cir. 1987) ............................................................................. 16

*McKoy v. Spencer*,
   271 F. Supp. 3d 25 (D.D.C. 2017) ......................................................................... 21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................................ 17

*Nat'l Treasury Emps. Union v. Horner*,
   854 F.2d 490 (D.C. Cir. 1988) ........................................................................ passim

*Sierra Club v. Mainella*,
   459 F. Supp. 2d 76 (D.D.C. 2006) ......................................................................... 17

*Steele v. Schafer,*
    535 F.3d 689 (D.C. Cir. 2008) ........................................................................ 16

*Wildlife Fed. v. Browner,*
    127 F.3d 1126 (D.C. Cir. 1997) ..................................................................... 17

## Statutes

5 U.S.C. § 702 ................................................................................................... 20

5 U.S.C. § 703 ..................................................................................................... 1

5 U.S.C. § 706(2)(A) ....................................................................................... 17

42 U.S.C. § 1983 ................................................................................................ 4

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................ 16

## Regulations

22 C.F.R. § 51.28(a) ........................................................................................... 6

22 C.F.R. § 51.28(a)(2) ................................................................................... 1, 6

22 C.F.R. § 51.28(a)(3) ................................................................................. 6, 18

22 C.F.R. § 51.28(a)(5) ............................................................................. 3, 7, 20

22 C.F.R. § 51.28(a)(5)(i) ................................................................................. 19

22 C.F.R. § 51.28(a)(5)(iv) ................................................................................. 8

# INTRODUCTION

Defendants the United States Department of State ("Department of State") and the United States Embassy in Tokyo, Japan ("U.S. Embassy")[1] respectfully submit this memorandum of points and authorities in support of Defendants' motion for summary judgment on the claim asserted by Plaintiff Jack Stone, and in opposition to Plaintiff's motion for summary judgment. This case concerns the Department of State's adjudication and denial of an application that Plaintiff submitted on February 9, 2019, on behalf of his minor child, M.S., for a United States passport. (AR 74-75, 117.)  As relevant here, federal regulations require that, absent certain limited exceptions, "both parents or each of the minor's legal guardians, if any, whether applying for a passport for the first time or for a renewal, must execute the application on behalf of a minor under age 16[.]"  22 C.F.R. § 51.28(a)(2).  On June 4, 2019, the Department of State denied the application, finding that Plaintiff had "submitted insufficient documentation to show sole authority to apply for, and receive [M.S.'s] U.S. passport."  (AR 117.)  Plaintiff challenges that denial decision, apparently under the Administrative Procedure Act ("APA"), and seeks a declaratory finding that a replacement passport must issue immediately and monetary damages.  *See* ECF No. 39.  Plaintiff has also moved for partial summary judgment "pertaining to the issues of Compelling Issuance of Child's Passport, at no additional costs to Plaintiff, and, Damages Plaintiff seeks in the amount of 150,000.00 USD."  ECF No. 106 at 10.[2]  For the reasons described below, Plaintiff's

---

[1] Defendants' position is that the U.S. Embassy is not a proper defendant in this case and should be dismissed.  *See* 5 U.S.C. § 703 ("If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate judicial officer.").  For the same reason, among others, Plaintiff's attempt to include as a defendant a former Department of State official, Hughes P. Ogier, *see* ECF No. 81, likewise fails.

[2] Plaintiff's motion for summary judgment also makes reference to issues which Plaintiff has sought leave to amend or supplement the Second Amended Complaint to include—for example,

request for damages has no legal basis, and Plaintiff's APA claim concerning the Department of

State's June 2019 denial of the passport application on behalf of M.S. fails, as the Department of

State's denial of the passport application, on the basis of the information submitted by Plaintiff

and absent the consent of M.S.'s mother, was not arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law.

## BACKGROUND

### I.    Procedural History

Plaintiff commenced this action in the District Court for the District of Hawaii prior to

submitting any passport application, on February 6, 2019.  *See* ECF No. 1.  The operative

complaint is the Second Amended Complaint ("Compl."), filed on October 7, 2019, *see* ECF No.

39, which "alleges a single claim requesting the reissuance of Plaintiff's son's passport."  ECF No.

64 at 7.  In the Second Amended Complaint, Plaintiff alleged that in late 2018, his minor son, M.S.,

was taken by his spouse, Miyuki Suzuki and removed from Florida to Japan without Plaintiff's

consent.  Compl. ¶ 6.  Plaintiff asserted that Ms. Suzuki informed Plaintiff that she had destroyed

M.S.'s U.S. passport, and that she had since stopped communicating with both Plaintiff and her

son.  *Id.*[3]  On February 9, 2019, after having moved into an apartment in Japan with his son and

having taken a job in Japan, Plaintiff applied to the U.S. Embassy in Tokyo, Japan, for reissuance

of M.S.'s passport, which application was denied.  *Id.* ¶¶ 7-8.  Plaintiff contends that Defendants

"have a duty to issue a replacement passport for the Plaintiff's son due to exigent and/or special

---

Plaintiff's request for an order for M.S.'s return to the United States under the Hague Convention
of 25 October 1980 on the Civil Aspects of International Child Abduction.  *See, e.g.*, ECF No. 106
at 1.  Defendants have opposed Plaintiff's various motions for leave to amend or supplement, and
the Court is currently considering those motions, which became ripe for review on May 3, 2020.
*See* ECF Nos. 89, 109; *see also infra* at 4.

