IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACK STONE, | ) |
| Plaintiff, | ) ) ) Case No. CV 19-3273 |
| vs. | ) ) ) |
| UNITED STATES DEPARTMENT OF STATE CA/OCS/CI, AND U.S. EMBASSY TOKYO, | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF OBJECTS TO DEFENDANTS EXPARTE AND IN CAMERA
MOTION REGARDING REDACTED 8 FAM EXIGENCY
AND SPECIAL FAMILY CIRCUMSTANCES MATTERS**

Defendants redacted portions of the Administrative Record, contains information at heart to the issuance of passport for Plaintiff's Child, notably 8 FAM 512.5.

8 FAM 512.5 is part of Defendants' Foreign Affairs Manual and Handbook (Manual), and what is used to determine whether a child's passport will be issued considering exigency or special family circumstances.

Specifically, 8 FAM 512.5 addresses exigency and special family circumstances.

That this information would be kept from Plaintiff is suspect.

8 FAM 512.5 is not a state secret.

Divulging its content would not put anyone's life at risk.

If Defendants had actually cared about anyone's life being put at risk, they would have issued Plaintiff's child a passport in February of 2019, and would have considered the child's health, safety and well-being, in denying issuance of passport, which they have not.

Plaintiff is in the process of providing the Court a breakdown on several important documents that are part of the Administrative Record.

Plaintiff will be able to prove, Defendants DID NOT consider exigency, or special family circumstances when denying issuance of passport. Plaintiff will be able to prove Defendants intentionally withheld numerous documents that are part of the Administrative Record. These

1

documents show Defendants never considered exigency, or special family circumstances, and didn't initiate Hague Convention proceedings, even at the time the child's whereabouts were unknown to Plaintiff.

Defendants' actions are retaliatory because Plaintiff brought suit, and Defendants discuss this in the record. Defendants used Plaintiff's FOIA request as part of the determination to refuse to reissue passport. Defendants repeatedly sought "concurrence" in refusing to reissue passport, because Defendants didn't like the fact that Plaintiff had brought suit.

The Administrative Record shows Defendants had not only not considered exigency, or special family circumstances, but pre-adjudicated denying the child's passport, because they don't like Plaintiff, and had "hoped" Plaintiff stopped communicating with the Embassy.

Now, imagine being in a foreign nation, and the only organization that can aid you in any matter, is Defendants, and they openly engage in communications that malign, attack and discredit you. Under these circumstances it is impossible to expect Defendants to engage in civility, without court involvement.

Defendants' employees repeatedly sent documents to other staff, campaigning for others to "concur" in denying the passport, not based on anything more than they don't like Plaintiff, and from employees who hadn't even viewed Plaintiff's child's passport application, or supporting exhibits. One employee states, "Can we just deny it like we usually do?"

Shockingly, Defendants communicated with the mother/abductor, and had not discussed any Hague Convention matter, which she had inquired into, but instead aided her in putting the child into the Children's Passport Issuance Alert Program. Why is this? Especially, where communications showed the mother had no concerns about the child's safety and had not sought that information on her own.

Defendants initiated contact and proved that information, all while ignoring every application filed by Plaintiff. Defendants employees repeatedly are told to hang up when Plaintiff calls, and to ignores his email communications.

Is this conduct not arbitrary and capricious, as this is the standard applicable to this Court in determining to compel issuance of passport?

Several times, in advance of filing suit in Hawaii, Defendants, prior to passport application, prior to viewing any supporting evidence, and prior to in-person interview, told Plaintiff they would not reissue passport. Is this not suspect? Is this not arbitrary and capricious? These are not

2

matters made up by Plaintiff, who Defendants repeatedly malign as delusional, violent, and not credible, these are Defendants' employees own words, and exist on the face of numerous documents in the Administrative Record.

Defendants attempted to involve Child Protective Services, and considered taking Plaintiff's child, and turning the child over to the abductor. In a nation Defendants know doesn't even criminalize kidnappings.

Defendants attempted to file criminal charges against Plaintiff and contacted the FBI, and other policing agencies, acting in bad faith, and with malice, attempting to obtain criminal charges against Plaintiff, because Plaintiff had yelled at one of their staff, who repeatedly laughed at Plaintiff and repeatedly told Plaintiff his child was not abducted. This, while Plaintiff was under threat of arrest, and deportation, and threat of eviction.

Counsel Glenn Melchinger, who represented Plaintiff in Hawaii, told Plaintiff Defendants were going to use these very tactics to attack Plaintiff.

Plaintiff has not committed any crime. Japanese police have sided with Plaintiff, and more than once aided Plaintiff in having the child returned to Plaintiff, after the mother attempted reabduction.

