UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK STONE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-3273 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 72, 73, 78, 79, 81, 82 |
| | : | | |
| U.S. EMBASSY TOKYO, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND THE SECOND AMENDED COMPLAINT

## I.  INTRODUCTION

In this case, Plaintiff Jack Stone ("Stone"), proceeding *pro se*, claims that the United States Embassy in Tokyo and the Department of State ("Defendants") have unlawfully refused to issue citizenship and immigration documents that he requested for his family.  This case was transferred from the District of Hawaii, and Plaintiff has now made additional filings in this court: a request for an order of return under the Hague Convention on the Civil Aspects of International Child Abduction; motions for orders to compel the Department of State to grant U.S. citizenship to his children and issue his wife's visa; and claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA") for an incident involving a Department of State official.  Construing these filings as motions to amend the complaint, the Court will grant them in part and deny them in part for the reasons explained below.

## II.  BACKGROUND[1]

Plaintiff, a United States citizen currently residing in Japan, filed suit against Defendants in the District of Hawaii, seeking an order to compel the issuance of Plaintiff's first-born child's passport and unspecified damages.  Pl.'s Second Am. Compl. ("Pl.'s SAC") 1, 9, ECF No. 39.  In Plaintiff's Second Amended Complaint, the operative complaint in this case, Plaintiff pled that his wife left the U.S. for Japan with Plaintiff's child without Plaintiff's consent.  Pl.'s SAC ¶ 6.  Plaintiff later claimed that his wife left the U.S. out of fear that she would be deported because Defendants had not issued her visa, despite Plaintiff submitting an I-130 (Petition for Alien Relative) on behalf of his wife more than a year prior.  *See* Pl.'s Aff. of Wife's Visa Appl. ("Pl.'s Aff.") 5, 7, ECF No. 102.

The District Court for the District of Hawaii transferred this case to this District "so that substantive issues can be addressed on their merits."  Order Den. Pl.'s Emergency Mot. and Transferring Action ("Transfer Order") 17, ECF No. 64.  Prior to transferring this case, however, the District of Hawaii Court made two preliminary determinations.  First, Plaintiff's vague claim for unspecified damages was insufficient to find waiver of Defendants' sovereign immunity for the claim.  *See id.* at 9.  Second, the Administrative Procedure Act applied to Plaintiff's claim for

---

[1] This background is drawn from the facts Plaintiff (1) pled in the Second Amended Complaint and (2) alleged in support of his subsequent filings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff [in a proposed amendment] may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.").  Plaintiff's filings, which the Court construes as motions to amend, must be able to satisfy a motion to dismiss standard, which means that the filings "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ford v. Suntrust Mortg.*, 282 F. Supp. 3d 227, 232 (D.D.C. 2017) ("[I]f Plaintiffs' proposed Amended Complaint would fail to state a claim under the *Twombly/Iqbal* pleading standard, those proposed amendments would be 'futile.'").

an order to compel Defendants to issue his first-born child's passport, "thereby waiving [Defendants'] sovereign immunity." *Id.* at 10. This claim is currently the subject of a separate summary judgment briefing and not at issue here.

Following the District of Hawaii's transfer of this case, Plaintiff made additional filings, including: (1) a request for a return order as to Plaintiff's first-born child under the Hague Convention on the Civil Aspects of International Child Abduction, ECF Nos. 72, 78[2]; (2) a motion to compel U.S. citizenship for Plaintiff's second-born child, ECF Nos. 73, 79[3]; (3) a request to add Hughes Ogier, a Department of State official, to the suit as an additional defendant and bring claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act for an unrelated incident involving him, ECF Nos. 81, 81-1; and (4) a motion to compel Defendants to issue Plaintiff's wife's visa, ECF No. 82.[4] The Defendants treated these filings as motions to amend the Second Amended Complaint. The filings are now fully briefed and ripe for the Court's consideration.

