## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| Jack Stone, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-3273 (RC) |
| | : | | |
| v. | : | Re Document No.: | 114 |
| | : | | |
| U.S. Embassy Tokyo, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR LEAVE TO SUBMIT PORTIONS OF THE ADMINISTRATIVE RECORD IN CAMERA AND EX PARTE, OR, IN THE ALTERNATIVE, UNDER SEAL AND SUBJECT TO A PROTECTIVE ORDER

## I.  INTRODUCTION

Plaintiff Jack Stone ("Stone"), proceeding *pro se*, challenges the decision by the United States Embassy in Tokyo and the Department of State ("Defendants") to deny his request that Defendants reissue a passport to his first-born minor child.  The Court has construed Stone's claim, which is the subject of separate summary judgment motions, as a request for relief under the Administrative Procedure Act ("APA").  Section 706 of the APA requires the Court to review the whole administrative record.  To protect information labeled as "sensitive but unclassified," Defendants now move to submit portions of the administrative record *in camera* and *ex parte*, or, alternatively, under seal and subject to a protective order.  For the reasons explained below, the Court will grant in part and deny in part Defendants' motion.

## II.  BACKGROUND

Both parties concede that the APA is applicable to Stone's claim, which stems from Defendants' denial of his application for reissuance of a passport on behalf of his first-born

minor child.  *See* Order Den. Pl.'s Emergency Mot. and Transferring Action ("Transfer Order")

at 10, ECF No. 64.  Stone alleges that his wife took their child to Japan and destroyed the child's

passport.  *See* Pl.'s Second Am. Compl. ("SAC") ¶ 6, ECF No. 39.  Stone then "applied to obtain

re-issuance of [his] son's passport," SAC ¶ 7, claiming that "exigent and/or special family

circumstances" warranted reissuing the child's passport without his wife's consent, SAC ¶ 14.

After Defendants denied Stone's application, he filed suit seeking an order to compel Defendants

reissue the passport.  *See* SAC ¶ 28.  Defendants now move to "submit specific portions of the

administrative record *ex parte* and *in camera* or, in the alternative, under seal and subject to a

protective order."  Defs.' Mem. in Supp. of Mot. to Submit Portions of Administrative R. *Ex

Parte* and *In Camera* ("Defs.' Mot.") at 1, ECF No. 114-1.

At issue here is the administrative record of Defendants' decision to deny Stone's

application.  Defendants express concerns over two categories of information in the

administrative record: (1) portions of the Department of State's Foreign Affairs Manual

regarding the issuance of a minor's passport with only one parent's consent due to "exigent" or

"special family circumstances," Defs.' Mot. at 2; and (2) "names and individual contact

information" of Defendants' employees, Defs.' Mot. at 10.

### III.  LEGAL STANDARD

To properly adjudicate an APA claim, this Court must "review the whole record or those

parts of it cited by a party."  *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 163

(D.D.C. 2014) (quoting 5 U.S.C. § 706).  The "whole record" includes all items that "might have

influenced the agency's decision."  *Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp.

2d 7, 12 (D.D.C. 2001) (quoting *Bethlehem Steel Corp. v. E.P.A.*, 638 F.2d 994, 1000 (7th Cir.

1980)).  In other words, "courts base their review of an agency's actions on the materials that

were before the agency at the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997); *see also Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788,792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").

Separately, *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), provides "the standard for ruling on motions to seal or unseal judicial records." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). Although there is "'a strong presumption in favor of public access to judicial proceedings' . . . . [i]n some cases, that presumption may be outweighed by competing interests." *Id.* (quoting *Hubbard*, 650 F.2d at 317); *see also MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). *Hubbard* outlined six factors to consider when assessing whether competing interests overcome the presumption of public access:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*E.E.O.C. v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 650 F.2d at 317–22). Judicial records may remain sealed "only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'" *MetLife*, 865 F.3d at 665–66 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

3

## IV.  ANALYSIS

As mentioned, Defendants move to submit two portions of the record *in camera* and *ex parte*, or, in the alternative, to have these portions of the record held under a strict protective order.  The first is a section of the U.S. Department of State Foreign Affairs Manual concerning the "exigent" or "special family circumstances" exceptions to the two-parent consent requirement.  Defs.' Mot. at 3.  The Department of State's Foreign Affairs Manual ("FAM") contains the Department's "policies and procedures that govern the agency's operations, including the Foreign Service."  Defs.' Mot. at 3. Volume 8 of the FAM ("8 FAM") discusses passports and consular reports abroad, and it includes information on the exigent and special family circumstances exceptions.  Defs.' Mot. at 3.  Select portions of 8 FAM are publicly available, but the sections on the exigent and special family circumstance exceptions are not. Defs.' Mot. at 3.  Some portions are even designated "Sensitive But Unclassified" ("SBU") information.  Defs.' Mot. at 3.  The Department defines SBU information as that "which, either alone or in the aggregate, meets any of the following criteria and is deemed sensitive by the Department, and must be protected in accordance with the magnitude of its loss or harm that could result from inadvertent or deliberate disclosure, alteration, or destruction of the dat[a]." Defs.' Mot. at 3.  Defendants indicate that the portions of the FAM portions discussing the exigent and special family circumstance exceptions meet the criterion of "[i]nformation that could be manipulated to commit fraud."  Defs.' Mot. at 3. (alteration in original).  They are concerned that public disclosure of that information "could aid applicants seeking to circumvent the two-parent consent requirement."  Defs.' Mot. at 4.

Defendants also seek to submit the names and contact information of Department of State employees appearing in the administrative record *in camera* and *ex parte*.  Defs.' Mot. at 10.

