**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JACK STONE | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-3273 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 106, 120, 155 |
| | : | | |
| U.S. EMBASSY TOKYO, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff Jack Stone, proceeding *pro se*, sued the United States Department of State and the United States Embassy in Tokyo (together, "Defendants") seeking, *inter alia*, a court order that the State Department issue a U.S. passport to Stone's minor child, so that Stone and his child can return to the United States from Japan. Before the Court today are Stone's and Defendants' cross-motions for summary judgment on the issue of the child's passport application. For the reasons explained below, the Court denies Stone's motions and grants Defendants' motion.

**II.  BACKGROUND**

The Court presumes familiarity with its prior opinions in this case. *See Stone v. U.S. Embassy Tokyo* (*Stone I*), No. 19-3273, 2020 WL 4260711 (D.D.C. July 24, 2020) (motions for leave to amend); *Stone v. U.S. Embassy Tokyo* (*Stone II*), No. 19-3273, 2020 WL 5653699 (D.D.C. Sept. 23, 2020) (denying motion for recusal); *Stone v. U.S. Embassy Tokyo* (*Stone III*), No. 19-3273, 2020 WL 5775196 (D.D.C. Sept. 28, 2020) (granting Defendants' motion for leave to submit portions of the administrative record under seal).

In February 2019, Plaintiff Stone petitioned the District Court for the District of Hawaii for an emergency order compelling the State Department to issue a new U.S. passport to Stone's minor child, a U.S. citizen. *See* Compl., ECF No. 1. Stone alleged that his spouse, Miyuki Suzuki, a Japanese national, had abducted their child to Japan and destroyed the child's passport without Stone's consent. *See id.* In October 2019, the District of Hawaii denied Stone's emergency motion and transferred venue to this Court, *see* ECF No. 64, to adjudicate the merits of Stone's Second Amended Complaint ("SAC"), ECF No. 39. Stone has pleaded a variety of grievances before the Court, but his primary justiciable contention appears to be that Defendants' denial of the passport application for lack of two-parent consent, upon finding that the exceptions for "exigent" or "special family circumstances" did not apply, was arbitrary and capricious agency action.

The two-parent consent rule generally bars issuance of a passport to a minor under sixteen without the consent of both of the minor's parents or legal guardians. *See* 22 C.F.R. § 51.28(a)(2). There is an exception to the two-parent consent rule for "exigent" or "special family circumstances." *Id.* § 51.28(a)(5). "Exigent circumstances" include "time-sensitive circumstances in which the inability of the minor to obtain a passport would jeopardize the health and safety or welfare of the minor." *Id.* § 51.28(a)(5)(i). "Special family circumstances" are "circumstances in which the minor's family situation makes it exceptionally difficult for one or both of the parents to execute the passport application; and/or compelling humanitarian circumstances where the minor's lack of a passport would jeopardize the health, safety, or welfare of the minor." *Id.* § 51.28(a)(5)(ii). The State Department follows internal guidelines, found in Chapter 8 of its Foreign Affairs Manual ("FAM"), in applying the two-parent consent rule and evaluating claims for exceptions.

Stone has filed many motions, papers, and requests, seeking relief for a litany of alleged wrongful conduct by Defendants. At issue here are Stone's Motion for Partial Summary Judgment Regarding Reissued Passport and Damages ("Pl.'s Partial MSJ"), ECF No. 106, Stone's Motion for Summary Judgment and to Compel Issuance of Passport and for Damages ("Pl.'s MSJ"), ECF No. 155, and Defendants' Motion for Summary Judgment ("Defs.' MSJ"), ECF No. 120. The Court construes Stone's filings together as a single motion, and Defendants' as a cross-motion, for summary judgment on the issue of the passport application.

Stone alleges that Suzuki abducted their child from their domicile in the United States to Japan in November 2018, without his knowledge or consent, and destroyed the child's U.S. passport. For two months, the child lived with Suzuki and, at times, her parents, who Stone claims belong to a dangerous religious cult and neglected the child. Pl.'s MSJ at 39. Stone, already in Japan to renew his spousal visa, secured employment and an apartment and took physical custody of the child "under violent circumstances" in January 2019. Pl.'s MSJ at 50. Suzuki allegedly shipped all of the child's belongings to Stone's new residence, A.R. 79, and then purportedly emailed Stone telling him that he should leave Japan with the child, *see* Pl.'s MSJ at 51 (citing A.R. 102), 57–58. Suzuki has legally abandoned the child, in Stone's view, making him the sole parent. Pl.'s MSJ at 39, 51. On January 4 and January 25, Stone contacted the Embassy and filled out some paperwork, which he construes as two separate and unsuccessful passport applications. Pl.'s MSJ at 56–57 (citing A.R. 78–79). He then filed a lawsuit, asking the District Court of Hawaii to compel issuance of the passport. *See* Compl., ECF No. 1. Stone and the child appeared for their in-person appointment at the Embassy on February