[3] The District Court for the District of Hawaii observed that "most of Plaintiff's allegations and
representations [we]re unsubstantiated by evidence."  ECF No. 64 at 3 n.1.

family circumstances, but have refused," and requests that the Court "issue an order to Defendants to reissue the child's lost or stolen passport, and (or in the alternative), hold that 'exigent' and 'special family circumstances' exist in this case within the meaning of 22 C.F.R. § 51.28(a)(5) such that the U.S. Embassy may and must re-issue the son's U.S. passport based on the sole authorization of Plaintiff, because the Mother's consent is difficult to obtain and even her attorney does not appear to know her mind." *Id.* ¶¶ 14, 28. Plaintiff's prayer for relief includes: (i) a declaratory finding and order that a replacement passport must issue immediately;[4] (ii) damages; and (iii) such further and other relief as the Court may deem just and proper. Compl. at 9.

This action was ordered transferred to this Court from the District of Hawaii on October 28, 2019, given the District Court for the District of Hawaii's finding that venue was improper in that district, but that judicial economy would be served "by allowing this action to proceed in the District of Columbia so that the substantive issues c[ould] be addressed on their merits." *See* ECF No. 64 at 17, 19. With respect to the claim asserted in the Second Amended Complaint, the District Court for the District of Hawaii found that Plaintiff satisfied the conditions necessary for the Administrative Procedure Act ("APA") to waive sovereign immunity for Plaintiff's claim—

---

[4] Defendants note that even if Plaintiff's claim had legal merit—which, for all the reasons discussed *infra*, it does not—the appropriate relief would be remand for a new adjudication, rather than the issuance of an order directing that a replacement passport issue. *Cf. N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal."); *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 500 (D.C. Cir. 1988) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.") (internal quotations omitted).

namely that "[a]t bottom, Plaintiff seeks injunctive, non-monetary relief—reissuance of his son's passport; there is no adequate remedy available elsewhere; and the requested relief is not forbidden by another statute." *Id.* at 11.

Subsequent to the transfer of this case from the District of Hawaii, Plaintiff filed various additional pleadings and motions that Defendants construed as motions for leave to amend or supplement the Second Amended Complaint to include: (1) a request for an order for M.S.'s return to the United States under the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction (ECF Nos. 72, 78); (2) a motion to compel United States citizenship for Plaintiff's putative second minor child, S.S. (ECF Nos. 73, 79);[5] (3) claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Federal Tort Claims Act ("FTCA") (ECF No. 81); and (4) a motion to compel the issuance of Plaintiff's wife's immigrant visa (ECF No. 82). On January 23, 2020, Defendants filed an opposition arguing that none of Plaintiff's proposed amended or supplemental pleadings would survive a motion to dismiss, and that Plaintiff's motions should therefore be denied as futile. *See* ECF No. 89.[6]

In early February 2020, Plaintiff and Defendants' counsel communicated and Plaintiff stated his intent to complete the additional steps necessary for Plaintiff's wife to make an immigrant visa application to the Department of State, and indicated that it may be possible to submit a new passport application on behalf of M.S. with both parents' signatures. *See* ECF No. 93-1 at 2. The parties thereafter jointly moved to stay proceedings on February 12, 2020, *see* ECF No. 93, which motion the Court granted, *see* ECF No. 94. Following entry of the stay, pro bono

---

[5] Defendants note that Plaintiff has previously stated that this second child "may, or may not be [his]." (AR 539.)

[6] Plaintiff has continued to file additional demands and claims in various forms, which are separate from the claim asserted in the operative complaint and are not properly before the Court. *See, e.g.*, ECF Nos. 103, 118.

counsel from Fried, Frank, Harris, Shriver & Jacobson LLP was appointed by the U. S. District Court's Civil Pro Bono Panel to act as counsel for Plaintiff, accepted that appointment, and entered an appearance on March 27, 2020. *See* ECF No. 95.  On April 13, 2020, the parties filed a joint status report requesting that the stay of proceedings continue until June 12, 2020, in order to allow the parties additional time to meet and confer regarding the outstanding claims pleaded in the Second Amended Complaint and potential paths for resolution of those claims.  *See* ECF No. 96. By Minute Order entered that same day, the Court ordered that the matter would remain stayed until June 12, 2020, and that the parties were to file a further joint status report by May 22, 2020.