Japanese officials have sided with Plaintiff, recognizing he is a caring father. Japanese officials have repeatedly come to Plaintiff's current dwelling place, always acting compassionately, in stark contrast to the abusive Defendants.

School officials have visited Plaintiff as these Court matter drags on, and, they recognize Plaintiff's child is well educated, far beyond that of most children the child's age.

Japanese officials have guaranteed that if Plaintiff enrolls his child in school, they will ensure the mother is not permitted to enter the school grounds, or take the child.

Finally, Japan's family court, dismissed the wife's attempt at obtaining custody. Why is this? If Plaintiff has the character Defendants pretend? Factually, in Japan's 800-year history, Plaintiff is the first non-Japanese parent to obtain such order. And that order was issued at a time Plaintiff was representing himself, in a language Plaintiff cannot communicate in. The only short coming of the Japanese court was they didn't provide sole parental custody. This effectively left Plaintiff without any remedy, and relies on this Court to act reasonably and consider the damage Defendants have intentionally heaped upon Plaintiff.

Hiding the most relevant matter, Defendants Manual is grossly prejudicial.

The day before filing this motion, June 12th 2020, Plaintiff received documents from the law firm, which initiated eviction proceedings. As well, Plaintiff's "human rights" six-month visa expires June 27th 2020. Even so, Defendants pretend there is no reason to issue passport for Plaintiff's child, but instead, openly hope Plaintiff is arrested, deported and loses his children.

Defendants are not trying to protect Plaintiff's children. Defendants are acting in bad faith, maliciously, and use their authority to undermine the legal system, and their requirements under Treaties, Acts of Congress, and their own interdepartmental regulations.

The Administrative Record shows they have used Plaintiff's FOIA request, and this suit as the reason they refuse to reissue passport, and take the action they do against Plaintiff. These are not Plaintiff's words; they are Defendants' own words and is reflected on the face of numerous documents in the Administrative Record.

As Defendants have intentionally withheld numerous documents from this Court in their Administrative Record filings, which Plaintiff is aware exists. What else are they hiding that this Court, and Plaintiff do not know exists?

While Defendants repeatedly falsely claim Plaintiff is not credible. In fact, it is the Defendants' employees who are not credible.

This Court should be concerned with why Defendants failed to disclose the entire Administrative Record.

Why did Defendants attempt to deceive this Court?

Why did Defendants not include as part of the "complete" record, Plaintiff's Hague Convention application filings?

Why didn't they include letters to Ambassador Bill Hagerty, or letters of protest to Scott Renner who provided a sworn affidavit that they turned over the complete record?

Why didn't they include Plaintiff's letters of protest to Central Authority directors David Brizzee, and Gregory Gardner.

Why didn't Defendants include any communication, Plaintiff had initiated to block the child from being abducted out of Florida?

Why after abduction did Defendants aid the abductor in filing documents to enroll the child in the Children's Passport Issuance Alert Program? Yet, failed to do that when Plaintiff contacted Defendants back in November of 2018? Plaintiff has already communicated to this Court, Defendants violated the Goldman Act, by permitting the child to be abducted out of the U.S.

4

Defendants commit a fraud on this Court, by failing to provide the entire record, and has taken such action attempting to influence the outcome of this matter, even where Defendants stand to gain NOTHING from a favorable ruling for Plaintiff, yet, Plaintiff stands to be arrested, deported and permanently cut off from a relationship with both of his children.

Does this Court believe that Plaintiff will permit Defendants to steal anything else from Plaintiff, his wife, and his children?

Defendants employees, a clique of malcontents, simply don't like Plaintiff, because he has stood up to their abuses.

Congress has repeatedly castrated Defendants for the very same harms they have caused Plaintiff, and to innumerable other caring U.S. citizen parents, and the children they lost contact with forever, after being abducted into Japan.

Defendants have a Hague Convention "non-compliance" list. It is the Defendants that are noncompliant.

There are currently more than 1200 children, U.S. citizen children abducted into Japan, and no U.S. citizen parent has eve seen them again. There are thousands more. Those have become adults and are no longer considered abducted, even though they were.

Defendants cannot point to a single child they have ever aided in being returned to the U.S.

Defendants poor conduct flies in the face of their requirements under The Hague Convention, under Congress' International Child Abduction Remedies Act, the Goldman Act, the UN Rights of the Child, and notably the U.S. Supreme Court holding in Abbott v. Abbott that child abduction is the worst form of abuse.

Keeping 8 FAM 512.5 hidden from Plaintiff affects Plaintiff's ability to adequately respond to Defendants' Opposition Motion filed June 5th 2020.