---

[2] Plaintiff filed ECF No. 78, which appears to be an amendment to ECF No. 72. In ECF No. 78, Plaintiff put forward his argument for why the Court should procedurally grant leave to amend the complaint. In a supporting document, ECF No. 78-1, Plaintiff highlighted the grounds on which he sought a request to include a Return Order. The basis of ECF No. 72 and ECF No. 78 remain the same, with the same requested relief and basic facts to support the request. As such, this Order applies to both filings.

[3] After filing ECF No. 73, Plaintiff made an additional—nearly identical—filing seeking an order to compel U.S. citizenship for his second child. *See* Pl.'s Mot. to Compel U.S. Citizenship, ECF No. 79. The Court will reference only ECF No. 73, but this Order applies to both filings.

[4] In his pleadings, Plaintiff references a Freedom of Information Act ("FOIA") request, *see, e.g.*, Pl.'s Mot. to Am. ¶26, ECF No. 81-1, but does not appear to be seeking to amend the complaint to include a FOIA claim.

### III.  LEGAL STANDARD

The Court agrees with Defendants that Plaintiff's filings should be construed as motions to amend, as the filings seek to introduce novel claims, add new factual allegations and a new defendant, and broaden the scope of the operative complaint.[5] A party may amend its pleading once as a matter of course within twenty-one days after serving its pleading, or within certain time periods if the pleading is one to which a responsive pleading is required.  Fed. R. Civ. P. 15(a)(1); *see Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015).  Otherwise (such as here, when a party has already filed amended pleadings), a party may amend its pleading only with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a)(2); *see also Knight*, 808 F.3d at 860.  The decision to grant or deny leave to amend "is committed to a district court's discretion," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), and should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2).  However, the court may deny a motion to amend if the proposed amendment would be futile.  *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The motion to amend is futile if the "proposed claim would not survive a motion to dismiss." *James Madison LTD by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  Of course, a court must be mindful that a *pro se* litigant's complaint is "construed liberally and is held to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Lemon v. Kramer*, 270 F. Supp. 3d 125, 133 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

---

[5] Even if the Court construed the filings as motions to supplement, a motion to supplement is "subject to the same standard" as a motion to amend.  *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008).

## IV.  ANALYSIS

As an initial note: the local rules provide that a motion for leave to amend "shall attach, as an exhibit, a copy of the proposed pleading as amended."  Loc. Civ. R. 15.1.  Failure to follow Local Rule 15.1 may be the basis for the court to deny leave to amend.  *See Parker v. District of Columbia*, No. 14-2127, 2015 WL 7760162, at *2 (D.D.C. Dec. 1, 2015) (holding that a *pro se* plaintiff's request to amend was insufficient because he failed to comply with local Rule 15.1 and did not indicate the grounds on which he sought an amendment, leaving the court "unable to assess the merits of his request").  Although Mr. Stone did not provide a consolidated version of a proposed third amended complaint in any of his filings, he did provide enough detail for the Court to evaluate the merits of each request.  For these reasons, the Court will overlook the Rule 15.1 requirement and consider each additional proposed claim in turn.

### A.  Order for Return under the Hague Convention on the Civil Aspects of International Child Abduction

Invoking the Hague Convention on the Civil Aspects of International Child Abduction ("Convention"), Plaintiff requests an order for return for his first-born minor child, who was taken by Plaintiff's wife to Japan.  Pl.'s SAC ¶ 6.  Defendants' primary contention is that an amendment to include this request would be futile because the Court lacks jurisdiction to order the child's return from Japan.  Defs.' Opp'n to Pl.'s Mot. for Leave to Am. ("Defs.' Opp'n") 3, ECF No. 89.

The Hague Convention on the Civil Aspect of International Child Abduction aims to "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."  Hague Convention on the Civil Aspects of International Child Abduction art. 1(a), Oct. 25, 1980,

https://assets.hcch.net/docs/e86d9f72-dc8d-46f3-b3bf-e102911c8532.pdf [hereinafter Convention].  The "central operating feature" of the Convention is a parent's right to petition a Contracting state for the child's return to the child's country of habitual residence, which would be the forum for any child custody adjudications.  *Abou-Haidar v. Vazquez*, 945 F.3d 1208, 1210 (D.C. Cir. 2019) (internal citation omitted).