### A.  *In Camera*, *Ex Parte* Submission

To support their argument that the material should be submitted *in camera* and *ex parte*, Defendants suggest that Exemption 7(E) of the Freedom of Information Act ("FOIA") would apply to the sensitive FAM material.  Defs.' Mot. at 5 (citing 5 U.S.C. § 552(b)(7)(E)).  Further, Defendants argue that FOIA Exemption 6—which allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy," 5 U.S.C. § 552(b)(6)—would apply to the names and contact information of employees in the administrative record.  Defs.' Mot. at 10.

Defendants' suggestion that FOIA exemptions extend to or apply to an APA case is not supported by any authority.  Defendants do not cite any case or statute suggesting that a FOIA exemption extends to an APA case.  The Court has identified only one case describing a FOIA exemption as "co-extensive" with privileges the government can invoke to withhold documents in an APA suit.  *See Int'l Longshoremen's Ass'n v. Nat'l Mediation Bd.*, No. 04-824, 2006 WL 197461, at *4 (D.D.C. Jan. 25, 2006).  In *International Longshoremen's Association*, an adjudicating board excluded handwritten notes taken during an investigation from the administrative record it submitted to the reviewing court.  *Id.* at *2.  The court held that the agency "ma[d]e no effort to support" its privilege claim so the court could not conclude that the administrative record was complete.  *Id.* at *4.  The court reasoned that the agency had to provide "the same information it would submit when defending against a challenge for withholding such information in a Freedom of Information Act action" because "privileges under the APA are considered 'co-extensive with Exemption 5 of the Freedom of Information Act.'"  *Id.* (quoting *Seabulk Transmarine I, Inc. v. Dole*, 645 F. Supp. 196, 201 n.3 (D.D.C. 1986)).  The court in the cited case, *Seabulk*, "assume[d] without deciding" that the "deliberative process"

privilege was "co-extensive" with Exemption 5.  645 F. Supp. at 201 n.3.  But even assuming that some privileges under the APA are coextensive with Exemption 5 of FOIA, there are no privileged materials at issue here.

In the adversarial system more generally, courts disfavor *ex parte* and *in camera* proceedings.  *See Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018); *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) ("*Ex parte* communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" (citation omitted)).  "It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions."  *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), *aff'd by an equally divided court*, 484 U.S. 1 (1987) (mem.).

Defendants concede that *ex parte* and *in camera* proceedings are disfavored but cite *Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958, 967 (D.C. Cir. 2016), to support their argument that the Court should review materials *in camera* and *ex parte*.  Defs.' Mot. at 1–2.  However, *Gilmore* indicates that "*ex parte* proceedings should be employed to resolve discovery disputes only in extraordinary circumstances."  843 F.3d at 967.  The plaintiffs in *Gilmore* "sought intelligence materials generated in the midst of a geopolitical conflict," *id.* at 968, which the defendants asserted were privileged, *id.* at 967.  Given the lower stakes and different circumstances here, *Gilmore* is inadequate to support allowing Defendants to present either of the two categories of information at issue *ex parte* and *in camera*.

But the Court notes that Stone has not objected to the redaction of employees' names. *See* Pl.'s Obj. to Defs.' Mot. at 8, ECF No. 125 (requesting only "access to 8 FAM, and the relevant sections of the Foreign Affairs Manual").  In light of the minimal relevance of the

individual employees' names, Stone's lack of opposition to this aspect of Defendants' request, and the fact that Stone has repeatedly directed threatening and explicit language towards Defendants, *see, e.g.*, *id.* at 7, the Court will allow the names and personal information of the Defendants' employees to remain redacted, with an unredacted version to be submitted to the Court *ex parte* and *in camera*. *Contrast Int'l Longshoremen's Ass'n*, 2006 WL 197461, at *4 n.4 (explaining that redacting witness identities would be inappropriate if redacted information had played a role in agency's decisionmaking).

### B. Submission Subject to a Protective Order

With respect to the remaining material at issue, the FAM, the Court considers Defendant's alternative argument that the materials be submitted under seal and subject to a protective order.

On balance, the *Hubbard* factors weigh in favor of a determination that the FAM remain under seal and subject to a protective order—particularly factors (2) the extent of previous disclosure, (4) the privacy interests being asserted, and (5) the possibility of prejudice to those opposing disclosure. The information is nonpublic and has not previously been disclosed, and disclosing it publicly could help wrongdoers obtain passports fraudulently. As Defendants explain, if the relevant information in the FAM is made public, "the consequences will be severe in that those seeking passports on behalf of minor children without both parents' consent could circumvent" established protocol for issuing passports. Defs.' Mot. at 9. Therefore, because of the sensitivity of the information in the FAM, the Court will grant Defendants' motion to submit the relevant portions of the FAM under seal and subject to a protective order.

For his part, Stone notes in his objection that the "Court has the power to Order Plaintiff not divulge the information to any third party, and Plaintiff would adhere to such Order." Pl.'s

Obj. to Defs.' Mot. at 8.  The Court observes with concern that mere weeks after making this assertion to the Court, Stone offered to disclose sealed materials, including, presumably, the sensitive portions of the FAM, to the Ambassadors of China, Iran, Russia, and Venezuela in exchange for those countries' assistance.  *See* Pl.'s Resp. to Defs.' DE140 at 1, 10, ECF No. 141. With that in mind, the Court stresses that it will not tolerate any violation of its protective order and warns that resulting sanctions may include, but are not limited to, complete dismissal of this action and/or a contempt of court charge.  *See Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (holding that "plaintiffs' wilful and unexcused violations of [a] protective order" justified "sanctioning the plaintiffs with the dismissal of their complaint").

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to submit portions of the administrative record *ex parte* and *in camera*, or, in the alternative, under seal and subject to a protective order is **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 28, 2020                                     RUDOLPH CONTRERAS
                                                              United States District Judge