8,[1] and Stone presented his "Statement of Special Family Circumstances" using the State Department's standard form DS-5525. In the DS-5525 form, Stone asserted that he had attempted to contact Suzuki by phone and email over 200 times since the alleged abduction but that she was nonresponsive. A.R. 79. The form required Stone to explain in detail, under penalty of perjury, his reasons for seeking the passport without Suzuki's consent. *Id.* Stone wrote:

> Minor child brought to Japan in violation of 18 U.S.C. § 1204.
>
> Mother destroyed, or refuses to return minor child's passport, after numerous attempts to obtain it.
>
> Mother sent email Monday, 14 Jan. 2019 21:12:50, "[Y]ou should leave Japan with [the child] then our problem will be solved. I can't live together."
>
> On January 12th 2019, mother shipped all minor child's property to father's temporary residence. Father paid for shipment, and retains receipt as factual proof. Father, legal guardian and sole financial provider minor child's entire life, wants to return to U.S. ASAP.[2]

*Id.*

Defendants dispute Stone's story, beginning with whether the child was abducted at all. *See* Defs.' MSJ at 8 n.9. When Stone contacted the Embassy throughout January 2019 about the passport issue, staff advised him of the two-parent consent rule and the DS-5525 process, but, consistent with State Department policy, they declined to pre-adjudicate his application. Defs.' MSJ at 9–10; A.R. 156–57, 176–77, 182–84. Also in January, Suzuki contacted the Embassy twice out of concern that Stone would procure a passport and take their child from Japan without her consent. Defs.' MSJ at 9–10 (citing A.R. 17–18, 122, 156, 158). Stone was repeatedly told that no passport application could be made until the in-person appointment at the Embassy in

---

[1] There are inconsistencies in the administrative record and the parties' filings as to the exact date of the appointment at the Embassy, but whether it was February 8 or 9 is immaterial here.

[2] Stone told Embassy officials on January 6 that he had no intention of returning to the United States right away, but that the child needed the passport for identification. *See* A.R. 188.

February. *Id.* at 10; A.R. 182–83, 266. Once duly made, the Embassy reviewed the application, the DS-5525, the email from Suzuki to Stone, and records of communications with both Stone and Suzuki, and concluded that Stone had not provided two-parent consent nor met the burden to invoke the exigent or special family circumstances exception. Defs.' MSJ at 11–12. Pursuant to its policy, of which Stone was also advised, *see* A.R. 226, the Embassy forwarded Stone's file to the State Department in Washington, D.C. and requested concurrence. Defs.' MSJ at 12. The State Department agreed "[b]ased on the extreme lack of credibility of the DS-5525," Suzuki's "express concerns to issuance," and its finding that Suzuki had not abandoned the child. *Id.* at 12–13 (quoting A.R. 353). The Embassy notified Stone on February 15 and gave him ninety days to provide Suzuki's consent, or else the application would be denied. *Id.* at 13; A.R. 116. Stone continued to contact the Embassy, the State Department, and the office of the Senator from Hawaii, but did not produce a notarized statement of Suzuki's consent. Defs.' MSJ at 13–14. The State Department denied the application without prejudice on June 4. *Id.* at 15–16 (citing A.R. 117). Stone has proceeded with litigation but has not reapplied. *Id.* at 15 n.12.

## III.  SCOPE OF REVIEW AND LEGAL STANDARDS

### A.  Limitation of Scope and Available Relief

None of the myriad statutes, treaties, or common law rights that Stone alleges have been violated are at issue here besides the Administrative Procedure Act ("APA"). For instance, the Court has already denied Stone's motions to add claims under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), Oct. 25, 1980, 1343 U.N.T.S. 22514, and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–11. *See Stone I*, 2020 WL 4260711, at *4. Stone's allegations that the Court is improperly biased

against him[3] have been addressed and dismissed. *See Stone II*, 2020 WL 5653699. Various other issues are the subject of separate motions before the Court. *See, e.g.*, Pl.'s Mot. for Sanctions and Contempt, ECF No. 179.

In short, the only right with which the Court is concerned here is a private party's right to seek judicial review of an adverse final agency action under the APA, 5 U.S.C. §§ 701–706. The agency action at issue is Defendants' June 2019 denial of Stone's February 2019 passport application on behalf of his first-born child. The Court notes at the outset that the only relief it would grant to Stone on summary judgment is vacatur of the denial as arbitrary and capricious and an order that Defendants reconsider the application in light of the Court's findings. *See Stone I*, 2020 WL 4260711, at *8; *Fox v. Clinton*, 684 F.3d 67, 80 (D.C. Cir. 2012) (adopting the "course of prudence" in remanding for reconsideration rather than ordering specific action). The Court would not issue a writ of mandamus directing the State Department to take a specific action such as granting Stone's application. *See Stone I*, 2020 WL 4260711, at *8; *Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1506 (D.C. Cir. 1990).