On April 27, 2020, Plaintiff filed a motion for clarification and enforcement of the Court's Order regarding appointment of counsel.  *See* ECF No. 97.  Among other things, Plaintiff sought clarification regarding the scope of pro bono counsel's representation, and asserted that numerous issues beyond the claim asserted in the Second Amended Complaint were "in limbo," including Plaintiff's: (1) motion to amend the complaint to include a Return Order under the Convention on the Civil Aspects of International Child Abduction (ECF Nos. 72, 78); (2) motion to compel the Department of State to issue citizenship to S.S. (ECF Nos. 73, 78-79); and (3) motion to compel the Department of State to issue an immigrant visa to his wife (ECF No. 82).  *Id.* at 2.  Plaintiff also filed an action in the United States Court of Appeals for the District of Columbia Circuit requesting a writ of mandamus directing this Court immediately to issue a Hague Convention Return Order for M.S. to return to the United States.  *See In re Jack Stone*, Case No. 20-5102 (D.C. Cir.).

By Minute Order dated April 27, 2020, the Court directed the parties to submit a joint status report and proposed schedule to govern further proceedings in this matter by May 5, 2020.  On April 28, 2020, pro bono counsel from Fried, Frank, Harris, Shriver & Jacobson LLP filed a notice

of withdrawal from appointment. *See* ECF No. 98.  On May 3, 2020, Plaintiff filed a reply in response to Defendants' opposition to Plaintiff's motions for leave to amend or supplement the Second Amended Complaint, *see* ECF No. 101, and on May 6, 2020, Plaintiff filed a motion for partial summary judgment regarding his claim for reissuance of M.S.'s passport and monetary damages, *see* ECF No. 106.  By Order dated May 11, 2020, the Court lifted the stay, and set a briefing schedule for Defendants' motion for summary judgment and Plaintiff's partial motion for summary judgment.  *See* ECF No. 109.

## II.    Statutory and Regulatory Framework

Congress enacted Public Law 106-113 on November 29, 1999, which required the Secretary of State to enact regulations to carry into effect the requirement that both parents or legal guardians consent to the issuance of a passport for any child under age 14 (which was subsequently amended to age 16), and provided that the Secretary could allow for certain narrow exceptions to this requirement including for "special family circumstances" and/or "exigent circumstances."  *See* https://www.govinfo.gov/content/pkg/PLAW-106publ113/html/PLAW-106publ113.htm  at  Sec. 236.  Those regulations are found at 22 C.F.R. § 51.28(a), and give effect to the express will of Congress that the default rule be for both parents to consent to the issuance of a passport for a minor unless one of the narrow exceptions applies.  *See* 22 C.F.R. § 51.28(a)(2) ("Except as specifically provided in this section, both parents or each of the minor's legal guardians, if any, whether applying for a passport for the first time or for a renewal, must execute the application on behalf of a minor under age 16[.]").

Pursuant to 22 C.F.R. § 51.28(a)(3), a passport application may be executed on behalf of a minor by only one parent in certain specified circumstances, neither of which is relevant here— namely when that parent provides either: (1) a notarized written statement from the non-applying parent or guardian expressing consent to issuance of the passport; or (2) documentary evidence

that he or she is the sole parent or has sole legal custody of the child.[7]  *See* 22 C.F.R. § 51.28(a)(3)(i-ii).  Pursuant to 22 C.F.R. § 51.28(a)(5), a passport may also be issued to a minor when only one parent or legal guardian executes the application in cases of "exigent or special family circumstances."  *See* 22 C.F.R. § 51.28(a)(5)(i-ii).  The regulations define these circumstances as follows:

> (i) "Exigent circumstances" are defined as time-sensitive circumstances in which the inability of the minor to obtain a passport would jeopardize the health and safety or welfare of the minor or would result in the minor being separated from the rest of his or her traveling party.  "Time sensitive" generally means that there is not enough time before the minor's emergency travel to obtain either the required consent of both parents/legal guardians or documentation reflecting a sole parent's/legal guardian's custody rights.

> (ii) "Special family circumstances" are defined as circumstances in which the minor's family situation makes it exceptionally difficult for one or both of the parents to execute the passport application; and/or compelling humanitarian circumstances where the minor's lack of a passport would jeopardize the health, safety, or welfare of the minor; or, pursuant to guidance issued by the Department, circumstances in which return of a minor to the jurisdiction of his or her home state or habitual residence is necessary to permit a court of competent jurisdiction to adjudicate or enforce a custody determination.  A passport issued due to such special family circumstances may be limited for direct return to the United States in accordance with § 51.60(e).

22 C.F.R. § 51.28(a)(5)(i-ii).

A parent or legal guardian who is applying for a passport for a minor on the basis of exigent or special family circumstances "must submit a written statement with the application describing the exigent or special family circumstances he or she believes should be taken into consideration in applying an exception."  22 C.F.R. § 51.28(a)(5)(iii).  The regulations instruct that "[d]eterminations under § 51.28(a)(5) must be made by a senior passport authorizing officer

---

[7] Plaintiff initiated an action in a Florida state court for custody of M.S. in September 2019, months after the passport application at issue in this case was denied.  *See Jack Stone v. Miyuki Suzuki*, Case No. 28-2019-DR-000903 (Circuit Court of the Tenth Judicial Circuit, Highlands County, Florida).

pursuant to guidance issued by the Department [of State]."  22 C.F.R. § 51.28(a)(5)(iv).  The

Department of State applies the exceptions to the two-parent consent requirement narrowly to

ensure that the anti-fraud and anti-international child abduction concerns underlying the

requirement are not undermined.  *See* ECF No. 114-2 ¶ 2.