That Defendants want the matter limited to "ex parte" or "in chambers" means they want to influence the Court, without the presence of Plaintiff and use that process to affect the outcome of the underlying issues.

Despite Defendant and the Court's lack of respect for Plaintiff being "pro se", Plaintiff does have a juris doctorate, and has worked in both family courts and juvenile courts. Plaintiff worked on abuse cases, child abandonment cases, divorce cases, and the like. Plaintiff has been "in chambers" and has witnessed how attorneys who are familiar with the judge used those proceedings as leverage.

5

Defendants don't need any more leverage over Plaintiff. They destroyed Plaintiff's ability to property care for his child. They took everything Plaintiff had, Plaintiff's money for his wife's visa, money to issue passport, money to issue citizenship to his second child, yet, the Administrative Record shows Defendants never intended to provide any of these services, because Plaintiff filed suit.

Defendants are powerful government agencies.

Secretaries of State bully other nations into submission. They have used tactics of propaganda to initiate wars, overthrow governments and destabilize nations and entire global regions.

Defendants counsel is the largest law firm in the world, most funded and most powerful.

Does Plaintiff really need to remind this Court what he is up against, even without Defendants failing to provide a complete Administrative Record, and, Defendants not hiding relevant 8 FAM portions from Plaintiff?

Unlike Defendants, Plaintiff wants to preserve his family.

Plaintiff has not once been accused of abuse or neglect by his estranged wife. Yet, Defendants have repeatedly called Plaintiff violent, delusional and not credible. Plaintiff expected these attacks.

What Defendants fail to recognize is, Plaintiff is a parent. A concerned, hands on parent, of a six-year-old child, who long ago, completed elementary school level study and beyond, even where the child remains months away from entering first grade.

Who is it that educates the child? It's the Plaintiff.

Who is it for the past year and a half that holds the child when he cries about being abandoned by his mother.

Who is it that CANNOT cry, when that is all Plaintiff wants to do?

Who is it that suffers, but a child intentionally kept in isolation, having no friends and forced to exist in a culture that in reality treats them as subclass, as Defendants treat Plaintiff and the child?

The Administrative Record reflects Plaintiff stood up to Japanese employers that treated him subclass, as is always the case in Japan. Plaintiff prevailed repeatedly, but also suffered the consequences by being detained.

Without doubt, these circumstances have caused Plaintiff to lash out, attempt to protect his family, and call them by name what they are, assholes, bullies, cunts. How are these words any different from words Defendants use to malign Plaintiff; delusional, not credible, violent, a criminal?

Assholes, bullies and cunts are not defamatory, yet, delusional, not credible and violent are.

Plaintiff didn't attend law school to be stranded in a foreign country, held as hostage, and threatened with arrest, deportation and eviction, to be kept in a perpetual state of fear, and mocked for doing what any responsible parent would do.

Plaintiff "gets it" Defendants don't like him.

Plaintiff doesn't' like Defendants either. Plaintiff wishes them all a "happy Benghazi."

It appears nearly the entire nations populace, and other nations as well, don't like the Defendants either, given the current state of affairs.

The Foreign Affairs Manual and Handbook also addresses Consular Reports of Birth Abroad. This too is relevant, as it pertains to Defendants even going so far as to refuse to issue a Consular Report of Birth Abroad of a U.S. Citizen. In reality, a mere piece of paper.

Plaintiff demands whatever sections of the Manual that relates to issuance of passport, or issuance of Consular Reports of Birth Abroad be turned over to Plaintiff immediately. As well, that the portions of the Administrative Record that has been redacted provided.

It is grossly prejudicial for this information to be used against Plaintiff, yet, hidden from Plaintiff.

Exhibit A., is a true and correct copy, of the Foreign Affairs Manual and Handbook located on the Internet. The portions Plaintiff requires are not accessible. If this information was so "secretive", then why is it located on the Internet, where a hacker could easily access, and place publicly, as is the case times innumerable regarding U.S. government information that is kept from the general public.

Exhibit B., are portions of the Administrative Record Defendants have redacted. As this Court can see, what is redacted is a core issue in the underlying matter. These files, and there may be more, must be provided to Plaintiff, without redaction.

In balancing the importance of these issues, the Court should rule in Plaintiff's favor.

This Court has the power to Order Plaintiff not divulge the information to any third party, and Plaintiff would adhere to such Order.

**DEMAND**

Plaintiff demands access to 8 FAM, and the relevant sections of the Foreign Affairs Manual and Handbook.