The United States, a contracting state to the Convention, codified the provisions of the Convention through the International Child Abduction Remedies Act ("ICARA").  *See Abbott v. Abbott*, 560 U.S. 1, 5 (2010) (citation omitted).  Under ICARA, "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so . . . by filing a petition for the relief sought in any court . . . which is authorized to exercise its jurisdiction in the place *where the child is located at the time the petition is filed*."  *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 154 (D.D.C. 2011) (quoting 42 U.S.C. § 11603(b)).  ICARA is consistent with Article 12 of the Convention, which provides that "[w]here a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State *where the child is* . . . the authority concerned shall order the return of the child forthwith."  Convention art. 12 (emphasis added).  Overall, it is abundantly clear that, for a federal district court to order the return of an abducted child under ICARA, the aggrieved parent must "file a petition in state or federal district court for the return of a child located within the court's jurisdiction," *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 197 (E.D.N.Y. 2010), and that a child located abroad is not within that jurisdiction, *see id.* ("[P]etitioner bears the initial burden to show by a preponderance of the evidence that the child has been wrongfully removed to or retained in *this country* within the meaning of the Convention." (emphasis added)); *see also Fernandez v. Bailey*, 909 F.3d 353,

6

359 (11th Cir. 2018) ("Because ICARA requires reviewing courts to have personal jurisdiction over the abducted child, a parent can only file a return petition in the district where the child is located.").

Because Plaintiff represents that he discovered his child in Japan and currently resides there with his child, there is no dispute that the child is located in Japan. Plaintiff's complaint and other filings make clear that his wife left for Japan from the United States with Plaintiff's child on November 11, 2018. Pl.'s SAC ¶ 6; Pl.'s Aff. 8. And on January 1, 2019, Plaintiff discovered his son at Plaintiff's parents-in-law's house in Japan. Pl.'s SAC ¶ 17. Thus, Plaintiff's child is outside the jurisdiction of the Court, and the Court cannot issue a return order under ICARA.

Plaintiff seems to recognize that Japan is the appropriate venue for seeking a return order, but has been unsuccessful in obtaining a return order from Japanese authorities. *See* Pl.'s Reply 11, ECF No. 101. Plaintiff argues that, with Japanese authorities seemingly unwilling to help, his only recourse is to request a return order from a U.S. court. *See id.* at 11–12. The Court acknowledges the apparent unfairness of the situation, but is powerless to remedy it, as it simply has no authority under ICARA to order the return of a child located abroad. Indeed, Plaintiff has not cited a case in which a court ordered a return under analogous circumstances. The Court will therefore deny as futile Plaintiff's request to amend his complaint to include an order for return under the Convention.

### B. Motion to Compel U.S. Citizenship for Plaintiff's Second Minor Child

Plaintiff's second child[6] was born on September 27, 2019 (after this suit was filed), and he now seeks an order to compel Defendants to grant U.S. citizenship to this child. Pl.'s Mot. to Compel U.S. Citizenship 1, 3, ECF No. 73. Defendants contend that this claim is not ripe for the Court to adjudicate. They suggest that, because Plaintiff has not completed the steps required for the Department of State to make a determination on the matter of the second-child's citizenship, there has not been final agency action. Defs.' Opp'n 6. Defendants also contend that, due to lack of final agency action, the Court lacks subject-matter jurisdiction. *Id.*

Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA generally limits causes of action to those challenging final agency action. *Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006). Final agency action "'mark[s] the consummation of the agency's decision making process' and is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Although the court does not lose jurisdiction solely because a claim under the APA lacks final agency action, the claim might not survive a motion to dismiss. *See John Doe, Inc. v. DEA*, 484 F.3d

---

[6] There is some uncertainty as to whether Plaintiff is the biological father of this child. On May 19, 2019, in an email communication to the Department of State, Plaintiff expresses some doubt that the child is his. *See* Admin. Rec. STATE-539, EFC No. 122-7 (Plaintiff explaining that his wife "is now FIVE MONTHS pregnant with a second child that may, or may not be mine"). Additionally, the timeline does not work in Plaintiff's favor. Plaintiff's wife left for Japan in November 2018. Pl.'s Aff. 8, ECF No. 102. Plaintiff has described their interactions until the birth of the child in September 2019 as brief and hostile. *See* Pl.'s SAC ¶¶ 11, 16-18.