---

[3] Stone is adamant that this Court and the judiciary are biased against *pro se* litigants like himself. The Court condemns Stone's repeated use of abhorrent racial slurs, *see* Pl.'s MSJ at 11, 12, 63, 66, 70, and his attempts to analogize the experience of a *pro se* litigant in this Court to that of a Black person "lynched, burned, [and] shot in the back," *id.* at 11–12, 70, as insensitive and inappropriate. The fact that Stone is *pro se* is largely due to his own actions. The District Court of Hawaii appointed counsel for him. That attorney, despite belonging to a large firm with offices in Washington, D.C., (Dentons), did not want to continue to represent Stone in this District. This Court also appointed counsel for him. Attorneys at WilmerHale expressed an interest in representing Stone, but after talking with him and receiving emails from him, declined to represent him. Subsequently, attorneys from Fried Frank entered an appearance on his behalf. But when Stone continued to file *pro se* motions in this Court and a mandamus action in the Circuit, they withdrew as well.

## B.  Review Under the Administrative Procedure Act

The APA establishes a private party's right to petition a district court for review of a federal agency's final action. 5 U.S.C. § 702. The court can "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(a). The standard of review is narrow, and the district court cannot substitute its judgment for the agency's. *Stellar IT Solutions, Inc. v. U.S. Citizenship & Immigration Servs.*, No. 18-2015, 2020 WL 3129019, at *5 (D.D.C. Jun. 12, 2020) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' In reviewing that explanation, [the court] must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *State Farm*, 463 U.S. at 43 (first quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962); and then quoting *Bowman Transp. Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974)).

## C.  Review on Cross-Motions for Summary Judgment

This deferential standard of review also means that, on summary judgment in an APA case, the traditional Rule 56(c) analysis is displaced. *See, e.g.*, *Brodie v. U.S. Dep't of Health & Human Servs.*, 796 F. Supp. 2d 145, 150 (D.D.C. 2011). "[D]ue to the limited role a district court plays in reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56 are not applicable." *Farrell v. Pompeo*, 424 F. Supp. 3d 1, 10 (D.D.C. 2019) (citing *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C.

7

2007)). Instead of looking for genuine disputes of material fact in the parties' *pleadings*,[4]

therefore, the district court "determine[s] whether or not as a matter of law the evidence *in the*

*administrative record* permitted the agency to make the decision it did." *Kaiser Found. Hosps. v.*

*Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011) (emphasis added). Thus, if the Court finds that

the State Department has adequately considered the relevant evidence and articulated a rational

connection between the facts in the record and the decision to deny the application, the Court

must grant summary judgment in favor of Defendants.

## IV.  ANALYSIS

A district court must set aside agency action as arbitrary and capricious when, on review

of the entire record, the court determines that the agency "relied on factors which Congress has

not intended it to consider, entirely failed to consider an important aspect of the problem, offered

an explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *Agape Church, Inc. v. FCC*, 738 F.3d 397, 410 (D.C. Cir. 2013) (quoting *State Farm*,

463 U.S. at 43). "The party challenging an agency's action as arbitrary and capricious bears the

burden of proof." *Potomac Riverkeeper, Inc. v. Wheeler*, 381 F. Supp. 3d 1, 12 (D.D.C. 2019)

---

[4] Because Stone contradicts himself so frequently, a standard that required the Court to accept all of Stone's factual allegations as true, rather than accepting the facts set forth in the administrative record, would be a nearly impossible one. For instance, compare Stone's certified November 8, 2018 email stating "[m]y son speaks fluent English, and Japanese," Defs.' Reply to Pl.'s Opp'n Ex. A, ECF No. 163-1, with his repeated claims that the child cannot speak Japanese, *see, e.g.*, Pl.'s MSJ at 14, 59; Pl.'s Partial MSJ at 3. Stone claims that his wife has abandoned their child, Pl.'s MSJ at 39, but also that she has repeatedly attempted to retake physical custody, *id.* at 16. He claims he does not have contact information for his wife, *id.* at 59, but also that he provided Defendants with detailed contact information for his wife and her family, Pl.'s Partial MSJ at 1. Under a traditional Rule 56 framework, the Court would be hard-pressed to choose which version of Stone's factual narrative to accept as true.

(quoting *Pierce v. SEC*, 786 F.3d 1027, 1035 (D.C. Cir. 2015)), *aff'd*, 815 F. App'x 551 (D.C. Cir. 2020).