### STATEMENT OF FACTS

In 2014, M.S. was born in Japan to Plaintiff Jack Stone, a U.S. citizen, and his wife Miyuki

Suzuki, a Japanese national.  (AR 77.)  M.S. was issued a Consular Report of Birth Abroad by the

U.S. Embassy in Tokyo, Japan on October 29, 2014, documenting him as a citizen of the United

States at birth.[8]  (*Id.*)  M.S. was issued a passport on November 4, 2014, which had a period of

validity of 5 years.  (AR 76.)  Plaintiff, his wife, and M.S. lived in Japan until they departed in

March 2018 for the United States, apparently for Plaintiff to seek employment in Hawaii.  (ECF

No. 45-2 ¶¶ 18-20.)  Thereafter, Plaintiff and his family traveled to Florida to visit family.  (*Id.* ¶¶

20-21.)  In October of 2018, Plaintiff departed the United States for Japan, purportedly for the

purpose of renewing his spousal visa to live in Japan.  (*Id.* ¶¶ 22-24, AR 175.)  According to

Plaintiff, Ms. Suzuki departed the United States with their minor child on a one-way ticket to Japan

on the same day Plaintiff was due to return to the United States, November 11, 2018.[9]  (Compl. ¶

6, AR 175.)  Plaintiff claims he was informed this was occurring by his sister on or about November

---

[8] It is the Department of State's understanding that M.S. is a dual national, and still retains his
Japanese citizenship at this time.

[9] It is noteworthy that Plaintiff alleges his wife did this without his knowledge, but Plaintiff has
also submitted with M.S.'s 2019 passport application a document which he purports to have been
electronically signed by Ms. Suzuki waiving any right to Japanese court jurisdiction, dated
November 9, 2018.  (AR 101.)  Plaintiff also provided an email printout which suggests this
document was emailed to him by Ms. Suzuki on November 9, 2018.  (AR 97-100.)  The content
of this document is plainly inconsistent with Plaintiff's allegations concerning his wife's trip to
Japan, and provides only one example of the basis for the Department of State's concerns about
the credibility of Plaintiff's assertions.

8, 2018, and he therefore remained in Japan instead of taking his flight back to the United States as planned.  (ECF No. 45-1 ¶ 26; AR 175.)  Plaintiff asserts that, at this time, he got himself an apartment and a job in Japan to start on November 12, 2018.  (AR 210.)

Plaintiff alleges he was unable to locate his wife and child in Japan for several months, until he discovered his son at his wife's parents' home on January 1, 2019.  (Compl. ¶¶ 16-17).  Plaintiff asserts that due to the poor condition of the child, Plaintiff told Ms. Suzuki he was taking M.S. back to his residence in Japan, and asked Ms. Suzuki to join them, but she refused.  (*Id.* ¶ 17.)  Plaintiff states that as he was preparing to leave the home with M.S., Ms. Suzuki's family physically sought to prevent him from leaving with the child, but Plaintiff managed to exit with his son.  (*Id.* ¶ 18.)

On January 4, 2019, Plaintiff contacted the U.S. Consulate General in Sapporo, alleging that his child had been abducted by Ms. Suzuki to Japan, but that the child was currently living with him in his apartment in Japan.  (AR 19-20.)  Plaintiff also contacted a Country Officer within the Department of State Office of Children's Issues, who observed that Plaintiff sounded erratic during the call.  (AR 36, 123.)  Plaintiff stated that Ms. Suzuki and M.S. had come to visit him in Sendai, and that Ms. Suzuki had been helping Plaintiff look for permanent housing in Japan, when one day she took M.S. to her parents' home and when Plaintiff went to the house, his wife's family was violent toward him and tried to keep him from his son.  (*Id.*)  Also on January 4, 2019, Ms. Suzuki contacted the U.S. Embassy in Tokyo, asserting that she was concerned Plaintiff would take M.S. out of Japan without her consent.  (AR 17-18, 122, 158.)  Two days later, on January 6, 2019, Ms. Suzuki again contacted the U.S. Embassy seeking to ensure that M.S.'s U.S. passport would not be issued without her consent.  (AR 156.)