Filed,
June 13th 2020

Jack Stone
/s/ Jack Stone
Maison Sato 101
2-2-15 Tsunogoro
Aoba, Sendai, Miyagi
Japan 980-0874
Email: mail@stackjones.com

**CERTIFICATE OF SERVICE**

I hereby certify that on Jun 13th 2020, I served a copy of this Filing, via CM/ECF on Defendant counsel, Katherine B. Palmer-Ball, Assistant United States Attorney, at katherine.palmer-ball@usdoj.gov.

/s/ Jack Stone

# EXHIBIT A.



**U.S. DEPARTMENT OF STATE**
FOREIGN AFFAIRS MANUAL AND HANDBOOK

HOME    FAM    FAH    SEARCH

Home > FAM > 8 FAM

### Foreign Affairs Manual: 8 FAM FAM Passports and Consular Reports of Birth Abroad
View Recent Change Transmittals

[        ] [Search: 8 FAM]

- 8 FAM FAM Passports and Consular Reports of Birth Abroad
  - 100 INTRODUCTION TO 8 FAM U.S. PASSPORT AND CONSULAR REPORTS OF BIRTH ABROAD
  - 200 UNAVAILABLE
  - 300 (U) U.S. CITIZENSHIP AND NATIONALITY
  - 400 UNAVAILABLE
  - 500 UNAVAILABLE
  - 600 UNAVAILABLE
  - 700 UNAVAILABLE
  - 800 UNAVAILABLE
  - 900 UNAVAILABLE
  - 1000 UNAVAILABLE
  - 1100 UNAVAILABLE
  - 1200 UNAVAILABLE
  - 1300 UNAVAILABLE

STATE.gov  USA.gov                                        HOME   PRIVACY & DISCLAIMERS   CONTACT

# EXHIBIT B.



He asked when he would "get a decision" on his son's passport, and conoff stated that "decisions" could not made without submission of a DS-11 passport application and accompanying DS-5525 "*Statement of Exigent/Special Family Circumstances for Issuance of a Passport to a Minor Under Age 16*", or equivalent statement. Conoff also noted that any claimed special circumstances regarding his specific claim (needing an ID, presumably to obtain benefits), per 8 FAM 502.5-3d(9) would require prior authorization from AskPPTAdjudication@state.gov (as would any claim under d(8)).

He stated that he understood that particular decision could not be made at post and would need approval from Washington.

[ACTION] Although it's not likely to qualify as an exigent or special family circumstance after reviewing the FAM, as noted above, we can't preadjudicate. Since the passport was neither lost nor cancelled in error, and he does not qualify for a no-fee reissuance. Let's send an email to Mr. Stone explaining the DS-11 and DS-5525 process.

UNDER SEAL
NOT FOR FURTHER DISTRIBUTION

STATE-0177

19-3273 (RC)
STONE V. U.S. EMBASSY TOKYO

| From: | AskPPTAdjudication | |
|---|---|---|
| To: | | AskPPTAdjudication; |
| Cc: | JapanIPCA; | |
| Subject: | RE: ACS case Tokyo | |
| Date: | Friday, January 4, 2019 10:17:44 AM | |

Greetings,

Unfortunately we (PPT/A) do not have a public-facing email box and we do not reach out to applicants directly from this office. We normally direct Post to reach out to the applicant.

If Mr. Stone is concerned about his son traveling with the mother, Post could ask Mr. Stone if he would like to go through OCS/CI to place a C hold on the case for future issuances.

As you know, absent a C hold or court order providing for sole legal custody/permission for passport with 1PC there are instances where 2PC could be overridden with a DS-5525 under 8 FAM 502.5 Exigent or Special Family Circumstances, mainly when SBU FAM References ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The Embassy should have a list of English-speaking lawyers who may be able to assist if he goes the court order route.

Hope this is helpful,

▇▇▇▇

▇▇▇▇▇▇▇▇
Program Analyst
U.S. Department of State
Bureau of Consular Affairs, Passport Services
Office of Adjudication- Policy Division
Office: ▇▇▇▇▇▇
BB: ▇▇▇▇▇▇
Email: ▇▇▇▇▇▇▇▇

Privacy/PII
This email is UNCLASSIFIED.

From: ▇▇▇▇▇▇
Sent: Friday, January 04, 2019 10:00 AM
To: ▇▇▇▇▇▇ AskPPTAdjudication; ▇▇▇
Cc: ▇▇▇▇▇▇ JapanIPCA; ▇▇▇▇▇▇
Subject: ACS case Tokyo

UNDER SEAL
NOT FOR FURTHER DISTRIBUTION

STATE-0125

19-3273 (RC)
STONE V. U.S. EMBASSY TOKYO