561, 565 (D.C. Cir. 2007) ("When judicial review is sought under the APA . . . the requirement of 'final agency action' is not jurisdictional."); *Trudeau*, 456 F.3d at 188–89 ("[A]lthough the absence of final agency action would not cost federal courts their jurisdiction . . . it would cost [Plaintiff] his APA cause of action."); *Reliable Automatic*, 324 F.3d at 731 (determining that lack of final agency action "was no basis for dismissal under Rule 12(b)(1)" but the trial court's dismissal of the case "may [be] properly affirm[ed] . . . pursuant to Rule 12(b)(6)"). Courts may review agency action, however, when the delayed agency action is "extremely lengthy" or when "'exigent circumstances render it equivalent to a final denial of petitioners' request.'" *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 32 (D.C. Cir. 1984) (quoting *Envtl. Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1098 (D.C. Cir. 1970)).

To support their non-finality argument, Defendants explain that to obtain citizenship documents for a child born abroad and who is a citizen at the time of their birth, an applicant must appear at a U.S. embassy with the child and complete a Consular Reports of Birth Abroad ("CRBA") application. *See* Defs.' Opp'n 6. Defendants acknowledge that Plaintiff submitted a CRBA, but contend that the application was incomplete, as the application contained blank signature blocks. *Id.* at 7. Additionally, Defendants claim that Plaintiff has not appeared in person at a U.S. embassy, with or without his second-born child, to complete the process of obtaining the child's citizenship documents. *Id.* at 8.

In response, Plaintiff argues that the COVID-19 pandemic has prevented him from appearing at the U.S. Embassy in Tokyo and he has been unable to obtain his wife's (that is, his second-born child's mother) passport, which an email confirming submission of his CRBA application indicated "may be necessary for a final determination." *See* Pl.'s Reply at 29–30. As mentioned above, Plaintiff's wife is a non-U.S. citizen; Plaintiff challenges the suggested

requirement of having a non-U.S. citizen present herself at an embassy or provide documents to the Department of State to obtain citizenship for his child. *Id.* at 31. Additionally, Plaintiff argues that because he is unable to obtain his wife's passport or have her appear at the Embassy, the Department of State's current refusal to grant U.S. citizenship is "final agency action." *Id.* He also contests Defendants' factual assertion that the CRBA application was incomplete or deficient. *See id.* at 29.

Under these circumstances, the Court concludes that Mr. Stone's proposed amendment would not be futile. While the Department of State has not formally "denied" the citizenship application, the agency has considered the CRBA application and found it deficient. That strikes the Court as a decision from which legal consequences flow. More generally, the parties appear to be at a legal and factual impasse. Plaintiff claims that he completed a valid CRBA application and that any additional in-person interview or documentation requirements are unnecessary or illegal, at least while COVID-19 makes an in-person appointment at the Embassy impossible. *See id.* at 31. For their part, Defendants maintain that the CRBA application Plaintiff submitted was flawed, *see* Defs.' Opp'n at 7, and do not address in their briefing whether the Department of State requires that the child's mother be present at an embassy or provide certain documentation to complete the CRBA process. Defendants also do not discuss whether the in-person requirement can or should be waived under present circumstances. All in all, there is no indication that further factual development would aid the Court, or that any further agency decision-making is forthcoming. The Government's position appears to be that it could indefinitely avoid judicial review of its actions here by postponing a "formal" decision, which strikes the Court as untenable. *See Envtl. Def. Fund*, 428 F.2d at 1099 ("[W]hen administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency

cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief."). Mr. Stone can plausibly argue that these "exigent circumstances render [the action] equivalent to a final denial of petitioner's request." *Pub. Citizen*, 740 F.2d at 32.