In 1999, Congress passed a law providing that the State Department shall promulgate a regulation codifying the two-parent consent rule and may carve out exceptions for exigent and special family circumstances. *See* Act of Nov. 29, 1999, Pub. L. 106-113, § 236, 113 Stat. 1501A-430. Accordingly, the State Department codified the two-parent consent rule at 22 C.F.R. § 51.28 and delineated the available exceptions. The State Department has since reaffirmed its commitment to using the two-parent consent rule to prevent international parental child abduction. *See, e.g.*, 72 Fed. Reg. 10,095-01, 2007 WL 670067 (Mar. 7, 2007) (building on the 2004 amendment that applied the two-parent consent rule to all minors under 16, rather than 14, and strengthening it further to require in-person appearance of the minor). Although Stone refers to the congressional intent behind the International Child Abduction Remedies Act, *see* Pl.'s MSJ at 5, 77, the regulation at issue here is the two-parent consent rule, *see* 22 C.F.R. § 51.28(a)(2), and its exceptions for exigent and special family circumstances, *see id.* § 51.28(a)(5). An agency's interpretation of its own regulation "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 326 (D.C. Cir. 2017) (quoting *Castlewood Prods., LLC v. Norton*, 365 F.3d 1076, 1082 (D.C. Cir. 2004)).

Attempting to fit Stone's additional allegations into the framework of APA judicial review, the Court identifies four aspects of Defendants' conduct that Stone challenges as arbitrary, capricious, or otherwise unlawful. *See generally Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (liberal construal of *pro se* filings). Stone argues that Defendants (1) have not adequately explained their decision and its basis in substantial evidence; (2) relied on "factors which

Congress ha[d] not intended it to consider"; (3) ignored relevant evidence; and (4) "entirely failed to consider an important aspect of the problem." *See Agape Church*, 738 F.3d at 410.

## A. Defendants' Decision Was Supported by Substantial Evidence and Adequately Explained

Defendants argue that their decision was "fully supported by the record." Defs.' MSJ at 20. They "carefully considered" the facts presented, examined the relevant factors, and were well within their discretion in applying their own regulations and finding the exceptions were not met. *Id.* at 18–19. Stone, on the other hand, alleges that Defendants' explanation to this Court is mere "spin," Pl.'s MSJ at 39, and that they have presented "no analysis, no rationale, [and] no argument" supporting their determination that the two-parent consent rule was neither satisfied nor excused by an exception, Pl.'s Resp. to Defs.' Reply ("Pl.'s Resp.") at 1, ECF No. 164.

A district court shall hold unlawful and set aside a final agency action "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). Ultimately, the "substantial evidence" standard of review is limited to whether the agency has articulated an adequate explanation for its actions in connection with the facts before it. *See, e.g.*, *State Farm*, 463 U.S. at 43. The court "will not uphold an agency's action where it has failed to offer a reasoned explanation that is supported by the record." *AT&T v. FCC*, 974 F.2d 1351, 1354 (D.C. Cir. 1992).

Defendants have a demonstrable interest in, and commitment to, enforcing the two-parent consent rule and effectuating its goal of preventing international parental child abduction. The two-parent consent rule was "mandated by § 236 of [Public Law 106-113] and helps to prevent international child abduction, child trafficking, and other forms of passport fraud." 78 Fed. Reg. 37,269-02, 2013 WL 3056922 (Jun. 20, 2013). Defendants were concerned that Stone and/or Suzuki would try to circumvent two-parent consent and travel internationally with the child against the other's wishes. *See, e.g.*, A.R. 406–09.

With the congressional intent of preventing abduction in mind, Defendants decided to deny Stone's passport application. They explained:

> Father has not provided two parent consent, and has not provided evidence of sufficient exigent circumstances to justify issuing without. He has sent much mail, which [the Department of State] has reviewed, but based on all available information, including statements of the mother requesting that we do not issue a passport, inconsistencies with father's statements as to location of child, welfare of child, and relationship with mother, and all provided documentation, [the Department of State] finds that passport should be denied. More than 90 days was given to father to respond to request for 2 parent consent. Father has at times claimed that he has had no contact with mother since arrival in Japan, however at time of interview [stated he] had seen her a few weeks prior, and was leaving Embassy to go to her town for a visit. Deny.

Defs.' MSJ at 15–16 (quoting A.R. 66).