On January 6, 2019, a Department of State official engaged in a phone conversation with Plaintiff, during which Plaintiff advised the official that he had filed a motion with the District Court in Hawaii (which had been forwarded to the U.S. Embassy) to compel issuance of his son's passport, and stating that Plaintiff's intention was to "return to the U.S. with his child." (AR 176.) Plaintiff also stated that he needed the passport as identification for his son. (*Id.*) Plaintiff advised on his son's birthday, Ms. Suzuki had sent a box of M.S.'s clothing rather than a birthday cake, which Plaintiff felt was a clear sign that she had abandoned the child. (*Id.*) Plaintiff inquired as to when he could "get a decision" on his son's passport, and was advised that he would have to first submit a passport application and accompanying DS-5525 "*Statement of Exigence Special Family Circumstances for Issuance of a Passport to a Minor Under Age 16*," or equivalent statement, or statement of consent from his wife. (*Id.* at 177.) The Department of State official conducting the call noted internally that, although the Department of State could not pre-adjudicate applications until submitted, review of the relevant section of the Foreign Affairs Manual suggested that the circumstances that Plaintiff described were unlikely to be sufficient to qualify as exigent or special family circumstances. (*Id.*)

In communications with Plaintiff throughout January 2019, the Department of State explained how to apply for a passport for M.S., including the requirement that both parents appear in person to execute an application on behalf of a minor and the limited exceptions to this requirement. (AR 184-85, 255-56.) Plaintiff was specifically informed that if his wife was "unable or unwilling to consent to issuance," he would be required to submit a Statement of Exigent/Special Family Circumstances, and that issuance of a minor's passport in that context appeared to rarely happen given that the interpretation for meeting the standard is high. (AR 185.)

On February 6, 2019, prior to even submitting a passport application on behalf of M.S., Plaintiff filed the first complaint in what would eventually become the instant matter in the U.S. District Court for the District of Hawaii, seeking to compel the Department of State to issue M.S. a passport.  (ECF No. 1.)  On February 9, 2019, Plaintiff appeared in person at the U.S. Embassy in Tokyo, along with M.S., and executed an application for a passport on M.S.'s behalf.  (AR 74-75.)  Ms. Suzuki was not present at the time, but Plaintiff presented a form DS-5525, *Statement of Exigent/Special Family Circumstances for Issuance of a U.S. Passport to a Minor Under Age 16*, providing only a short  description about the marital discord with his wife to support his assertion that exigent or special family circumstances existed such that the Department of State should issue the passport in the absence of his wife's consent.  (AR 79.)  Specifically, Plaintiff asserted Ms. Suzuki had brought M.S. to Japan, and that he had attempted to contact Ms. Suzuki over 200 times by phone and email during the period of November 8, 2018 to January 25, 2019, but she had been nonresponsive.  (*Id.*)  Plaintiff also alleged that Ms. Suzuki had either destroyed or refused to return M.S.'s passport, and that she sent Plaintiff an email on January 14, 2019, stating that she could not live with Plaintiff and that he should leave Japan with M.S.[10]  (*Id.*)  Plaintiff further stated that on January 12, 2019, Ms. Suzuki had shipped M.S.'s property to Plaintiff's temporary residence in Japan, and that Plaintiff was the legal guardian and sole financial provider for M.S., and he wanted to return to the United States as soon as possible.  (*Id.*)

Having determined that, based on the information available, Plaintiff had not satisfied the statutory two-parent consent requirement and did not appear to have met his burden of

---

[10] As noted *supra*, Ms. Suzuki contacted the Department of State ten days prior to the date of this email, on January 4, 2019, and then again eight days prior, on January 6, 2019, asserting that she was concerned Plaintiff would take M.S. out of Japan without her consent.  (AR 17-18, 122, 156, 158.)

demonstrating that the special family circumstances or exigent circumstances exceptions applied in his case, on February 13, 2019, the U.S. Embassy requested concurrence from Washington in a proposed decision to deny the passport application, attaching all of Plaintiff's submitted documentation to the request. (AR 269.) The communication highlighted the fact that Plaintiff had claimed he had no contact with Ms. Suzuki, but then contradicted himself and indicated that Ms. Suzuki had stayed in his home in Japan as recently as the prior month, and that he and M.S. were on their way to visit Ms. Suzuki in her hometown. (*Id.*) The communication also noted that Plaintiff claimed that Ms. Suzuki had ceded custody to him, and provided an email purporting to be from her to that effect, but that the mother had repeatedly called and emailed the U.S. embassy to tell them that she did not consent to the issuance of a passport and did not want M.S. to leave Japan. (*Id.*) The Department of State official observed that the U.S. Embassy had determined in other cases that other avenues beyond having a U.S. passport would be sufficient to facilitate a dual-citizen child's enrollment in school and to obtain medical care. (*Id.*) In conclusion, the communication noted that the U.S. Embassy had found that the burden of proof under the exigent or special family circumstances exception had not been met, and that based on the mother's express wishes against passport issuance, as well as the failure to supplement his inadequate statements on the DS-5525, the U.S. Embassy planned to deny the passport. (*Id.*)

That same day, a Department of State Program Analyst within the Bureau of Consular Affairs, Passport Services, responded by concurring with the proposed denial. (AR 353.) In relevant part, the concurrence stated: "Based on the extreme lack of credibility of the DS-5525 and the mother's express concerns to issuance, we concur with the denial. Not seeing your child for a month would not be considered abandonment, especially when there is evidence that there is still

contact between the parents, and the 'transfer of legal rights' submitted is not from a court of competent jurisdiction so it would not be acceptable for our purposes."  (*Id.*)