Thus, because the circumstances Plaintiff relied upon "may be proper subject of relief," Plaintiff is entitled to "test his claim[s] on the merits." *Foman*, 371 U.S. at 182. Given that Plaintiff's request to include a Motion to Compel U.S. Citizenship for his second-born child is not futile, the Court will grant Plaintiff leave to amend in this respect. However, in the amended complaint, the Plaintiff should adequately explain why Defendants' actions here qualify as final under the APA or why finality is not required. The Court also notes, in passing only, that some of the factual and legal disputes discussed here might be productively narrowed through discussions between the parties.

### C.  Claims Regarding Destruction of Records

In other filings, Plaintiff claims that in 2013, Japanese officials wrongfully detained and tortured him. Pl.'s Mot. to Am. ¶¶ 7–9, ECF No. 81-1. According to Plaintiff, in 2014, a Department of State employee photographed and reported Plaintiff's condition where Plaintiff was detained and promised that he would preserve the photographs so Plaintiff could bring suit against the Japanese officials. *Id.* at ¶¶ 13–19. Plaintiff alleges that Hughes P. Ogier, a Department of State official, willfully destroyed the photographs and other records relating to the Japanese officials' detainment of Plaintiff. *Id.* at ¶¶ 21, 26. Plaintiff now moves to amend his

Second Amended Complaint to add Mr. Ogier as a defendant in this case and include claims for monetary damages under 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA").[7]

### 1. 42 U.S.C. § 1983 and/or *Bivens*

One of the provisions invoked by Mr. Stone—42 U.S.C. § 1983—permits claims against persons acting under the color of state law for violations of a plaintiff's constitutional rights. *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1103 (D.C. Cir. 2005) (citing *Williams v. United States*, 396 F.3d 412, 413–14 (D.C. Cir. 2005)). However, § 1983 does not apply to federal officials. *Id.* at 1104. As a result, § 1983 is inapplicable in this case because Defendants are federal entities and Mr. Ogier, whom Plaintiff seeks to name as a defendant, was a federal official at the time of the alleged incident. Moreover, a proper claim against the United States must be based on a statute that unequivocally waives the United States' sovereign immunity. *See id.* at 1105. Plaintiff argues that "Congress waived the federal government's immunity across a broad range of substantive law." Pl.'s Reply 7. § 1983, however, does not contain a provision that waives the United States' sovereign immunity nor is there an indication that Congress intended for § 1983 to apply to the federal government. *See Settles*, 429 F.3d at 1105. As a result, the Court would lack subject-matter jurisdiction over a § 1983 claim against Mr. Ogier or the United States, because § 1983 does not create a cause of action against a federal actor nor does it waive the United States' sovereign immunity. *See Miango v. Dem. Rep. Congo*, 243 F. Supp. 3d 113, 134 (D.D.C. 2017) (finding that "[b]ecause section 1983 does not create a cause of action against a federal actor, and there is no other applicable waiver of sovereign immunity, the Court does not have jurisdiction").

---

[7] In his filing, Plaintiff also cites two additional statutes, 18 U.S.C. § 1503 and § 2071(a). Pl.'s Mot. to Am. ¶¶ 35, 36, ECF No. 81-1. "These, however, are criminal statutes that create no private right of action." *Hunter v. D.C.*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005).

Alternatively, if the Court construed Plaintiff's request as a claim against Mr. Ogier in his personal capacity seeking monetary damages for alleged constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the amendment would still be futile.  A *Bivens* claim is essentially the federal equivalent to a § 1983 action: "an action against a federal officer seeking damages for violations of the plaintiff's constitutional rights." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 368 (D.C. Cir. 1997).  However, a *Bivens* claim is available only in limited circumstances and expanding a *Bivens* remedy is a "disfavored" judicial activity. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Even generously construed, Plaintiff's filings do not support a cause of action under *Bivens*.  First, Plaintiff does not allege that Mr. Ogier violated any constitutional right.  Second, as stated above, Plaintiff seeks to bring a claim based on actions that occurred in a foreign country, but "extraterritorial application" of a *Bivens* action is "virtually unknown." *Meshal v. Higgenbotham*, 804 F.3d 417, 418 (D.C. Cir. 2015); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 749–50 (2020) (holding that a *Bivens* remedy was not available for a cross-border shooting claim because Congress, "which has authority in the field of foreign affairs," has not "create[d] liability" for extraterritorial conduct of a federal official and courts cannot create a damages remedy for such conduct).