The Court concludes that Defendants have articulated a sufficient connection between the record and the decision to require Suzuki's consent and, when it was not provided, to deny Stone's application. The record shows that Stone contradicted himself repeatedly throughout his communications with Defendants. Stone's DS-5525 described a marital and custody dispute, of the type in which Defendants do not interfere as a matter of policy. *See* A.R. 197, 233. The two-parent consent rule is especially important in a custody dispute where parental abduction is a risk or has already occurred. *See* U.S. Dep't of State, 7 Foreign Affairs Manual § 1712.2(o)(1). Suzuki did not formally consent to the issuance of a passport and took affirmative steps to prevent it. *See* A.R. 17–18, 156–58. In scrupulously enforcing the requirement of two-parent consent in Stone's case and concluding that an exception did not apply, Defendants furthered the underlying goal of preventing international parental child abduction. Stone was notified that two-parent consent was required and he failed to provide it within the time period given. *See* A.R. 502. The reasoned explanation Defendants have provided is supported by substantial evidence in the record, and the decision is rationally connected to the facts before the agency.

### B.  Defendants' Did Not Improperly Consider Extraneous Evidence

According to Stone, Defendants improperly considered his pending FOIA request and lawsuit against the Defendants when acting on his application. Pl.'s MSJ at 22–23, 36–37, 64. He argues that these proceedings are "wholly irrelevant" to the agency's task, which he defines as determining whether "international child abduction amounts to exigent or special family circumstances." *Id.* at 64. Stone further believes that the passport denial was intentional and malicious retaliation for his lawsuit and FOIA request, *id.* at 22, and impermissibly based on personal dislike of him, Pl.'s Resp. at 8.

Defendants counter that there was neither improper consideration of extraneous factors nor bad faith. *See* Defs.' Reply to Pl.'s Opp'n at 5 ("Defs.' Reply"), ECF No. 163. The Embassy was already handling the FOIA request when Stone made his passport application, so joint references in communications are to be expected. Defs.' MSJ at 19 & n.13; Defs.' Reply at 5; *see also*, *e.g.*, A.R. 119. Documents related to the FOIA request were then included in the administrative record out of "an abundance of caution," Defs.' Reply at 5, because Defendants were careful to "make sure that [they] check[ed] all the boxes" in Stone's matter, A.R. 310. Because Stone's lawsuit, filed in Hawaii on February 6, predated his application appointment at the Embassy[5] on February 8, and because Stone himself advised the Embassy of his lawsuit and forwarded them his court filings, it is only appropriate that the contents of those filings were considered in rendering a decision on his application. Defs.' Reply at 5–6; Defs.' MSJ at 10–11;

---

[5] Stone believes that his January communications with the Embassy and the forms he filled out prior to the appointment constituted at least two separate applications for the child's passport, which were both denied. *See* Compl. at 7–8; Pl.'s Resp. at 4–5. Defendants were clear with him, however, that his application was to be made in person at the February 8 appointment, that they could not prejudge his case, and that the final decision would be made by the State Department in Washington. *See* A.R. 177, 183–84, 189–90, 204.

A.R. 205. Defendants assert that they engaged in reasoned, careful decisionmaking and did not act maliciously or in bad faith. Defs.' Reply at 5.

The district court reviews the entire record, including "any document that might have influenced the agency's decision," when assessing agency action under the APA. *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (citing *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975) (quotation omitted)). A decision is usually arbitrary and capricious if the agency considered an impermissible factor or relied on information Congress did not intend it to consider when making it. *See, e.g.*, *State Farm*, 463 U.S. at 43. If an agency action is based on personal animus toward an applicant, that can be consideration of an impermissible factor sufficient to make action taken against the applicant arbitrary or capricious. *See Robbins v. Regan*, 780 F.2d 37, 50 n.20 (D.C. Cir. 1985) (citing *Kent Farm Co. v. Hills,* 417 F. Supp. 297, 301 (D.D.C. 1976)).

In, *Robbins*, the Department of Health and Human Services had committed to repairing a federal building operated as a homeless shelter, but the shelter operator sued and refused to keep operating when HHS allocated less funding than desired. *Id.* at 40. Ultimately, HHS rescinded its promise to renovate the building and cited the plaintiff's lawsuit and refusal to continue operating the shelter as two of its five reasons for its decision. *Id.* at 40–41, 51. The shelter operator alleged consideration of "an impermissible and irrelevant factor—animosity towards [the plaintiff]." *Id.* at 47. The court agreed that it "would clearly be impermissible" for the agency to rescind the funding "because it develop[ed] personal animus toward" the plaintiff, and that plaintiff's lawsuit was not a valid reason to decide to close the shelter. *Id.* at 48.  However, it found that HHS's other reasons were sufficient to justify its decision under the deferential APA standard of review. *Id.*