On February 15, 2019, the U.S. Embassy sent Plaintiff a letter and an email, indicating that Plaintiff had not met his burden of proving an exception to the two-parent consent requirement, and consequently would need to provide evidence of the mother's consent in the form of a notarized statement before a passport could be issued.  (AR 116, 488.)[11]  The U.S. Embassy informed Plaintiff that failure to provide the document within 90 days could result in a denial of the application.  (AR 116.)  Over the next several months, Plaintiff repeatedly attempted to perfect his pleadings in the Hawaii District Court, and communicated in an erratic, internally inconsistent, and often belligerent way with various entities within the Department of State.  (ECF. Nos. 6-20, AR 516-20, 538.)  On March 12, 2019, a Department of State official received a call from Plaintiff during which Plaintiff made threatening comments toward that official and engaged in a profane outburst concerning the Department of State.  (AR 519-20.)

On April 5, 2019, Plaintiff contacted the U.S. Embassy in Tokyo again to claim additional, or "stronger" exigent circumstances as to why M.S.'s passport should be issued immediately without Ms. Suzuki's consent.  (AR 530-31.)  Plaintiff indicated that he had taken physical custody of M.S. on January 2, 2019, but that Ms. Suzuki had "re-abducted" the child on March 29, 2019, after which he again re-obtained physical custody of M.S. after Ms. Suzuki "let [M.S.] go" along with a backpack that she had packed for him.  (*Id.* at 530)  Plaintiff further stated that Ms. Suzuki had voluntarily gone to a municipal building to submit forms showing that M.S. was residing with

---

[11] Also on February 15, 2019, the Department of State received an email from the office of a United States Senator, indicating that they had potential concerns about M.S.'s welfare based on an interaction with Plaintiff.  (AR 489-90.)

Plaintiff in Japan, which enabled M.S. to get a replacement insurance card, and had helped Plaintiff and M.S. move into another apartment, including assistance with getting the utilities turned on. (*Id.*)  Plaintiff explained that he believed that the amount of money he could make in Hawaii and the fact that his sister was located there and could support Plaintiff and M.S. initially constituted "stronger exigent circumstances" that should compel the issuance of his son's passport without the mother's consent.  (*Id.*)  The Department of State official observed that Plaintiff made certain statements that contradicted information he had stated during a previous call.  (*Id.*)  Plaintiff indicated that he had heard that Ms. Suzuki was considering allowing Plaintiff to return to the U.S. with their son, if Plaintiff agreed to divorce her and not seek to hold her financially liable for "damages."  (*Id.*)  Plaintiff also stated that Japanese public school was set to start on April 8, 2019, and his wife had intended to attend the "first day of school ceremony" at their son's new school, but that Plaintiff had thought he would be returning home soon and had therefore not paid the fee for M.S. to attend school.  (*Id.* at 531.)

During this April 5, 2019, call with Plaintiff, the Department of State official noted that if Ms. Suzuki was amenable to Plaintiff's departure with M.S., Plaintiff may have the following options available to him: (1) "[o]btain the original passport from the wife and depart immediately (best option)"; (2) "[o]btain the divorce domestically in Japan, get sole custody of the child, and reapply for a passport as sole custodial parent (second best option)"; (3) "reapply with his new information, and see if Department Attorneys have a different opinion (not most clear-cut option)"; or (4) "continue with his lawsuit to compel the Department [of State] to issue the passport (most onerous, time-consuming, and expensive option)."  (*Id.* at 530-31.)  The Department of State official included an internal note in reporting the content of the April 5, 2019 call indicating that it was unlikely that this new information would be sufficiently exigent to overcome the two-parent

consent requirement, specifically given the fact that, despite Plaintiff's claim that Ms. Suzuki "re-abducted" M.S., her return of M.S. with a full backpack, and her help getting Plaintiff and M.S. the forms and documentation needed for insurance and utilities, along with helping them move, made it appear that she was "accessible, engaged and supportive."  (*Id.* at 531.)

On May 17, 2019, a Department of State Citizen Services Specialist raised concerns about threats of violence that Plaintiff had made, including language that Plaintiff could "resort to unconscionable means."  (AR 538.)  On May 20, 2019, a U.S. Embassy official spoke with Ms. Suzuki, who stated that she met with M.S. about once a month, and that she did not have concerns about him apart from the fact that he did not attend a kindergarten or daycare center.  (AR 544.) Ms. Suzuki further indicated that she was seeking a divorce in Japan and hoped to obtain M.S.'s custody, and sought confirmation that no U.S. passport had been issued to M.S.  (*Id.*)

By letter dated June 4, 2019, the Department of State denied M.S.'s application for a U.S. passport, concluding that Plaintiff had failed to demonstrate two-parent consent as required by law or that any exception applied under the facts and circumstances presented by Plaintiff.  (AR 117.) The June 4, 2019 denial letter informed Plaintiff that the Department of State would consider any evidence that Plaintiff might present in the future, but that he would need to file a new passport application, submit all evidence, and pay the appropriate fees at that time.  (*Id.*)[12]  The Department of State internal denial notes related to the decision read as follows:

> Father has not provided two parent consent, and has not provided evidence of sufficient exigent circumstances to justify issuing without.  He has sent much mail, which [the Department of State] has reviewed, but based on all available information, including statements of the mother requesting that we do not issue a passport, inconsistencies with father's statements as to location of child, welfare of child, and relationship with mother, and all provided documentation, [the

---

[12] Defendants note that, while Plaintiff has filed many additional filings with various courts, Plaintiff has not submitted any further application for a passport on behalf of M.S. contending that relevant circumstances have changed since June 2019.