Accordingly, the Court will deny Plaintiff's request for leave to amend the Second Amended Complaint to include a § 1983 claim or a *Bivens* claim.

### 2. Federal Tort Claims Act

The FTCA is a limited waiver of sovereign immunity that makes the federal government liable for certain torts committed by federal employees acting within the scope of their employment.  A proper FTCA claim requires that the United States be a named defendant in the

suit. *See Sanchez-Mercedes v. Bureau of Prisons*, No. 19-cv-54, 2020 U.S. Dist. LEXIS 64946, at *11–12 (D.D.C. Apr. 10, 2020) ("The only proper defendant for an FTCA claim is the United States."); *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 17 (D.D.C. 2015) ("Even if a federal agency may sue and be sued in its own name, FTCA claims against that federal agency are barred. . . . Failure to name the United States as the defendant in an FTCA action requires dismissal for lack of subject-matter jurisdiction.") (internal citations omitted). Additionally, the FTCA does not apply to "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). This so-called foreign country exception applies to all claims that are based on an injury a plaintiff suffered in a foreign country, "regardless of where the tortious act or omission occurred." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004)*; see also Harbury v. Hayden*, 522 F.3d 413, 423 (D.C. Cir. 2008) (holding that the FTCA barred a widow's claim for emotional distress because the injury "at the root of the complaint" occurred in a foreign country).

For at least two reasons, then, an amendment to include an FTCA claim would be futile. First, it would be improper as a technical matter because the United States is not a defendant in the suit or named as a new potential defendant. *See Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345–46 (D.C. Cir. 1961) ("Suits based on torts allegedly committed by the Agency or by its employees acting in an official capacity are maintainable, if at all, under the provisions of the Tort Claims Act, and *must name the United States as a defendant*.") (emphasis added). Even if the United States were proposed as a defendant to this claim, Plaintiff's claim falls squarely within the FTCA's foreign country exception. Plaintiff's alleged detainment and torture occurred at the Narashino Police Detention Center in Japan. Pl.'s Mot. to Am. ¶ 8. Plaintiff argues that the destruction of the photographs and records "resulted in Plaintiff's inability to present a claim against Japanese officials in U.S. federal court." Pl.'s Reply 37. But

14

even when fully crediting Plaintiff's allegations, the root of Plaintiff's complaint is that he suffered injuries in Japan, *see id.* ¶ 19. The Court will therefore deny as futile leave to amend to include an FTCA claim.[8]

### 3. Potential Common Law Tort Claims

It may also be possible to construe Plaintiff's filings as alleging a common law tort claim (*e.g.*, destruction of property or negligence) against Mr. Ogier in his individual capacity. However, Plaintiff does not cite to any authority or allege any specific facts indicating that the Court would have jurisdiction over Mr. Ogier in his individual capacity with respect to a tort allegedly committed in Japan. To sue a federal employee in an individual capacity, the Court must have personal jurisdiction over the federal employee based on the employee's personal contacts within the District. *See Dougherty v. United States*, 156 F. Supp. 3d 222, 229 (D.D.C. 2016). While Plaintiff suggests that Mr. Ogier is still employed by the Department of State in Washington, D.C., *see* Supplemental Decl. of Jack Stone 20, 26, ECF No. 80, that connection alone is insufficient, *see Dougherty*, 156 F. Supp. 3d at 229 (noting that a court does not have personal jurisdiction over a federal employee simply because the employing agency is