Similarly, the adverse agency action at issue here—denial of the passport application—was taken when the applicant, Stone, had already brought suit against the agency before whom his application was pending. The State Department did not include Stone's lawsuit or FOIA request in its reasons for denying his application, unlike HHS in *Robbins*, but it did include them in the administrative record.[6] Whether or not Defendants were subjectively motivated by personal animus, they have sufficiently articulated nonarbitrary, impersonal reasons for their decision: Stone's lack of credibility and failure to meet his burden, Suzuki's opposition to issuance, and the need to strictly enforce the two-parent consent rule. And Stone has not adequately alleged facts tending to show bad faith or improper behavior, without which "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 83 (D.D.C. 2018) (quoting *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009)). In fact, rather than demonstrate that he was singled out based on the agency's animus, Stone argues that the agency treated his case as it does all cases of alleged child abduction into Japan. *See, e.g.*, Pl.'s MSJ at 67–69 (alleging State Department's failure to help 1,200 families just like his). As a result, his unsupported claims of agency animus fail on the facts and on the law.

---

[6] The FOIA records and lawsuit are distinguishable from Stone's applications for a Return Order under the Hague Convention and related correspondence. Hague Convention matters are the province of the Office of Children's Issues, which is separate from the Embassy and is not involved in passport applications. *See* Defs.' Reply at 2–3 & n.1; Dep't of State, 7 Foreign Affairs Manual § 1713.3-1. The Court is reviewing only the record of the Embassy's action and State Department's concurrence on the passport application, so documents pertaining to the actions of the Office of Children's Issues are properly excluded from the administrative record. *See Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4–5 (D.D.C. 2006).

### C.  Defendants Did Not Ignore Relevant Evidence

Stone submits that Suzuki's January 14 email shows that Suzuki abducted the child and then consented to the child returning to the United States with Stone. Pl.'s MSJ at 16; Pl.'s Resp. at 14. Stone claims that Defendants "were aware the wife consented to the child leaving Japan and returning to U.S." and that Defendants are therefore estopped from denying the application for lack of the mother's consent. Pl.'s MSJ at 16. In Stone's view, Suzuki is unstable and it is unreasonable to demand a notarized written statement from an unstable person. *See* Pl.'s Resp. at 2. Stone believes that he satisfied the two-parent consent rule and that Defendants' finding to the contrary—whether because they ignored the email or declined to accept it as adequate written consent—was arbitrary and an abuse of discretion. *See* Pl.'s MSJ at 16, 33, 51–52.

"[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706." *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (citing *State Farm*, 463 U.S. at 43). The agency has a duty to consider contrary evidence, not just the evidence supporting its own view. *See, e.g.*, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). An agency interpreting the evidence before it is generally bound to follow its own regulations and settled course of prior behavior. *E.g.*, *Atchison, Topeka & Santa Fe R.R. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807–08 (1973) (noting that an agency's "settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress").

Defendants did not ignore contrary evidence. They reviewed the email referenced by Stone but were compelled by the letter of § 51.28 and their settled course of behavior to refuse to treat an unverified email as proof of Suzuki's consent. The regulation requires a "notarized written statement or affidavit from the non-applying parent, consenting to the issuance of the

15

passport," 22 C.F.R. § 51.28(a)(3)(i), which the email is not. Additionally, the content of the email was contradicted by Suzuki's repeated contacts with the Embassy, *see* Defs.' MSJ at 9; A.R. 128, 543, so the email was facially unreliable—even more so if Suzuki is indeed unstable.[7] As Stone himself knows, "[a]gencies are bound to follow their own regulations." Pl.'s MSJ at 4 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004)). The State Department would contravene its own regulations and deviate from the settled course of behavior it adopted to carry out Congress's intent (preventing international parental child abduction) if it accepted anything less than formal, notarized, written consent in these circumstances.

Defendants note that marital disagreements such as Stone's are common—not special—family circumstances, and they are exactly what Congress was targeting when it tasked the State Department with promulgating the two-parent consent rule and other protections against parental abduction. Defs.' MSJ at 20. The State Department routinely denies passport applications that do not meet the exacting requirements of the relevant laws and regulations, including § 51.28. *See, e.g.*, A.R. 183 (informing Stone that "the issuance of a passport based on a DS-5525 appears to only rarely happen, as the legal threshold is quite high").

Stone points to an internal email allegedly saying, "Let's just deny, like we usually do," *see* Pl.'s MSJ at 32, 44, as evidence that Defendants arbitrarily ruled on his application without

---

[7] If Suzuki is unstable, Stone can seek an order from a court of competent jurisdiction declaring her incompetent and terminating her parental rights, submit that order as evidence of sole custody, and apply for the child's passport as the sole parent. *See* 22 C.F.R. § 51.28(a)(3)(ii)(F). That order cannot come from this Court as it does not have jurisdiction to adjudicate the custody of the child nor the competency of Suzuki, a foreign national. Without such an order or other proof of sole custody—which is not the same as being the sole financial provider, *see* Pl.'s MSJ at 16—the State Department is required to enforce the two-parent consent rule.

considering his documentation. The actual email asks if the Embassy could "just deny the case as we normally do after 90 days," and in context it refers to an internal discussion about whether the interviewing officer should be the one to deny Stone's application when his 90-day window expired the following week. *See* A.R. 547. Denying the application "like [they] normally do" when an applicant failed to provide the required parental consent within the designated time frame was an example of the agency following its settled course of behavior. Contrary to Stone's assertions, enforcing the letter of the two-parent consent rule by requiring notarized written consent is not arbitrarily ignoring relevant evidence that Suzuki had consented.