Department of State] finds that passport should be denied.  More than 90 days was given to father to respond to request for 2 parent consent.  Father has at times claimed that he has had no contact with mother since arrival in Japan, however at time of interview [stated he] had seen her a few weeks prior, and was leaving Embassy to go to her town for a visit.  Deny.

(AR 66.)

## STANDARD OF REVIEW

### I.  Rule 56 Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Johnson v. Perez*, 66 F. Supp. 3d 30, 35 (D.D.C. 2014) (quoting *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008)).

The party moving for summary judgment has "the burden of demonstrating the absence of a genuine dispute as to any material fact."  *Johnson*, 66 F. Supp. 3d at 35 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving party satisfies this burden, the "non-moving party must designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (citing *Celotex*, 477 U.S. at 324).  While the Court must view evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, the "non-moving party must show more than '[t]he mere existence of a scintilla of evidence in support of' his or her position."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  "Moreover, the non-moving party 'may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial.'"  *Id.* (quoting *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).

## II.    Standard for Judicial Review of Administrative Agency Action

With respect to actions brought under the Administrative Procedure Act ("APA"), seeking review of final agency action, "[t]he [summary judgment] standard set forth in [Federal Rule of Civil Procedure] 56(c) [] does not apply because of the limited role of a court in reviewing the administrative record." *Brodie v. U.S. Dep't of Health & Human Servs.*, 796 F. Supp. 2d 145, 150 (D.D.C. 2011) (citing *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)). "'[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Brodie*, 796 F. Supp. 2d at 150 (quoting *Sierra Club*, 459 F. Supp. 2d at 89). Where, as here, Plaintiffs "challenge a discretionary action by an administrative agency, the Court must apply the deferential standard of review embodied in the [APA]." *Canales v. Paulson*, No. 06-cv-1330, 2007 WL 2071709, at *4 (D.D.C. July 16, 2007) (citing 5 U.S.C. § 706). The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

As a result, the arbitrary and capricious standard is "[h]ighly deferential," and "presumes the validity of agency decisions." *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000); *see also Wildlife Fed. v. Browner*, 127 F.3d 1126, 1129 (D.C. Cir. 1997) ("[C]ourt[s] accord[] substantial deference to an agency's interpretations of its own regulations.") (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *Consarc Corp. v. U.S. Treasury Dep't, Office of Foreign*

*Assets Control,* 71 F.3d 909, 915 (D.C. Cir. 1995) ("[A]n agency's application of its own regulations[] receives 'an even greater degree of deference than the [*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984)] standard, and must prevail unless plainly inconsistent with the regulation.'") (quoting *Consarc Corp. v. Iraqi Ministry,* 27 F.3d 695, 702 (D.C. Cir. 1994)); *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008) ("[I]t is not enough for the agency decision to be incorrect—as long as the agency decision has some rational basis, the court is bound to uphold it.").

## ARGUMENT

### I.    The Department of State's Decision Was Not Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law

In this case, the Department of State carefully considered whether Plaintiff had satisfied the two-parent consent requirement and whether any of the facts he had presented in support of his application could fall into any of the exceptions to this requirement.  At the time the Department of State denied the passport application submitted by Plaintiff on behalf of M.S., in June 2019, it was clear that M.S.'s mother, Ms. Suzuki, did not consent to (and indeed, specifically opposed) the issuance of a passport for the child.  (AR 17-18, 122, 156, 158, 544.)  Moreover, Plaintiff did not provide any order from a court of competent jurisdiction granting him sole legal custody in support of the application.  Thus, the exceptions set forth in 22 C.F.R. § 51.28(a)(3) did not apply. Rather, Plaintiff contended he had established that exigent or special family circumstances existed justifying issuance of the passport in the absence of the mother's consent.  As noted *supra*, consistent with Congressional intent that both parents consent to issuance of a passport to a minor absent limited exception, the Department of State applies the exigent and special family circumstances exception narrowly to ensure that the anti-fraud and anti-international child abduction concerns underlying the requirement are not undermined.  *See* ECF No. 114-2 ¶ 2.

The Department of State acted well within its discretion in determining that, as of June 2019, Plaintiff had not established that either the exigent or special family circumstances exception was met, and that determination is supported by the record.  (*See* AR 66, 175-77, 269, 353, 530-31.)  Plaintiff's statements and submissions to the Department of State were at times inconsistent and contradictory.[13]  (*See, e.g.*, AR 269.)  The Department of State placed importance on the fact that the DS-5525 form Plaintiff submitted concerning exigent and special family circumstances lacked credibility, and, of course, on the fact that Ms. Suzuki had expressly raised concerns regarding issuance of the passport.  (*Id.*; AR 353.)