---

[8] Plaintiff also has not alleged that he complied with the FTCA's exhaustion requirement. *See* 28 U.S.C. § 2675. Under Circuit precedent, a failure to exhaust administrative remedies under the FTCA is a jurisdictional defect. *See Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir.), *cert. denied*, 139 S. Ct. 459 (2018); *see also Parrish v. United States*, No. 17-cv-70, 2020 WL 1330350, at *3 (N.D. W. Va. Mar. 23, 2020) (suggesting that the FTCA exhaustion requirement remains jurisdictional even in the wake of *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019)). Plaintiff's "fail[ure] to allege that [he] satisfied the requirement that [he] exhaust[ed] administrative remedies before filing an FTCA claim" would require dismissal. *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 69–70 (D.D.C. 2015). Additionally, under the FTCA's statute of limitations, claimants must present claims to a federal agency "within two years after such claim accrues." 28 U.S.C. § 2401 (2018). Although Plaintiff has not indicated when he discovered that the photos were deleted, the record indicates that Plaintiff knew the photos were deleted at least two years before this claim was brought, which suggests it would be time barred. *See* Pl.'s Mot. to Amend ¶ 33.

headquartered in the District of Columbia). Even if Plaintiff could allege more specific facts suggesting personal jurisdiction, under the Westfall Act, a federal individual employee is generally immune from tort liability for torts committed within the scope of employment. *See* 28 U.S.C. § 2679(b)(1). This is true even if a provision of the FTCA prevents the plaintiff from recovering monetary damages from the United States itself. *See United States v. Smith*, 499 U.S. 160, 165 (1991). In these circumstances, therefore, the Court fails to see a viable common law claim against Mr. Ogier. To the extent that such a claim was raised, the Court will deny leave to amend the complaint to include one. And because Plaintiff has not articulated a non-futile claim against Mr. Ogier, the Court will deny leave to add him as a defendant in this matter.

### D. Motion to Compel Issuance of Plaintiff's Wife's Visa

Finally, Plaintiff seeks to add a claim for an order to compel the Department of State to issue a visa for his wife. *See* Pl.'s Motion to Compel Issuance of Plaintiff's Wife's Visa, ECF No. 82. Without support, Plaintiff claims to have paid more than $2,000 during the process of obtaining his wife's visa. *Id.* ¶ 2. Plaintiff claims that after he and his wife met with officials at the USCIS Kendall Field Office in Miami, Florida and paid $1,250 to expedite the visa process, he and his wife waited for a final interview for his wife's visa to take place in the U.S. Embassy Tokyo in Japan. *See id.* ¶ 4; Pl.'s Aff. 5–6.

The Court construes Plaintiff's request as a request for a writ of mandamus. Under 28 U.S.C. § 1361, the district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A mandamus remedy is drastic and should be "invoked only in extraordinary circumstances." *AHA v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)). For a court to issue a remedy

of mandamus, a plaintiff must show "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.*

The Court does not need to go into an analysis of the specific factors outlined in *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), which courts use to consider whether an agency's delayed action warrants mandamus, because the Court cannot grant Plaintiff's requested relief. The Court can only direct an agency to "take action upon a matter, without directing how [the agency] shall act." *Aidov v. U.S. Dep't Homeland Sec.*, No. 20-cv-20649, 2020 U.S. Dist. LEXIS 39458, at *13 (S.D. Fl. Mar. 5, 2020) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). At most, the Court could only issue a mandamus to the Department of State to take action on the visa application, but could not order the Department of State to approve the application and issue Plaintiff's wife's visa, as Plaintiff has requested. *See id.* Furthermore, Plaintiff has not persuasively argued a basis for this Court to order the Department of State to complete the process and schedule an interview absent payment of the required fees. As such, the Court will deny as futile Plaintiff's request for leave to amend his complaint to include a motion to compel issuance of his wife's visa.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's filings, which the Court has construed as motions to amend. The Court will allow Plaintiff to amend his complaint to include a request for an order to compel U.S. citizenship for his second-born child. The Court does not grant leave to amend the complaint to include all of Plaintiff's other filings and requests. Within thirty days (that is, on or before August 24, 2020), Plaintiff shall file a Third Amended Complaint that outlines his exact claims and requested relief. Plaintiff's new

claim will have no impact on the claim regarding Plaintiff's first-born child's passport, which, as mentioned, is currently the subject of separate summary judgment briefing. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 24, 2020                                                                RUDOLPH CONTRERAS
                                                                                                United States District Judge