### D.  Defendants Did Not Entirely Fail to Consider an Important Aspect of the Issue

Stone accuses Defendants of causing "permanent, irreparable and real, psychological, emotional and developmental harm" to the child by failing to issue a passport, thus causing him to remain in Japan "in an abducted state" for two years. Pl.'s MSJ at 3, 7, 16. Stone also presented photos of the alleged abuse—the child's frostbitten skin—which he alleges Defendants dismissed as sensitive skin. *Id.* at 51. Stone argues that child abuse is an exigent or special family circumstance,[8] and that Defendants failed to consider the child's welfare, thus rendering the decision unjustifiable, arbitrary, and capricious. *See* Pl.'s Resp. at 3.

When an agency "fail[s] to consider important aspects of the problem" before it, "[t]hat omission alone renders [the agency's] decision arbitrary and capricious." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1898–99 (2020) (holding that failure to

---

[8] The Court rejects Stone's argument that Defendants' failure to grant him an exception or prevent Suzuki from leaving the United States with the child affirmatively *created* exigent or special family circumstances, *see* Pl.'s MSJ at 15, as circular. The Court's review is limited to the June 2019 decision to deny Stone's February 2019 application based on the exigent or special family circumstances that Stone alleged at the time of his application and his failure to provide Suzuki's consent within 90 days thereafter.

consider an alternative course of agency action "within the ambit of existing policy" was arbitrary and capricious); *see also FEC v. Rose*, 806 F.2d 1081, 1088 (D.C. Cir. 1986) ("A determination that an agency made a decision without considering a relevant factor leads to condemning the decision as 'arbitrary and capricious.'"). The special family circumstances exception applies to "compelling humanitarian circumstances where the minor's lack of a passport would jeopardize the health, safety, or welfare of the minor." 22 C.F.R. § 51.28(a)(5)(ii). As Stone notes, parental abduction is a form of child abuse. *See* Pl.'s Partial MSJ at 5 (citing *Abbott v. Abbott*, 560 U.S. 1, 21 (2010)). Child abuse is a circumstance "jeopardizing the health, safety, or welfare of the minor," and granting an exception for special family circumstances in a child abuse situation is a course of agency action within the ambit of § 51.28. Denying the application without considering applying the exception, in a case where jeopardized child welfare was raised, would indeed be arbitrary and capricious.

However, even accepting that Suzuki abducted the child into Japan in November 2018, and accepting that this abduction was child abuse, Defendants did not fail to consider an important aspect of the problem. Stone regained physical custody of the child on January 2 and claims that the child has no memory of living with his mother. Pl.'s MSJ at 59, 65. If the alleged abuse and neglect while in the custody of Suzuki and her parents created exigent or special family circumstances jeopardizing the child's welfare, those circumstances were resolved by the time Stone applied for the passport on February 8. Stone retained exclusive physical custody of the child from the application through and beyond Defendants' final decision, and Stone speaks of their close bond and the lengths to which he has gone to make a comfortable life for them in Japan. *See id.* at 2, 59; A.R. 111–14. Stone told the Embassy in a January phone call that his son was safe at his clean, warm home and that he was not concerned about the child's well-being.

A.R. 230. As discussed below, any change in circumstances that occurred *after* Defendants determined in February 2019 that Stone's application did not meet the exceptions for exigent or special family circumstances is not relevant to the Court's decision.

Defendants have not, contrary to Stone's assertion, abused their discretion by ignoring the child's welfare as a relevant factor or important aspect of the problem. An applying parent submitting a DS-5525 in lieu of the second parent's consent bears the burden of proof,[9] and the standard is high. *See* Defs.' MSJ at 18. A welfare check was discussed, although never conducted, and Defendants repeatedly talked about the child's safety in internal communications. *See, e.g.*, A.R. 36, 429, 471, 475. After reviewing all of Stone's submissions and communications, and "all available information, including . . . [the] welfare of [the] child" the State Department determined that Stone had not met his burden to prove that he qualified for either exception. *See* Defs.' MSJ at 11–12, 15 (citing A.R. 66). Specifically, the Embassy noted that Stone's contradictions and Suzuki's express opposition counseled against allowing the child to travel internationally without both parents' consent, and that the Embassy did not issue passports for the purpose of enrolling in school or accessing medical care. *See* A.R. 269, 311.