Even if there had not been a problem with the Plaintiff's credibility, his form DS-5525 statement of exigent/special family circumstances facially did not meet the requirements of either an exigent or a special family circumstance.  He did not assert any facts that suggested there was, for example, a time-sensitive need for the child to travel from Japan, or that M.S.'s health, safety, or welfare was in jeopardy.  (*See* AR 79.)  In fact, by the time Plaintiff submitted his passport application, M.S. had been living with him in Japan for over a month and the application never mentioned any particular plane reservations or other plans to travel.  Moreover, as the regulations make clear, "'[t]ime sensitive' generally means that there is not enough time before the minor's emergency travel to obtain either the required consent of both parents/legal guardians or documentation reflecting a sole parent's legal guardian's custody rights," 22 C.F.R. § 51.28(a)(5)(i), neither of which is relevant here.

---

[13] Indeed, Defendants included the Department of State's response to Plaintiff's Freedom of Information Act request in the administrative record, *see* AR 549-1259, only because those documents were being assembled by consular staff at the same time as Plaintiff was applying for M.S.'s passport, and were therefore before the agency when the denial decision issued.  Plaintiff's previous history of making outlandish claims is part of the context in which the passport application arose.

Nor did Plaintiff's statements suggest a "special family circumstance"; rather, Plaintiff's form DS-5525 statement and the evidence in the record reflected that Plaintiff and his wife were in the middle of a marital disagreement and that he and his wife disagreed over who should have custody of the child and where the child should live.  Rather than being unusual or special, this is exactly the type of situation that Congress envisioned when it enacted the two-parent consent rule.  The Department of State afforded Plaintiff an additional period of time to provide evidence of Ms. Suzuki's consent to the passport.  (AR 116, 488.)  Plaintiff, however, never submitted a notarized statement from Ms. Suzuki, nor did he submit any additional evidence which would suggest special or exigent family circumstances existed, as defined in 22 C.F.R. § 51.28(a)(5).

Under these circumstances, the Department of State's June 4, 2019 denial was fully supported by the record, and the Department of State did not act arbitrarily, capriciously, or unlawfully in determining that Plaintiff had not sufficiently demonstrated exigent or special family circumstances warranting an exception to the two-parent consent requirement.  Rather, the Department of State acted within its discretionary authority in interpreting its own regulations and properly determined that, in the specific context of this case, Plaintiff had not submitted adequate evidence demonstrating that exigent or special family circumstances warranted the issuance of a passport without both parents' consent.

## II.    Plaintiff's Demand for Monetary Damages Is Barred By Sovereign Immunity

It is well-settled that suits for damages against the federal government under the APA are "barred by sovereign immunity[.]"  *Benoit v. USDA*, 608 F.3d 17, 20 (D.C. Cir. 2010).  The APA provides a right of review to persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to the extent such action seeks "relief other than money damages."  5 U.S.C. § 702.  Thus, the APA's waiver of sovereign immunity *only* applies to the extent Plaintiff seeks relief *other than* money damages.

*See McKoy v. Spencer*, 271 F. Supp. 3d 25, 32 (D.D.C. 2017).  Accordingly "any APA injury alleged by [Plaintiff] cannot be remedied by a damage award," *Gore v. Wilkie*, Civ. A. No. 19-1134 (RDM), 2020 WL 2838662, at *5 (D.D.C. May 31, 2020), and Plaintiff's claim for monetary damages fails as a matter of law.[14]

## CONCLUSION

For the foregoing reasons, Defendants should be granted summary judgment on Plaintiff's claim.

Dated: June 5, 2020                     Respectfully submitted,


MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: */s/ Katherine B. Palmer-Ball*
KATHERINE B. PALMER-BALL
D.C. Bar #1014003
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2537
katherine.palmer-ball@usdoj.gov

*Counsel for Defendants*

---

[14] Nor, as Plaintiff argues, may he pursue claims against Defendants under the Takings Clause of the Fifth Amendment to the U.S. Constitution.  *See* ECF No. 106 at 8-9.  The Takings Clause provides that "private property" shall not "be taken for public use, without just compensation."  *Id.* at 8 (citing U.S. Const., amend. V).  The Takings Clause is inapposite here, as Plaintiff cannot point to any private property being taken for public use.  To the extent that Plaintiff attempts to assert a Fifth Amendment Due Process Clause claim, *see id.*, sovereign immunity would likewise bar any claim for damages.  *See Benoit*, 608 F.3d at 98 (observing that suits for damages against the United States under the Constitution are barred by sovereign immunity); *McKoy*, 271 F. Supp. 3d at 32 ("The APA's waiver of sovereign immunity only applies to Plaintiff's First and Fifth Amendment claims to the extent Plaintiff seeks relief 'other than money damages.'").

21