This Court cannot rule on whether Defendants' determination that Stone had not met his burden was correct, it can only require that Defendants engaged in reasoned decisionmaking that included a consideration of all the relevant factors. The record shows that Defendants did

---

[9] *See* 22 C.F.R. § 51.28(a)(5)(iii) ("A parent . . . applying for a passport for a minor under age 16 under [subsection (a)(5)] must submit a written statement with the application describing the exigent or special family circumstances he or she believes should be taken into consideration in applying an exception."), (iv) ("Determinations under § 51.28(a)(5) must be made by a senior passport authorizing officer pursuant to guidance issued by the Department."). That "guidance" includes 8 FAM and internal State Department and Embassy policies. Officers, in their discretion, can require an applicant furnish additional evidence to establish that an exception is met. *See id.* § 51.28(a)(6).

consider the child's welfare and did evaluate Stone's eligibility for the exceptions, so they did

not fail to consider important aspects of the problem or a relevant factor in rendering their

decision. *See Regents of Univ. of Cal.*, 140 S. Ct. at 1898; *Rose*, 806 F.2d at 1088. Defendants

did not, therefore, make an arbitrary or capricious decision or abuse their discretion on these

grounds.

## V.  CLAIMS FOR MONEY DAMAGES

Stone cannot recover money damages in an APA action against the State Department.

Congress explicitly limited the statutory waiver of sovereign immunity for judicial review of

agency action to claims for "relief other than monetary damages." 5 U.S.C. § 702. That waiver,

therefore, "explicitly excludes" claims for relief in the form of money damages. *A & S Council

Oil Co. v. Lader*, 56 F.3d 234, 238 (D.C. Cir. 1995) (citing *Hubbard v. Adm'r of EPA*, 982 F.2d

531, 532 (D.C. Cir. 1992) (en banc) (denying back pay as a remedy in an action against the

EPA)); *see also DeSilva v. Donovan*, 81 F. Supp. 3d 20, 25 (D.D.C. 2015) (holding that

"plaintiffs who seek review under the APA may only seek relief 'other than money damages'"

and "a plaintiff may not be awarded money damages under the APA"). Although it could be

argued that some money awards may be granted as a form of *specific* relief under the APA as the

direct result of reversing an agency action, there is no basis for an argument that Stone could

recover the *compensatory* money damages he seeks on an APA theory. *See Bowen v.

Massachusetts*, 487 U.S. 879, 895 (1988); *Hubbard*, 982 F.2d at 536.[10]

---

[10] Stone seeks damages "in excess of $150,000." Pl.'s MSJ at 62. As he notes, however,
this Court lacks jurisdiction over any claims for money damages in excess of $10,000, which are
within the exclusive jurisdiction of the United States Court of Federal Claims. *See id.* at 61; 28
U.S.C. §§ 1346(a), 1491(a)(1). Stone has a separate case before that court. *See Stone v. United
States*, No. 20-1173; *see also* ECF No. 219.

## VI.  CONCLUSION

The State Department is authorized to refuse to issue a passport when it determines that the applicant is a minor and the passport may be denied under the two-parent consent rule. 22 C.F.R. § 51.60(b)(7). The finding that Suzuki's consent was required and the subsequent denial of Stone's application for lack of two-parent consent was not arbitrary, capricious, or an abuse of discretion. Defendants followed their settled course of behavior in adhering to the strict regulations of 22 C.F.R. § 51.28, a course of conduct that is reasonably related to the statutory purpose of preventing fraud and international parental child abduction, and they considered the relevant evidence without relying on impermissible factors. Defendants sufficiently articulated the basis for their decision, and it is supported by substantial evidence.

Furthermore, by denying the application without prejudice, Defendants give Stone the opportunity to attempt, once again, to meet his burden to establish that an exception to the two-parent consent rule applies. Stone claims that his visa expired in June 2020, that eviction proceedings have been initiated against him as of July 2020, and that the COVID-19 pandemic has made staying in Japan more dangerous. *See* Pl.'s MSJ at 45; Pl.'s Resp. at 6. Stone can reapply on his child's behalf and plead these changed circumstances in a new DS-5525 statement setting forth exigent or special family circumstances. But because the Court's review is limited to the record in front of the agency before its June 2019 decision, Stone cannot raise these new circumstances for the first time on a motion for summary judgment.

For the foregoing reasons, Plaintiff Stone's motions for summary judgment are **DENIED**, and Defendants' motion for summary judgment is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 12, 2020                                    RUDOLPH CONTRERAS
                                                                                    United States District Judge