**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JACK STONE,                                     :
                                                :
      Plaintiff,                           :        Civil Action No.:      19-3273 (RC)
                                                :
      v.                                   :        Re Document Nos.:      154, 171, 186
                                                :
U.S. EMBASSY TOKYO, *et al.*,                   :
                                                :
      Defendants.                          :

<u>**MEMORANDUM OPINION**</u>

**DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT;**
**DENYING PLAINTIFF'S MOTION TO JOIN; GRANTING DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

In this case, Plaintiff Jack Stone, proceeding *pro se*, claims that the United States

Embassy in Tokyo and the Department of State ("Defendants") have unlawfully refused to issue

citizenship and immigration documents that he requested for his family. He recently filed a third

amended complaint. *See* Pl.'s Third Am. Compl., ECF No. 171-1. It includes more claims than

Plaintiff had leave to add, so the Court treats the pleading in part as a new motion for leave to

amend his complaint. Plaintiff also seeks to join Jennifer Wooton, U.S. Senator Brian Schatz's

Director of Constituent Services, as a defendant. *See* Pl.'s Mot. to Join Jennifer Wooton as a

Def. ("Pl.'s Mot. to Join"), ECF No. 154. Finally, Defendants move to dismiss a claim that the

Court permitted Plaintiff to add to his complaint. *See* Defs.' Mot. to Dismiss & Opp'n to Pl.'s

Third Am. Compl. ("Defs.' Mot. & Opp'n"), ECF Nos. 186-1, 187-1.[1] For the reasons explained

below, the Court will deny Plaintiff's motions and grant Defendants' motion.

---

[1] Defendants' Opposition to Plaintiff's Third Amended Complaint and Defendants' Motion to Dismiss are contained in the same filing. For clarity, the Court will refer to the document as "Defs.' Mot. & Opp'n."

## II.  FACTUAL BACKGROUND

The Court presumes familiarity with its prior opinions in this case.  *See* Mem. Op. Granting Defs.' Mot. for Summ. J. and Denying Pl.'s Mots. for Summ. J., ECF No. 227; *Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 5775196 (D.D.C. Sept. 28, 2020); *Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 5653699 (D.D.C. Sept. 23, 2020); *Stone v. U.S. Embassy Tokyo*, No. 19-3273, 2020 WL 4260711 (D.D.C. July 24, 2020).  Accordingly, this opinion will briefly describe only the facts and allegations relevant to the pending motions.

On July 24, 2020, this Court granted in part Plaintiff's motion to amend his Second Amended Complaint to include a claim for an order to compel citizenship for Plaintiff's putative second minor child, S.S.  *See Stone*, 2020 WL 4260711, at *5.  The Court "d[id] not grant leave to amend the complaint to include all of Plaintiff's other filings and requests."  *Id.* at *8.

On August 24, 2020, Plaintiff filed a Third Amended Complaint including four separate sections: (1) "Plaintiff Sues Defendants to Obtain Consular Report of Birth Abroad and Social Security Card for Minor Child S.S., a U.S. Citizen," Pl.'s Third Am. Compl. at 1; (2) "Plaintiff Demands Defendants Issue Passport to S.S.," *id.* at 13; (3) "Plaintiff Joins Scott Renner, Gary Gardner, David Brizzee, Ambassador to Japan Bill Hagerty and Michael Pompeo as Defendants," *id.* at 15; and (4) "Plaintiff Joins United States Citizens and Immigration Services (USCIS) as Defendant," *id.* at 16.  Defendants then moved to dismiss the first claim and opposed the addition of the three latter claims in the new amended complaint.  *See* Defs.' Mot. & Opp'n.

## III.  LEGAL STANDARD

### A.  Motion for Leave to Amend a Complaint

A party may amend its pleading once as a matter of course within twenty-one days after serving its pleading, or within certain time periods if the pleading is one to which a responsive

pleading is required.  Fed. R. Civ. P. 15(a)(1); *see Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015).  Otherwise (such as here, when a party has already filed amended pleadings), a party may amend its pleading only with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a)(2); *see also Knight*, 808 F.3d at 860.  The decision to grant or deny leave to amend "is committed to a district court's discretion," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam), and should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2).  However, the court may deny a motion to amend if the proposed amendment would be futile.  *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).  A motion to amend is futile "if the proposed claim would not survive a motion to dismiss." *Ludwig*, 82 F.3d at 1099.  Of course, a court must be mindful that a *pro se* litigant's complaint is "construed liberally and is held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Lemon v. Kramer*, 270 F. Supp. 3d 125, 133 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### B. Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement" that gives the defendant fair notice of the claim and the grounds upon which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To defeat such a motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements," are therefore insufficient.  *Id.*  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor presume the veracity of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  Finally, a court need not accept as true factual allegations that "contradict[] exhibits to the complaint or matters subject to judicial notice."  *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

## IV.  ANALYSIS

### A.  Plaintiff's Motion for Leave to Further Amend the Complaint

In construing Stone's newly amended complaint, the Court agrees with Defendants that Plaintiff asserts three new claims: a claim to compel the issuance of a U.S. Passport for S.S., a request to join certain Department of State officials as defendants, and a claim concerning the denial of Plaintiff's wife's Form I-485 Application.[2]  *See* Defs.' Mot. & Opp'n at 16–22.  Because the Court's July 24, 2020, opinion "[did] not grant leave to amend the complaint to include all of Plaintiff's other filings and requests," *Stone*, 2020 WL 4260711, at *8, the Court will construe these claims as a motion for leave to further amend the complaint.  The Court will also address Plaintiff's motion to join Jennifer Wooton, U.S. Senator Brian Schatz's Director of Constituent Services, as a defendant.  *See* Pl.'s Mot. to Join.  The Court addresses each claim in turn.

#### i.   *Claim to Compel the Issuance of a U.S. Passport for S.S.*

Plaintiff first "demands a passport to be issued to S.S."  Pl.'s Third Am. Compl. at 13.  Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial

---

[2] The Court permitted Plaintiff to bring the fourth claim relating to an order to compel citizenship for Plaintiff's putative second minor child, S.S.  This claim is the subject of Defendants' Motion to Dismiss.

review thereof." 5 U.S.C. § 702.  The APA generally limits causes of action to those challenging final agency action. *Trudeau v. FTC*, 456 F.3d 178, 188–89 (D.C. Cir. 2006).  "Final agency action 'mark[s] the consummation of the agency's decision making process' and is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).  "With a few exceptions, if there is no final agency action, there is no basis for review of the government's decision or policy." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).

Here, Plaintiff alleges no agency action, inaction, or involvement at all.  It does not appear from Plaintiff's proposed amended complaint that he has undertaken any steps to obtain a passport for S.S., the application for which, as noted in Plaintiff's own exhibit, "must be completed" on a Form DS-11, U.S. Passport Application.  Pl.'s Third Am. Compl. Ex. E.  Plaintiff also states that he "will pay" the required fee for a passport for S.S., *id.* at 14, suggesting that he has not done anything besides file the instant motion to obtain a passport for S.S.  To the extent that Plaintiff challenges wrongful agency *inaction*, that sort of claim can proceed "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Surely an agency is not legally required to take action on an application that, like S.S.'s passport application, has not even been filed.  Given Plaintiff's lack of efforts to obtain a passport for S.S. through the Department of State, "there is no basis for review of the government's decision." *Cobell*, 240 F.3d at 1095.

Furthermore, even if Plaintiff had taken steps with the Department of State to obtain a passport for S.S., the Court can only direct an agency to "take action upon a matter, without

directing how [the agency] shall act." *S. Utah Wilderness All.*, 542 U.S. at 64.  At most, the

Court could merely issue a mandamus to order the Department of State to take action on the

passport application, but it could not order the Department of State to approve the application

and issue S.S. a passport.  However, given the lack of *any* agency action or wrongful agency

inaction, the Court will deny as futile Plaintiff's request for leave to amend his complaint to

include a motion to compel issuance of a passport for S.S.

> ii.    *Requests to Join Department of State Officials and Jennifer Wooton*
> *as Defendants for Unspecified Tort Claims and Privacy Act Claim*

Plaintiff next seeks to add several Department of State officials—Scott Renner, Gary

Gardner, David Brizee, former U.S. Ambassador to Japan Bill Hagerty, and Secretary of State

Michael Pompeo—as defendants in their official capacities.  *See* Pl.'s Third Am. Compl. at 15–

16.  In a separate motion, Plaintiff seeks to join Jennifer Wooton, U.S. Senator Brian Schatz's

Director of Constituent Services, as a defendant.  *See* Pl's Mot. to Join.  Based on the language

of Plaintiff's filings, the Court agrees with Defendants that Plaintiff is asserting tort claims under

the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.  *See* Pl.'s Third Am. Compl. at

15 (stating that proposed Department of State defendants "owed a duty" to Plaintiff and his

children and "failed to act"); Pl.'s Mot. to Join at 1 (describing Wooton's conduct as "tortious").[3]

The FTCA is a "limited waiver of the Government's sovereign immunity," permitting

plaintiffs to "sue the United States in federal court for state-law torts committed by government

employees within the scope of their employment."  *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C.

---

[3] Plaintiff seems to suggest that *Monell v. Department of Social Services*, 436 U.S. 658
(1978) is relevant to his claims against Wooton.  *See* Pl.'s Mot. to Join at 1–2.  However, *Monell*
relates to a municipal entity's liability in a § 1983 suit.  436 U.S. at 701.  Moreover, § 1983
provides a cause of action "against *state* actors who violate an individual's rights under federal
law."  *Filarsky v. Delia*, 566 U.S. 377, 380 (2012) (emphasis added).  No municipal entity or
state actor is named as a defendant by Plaintiff, and thus *Monell* and § 1983 are inapposite.

Cir. 2008).  As such, the only proper defendant in an action brought under the FTCA is the United States.  *See Davis v. United States*, 196 F. Supp. 3d 106, 110 n.2 (D.D.C. 2016); *see also Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 16 (D.D.C. 2015) ("FTCA suits 'must name the United States as defendant.'" (quoting *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345–46 (D.C. Cir. 1961))).

All of the "tortious" conduct alleged by Plaintiff appears to fall within the scope of the proposed defendants' employment.  Indeed, the allegations against the Department of State employees appear to involve consular business, such as "refus[ing] to issue [a] passport," failing to "initiate return order proceedings," and responding to Plaintiff's letters about consular matters, Pl.'s Third Am. Compl. at 15.  Likewise, it appears that Wooton took no actions outside of her responsibilities to handle constituent interactions.  *See* Pl.'s Mot. to Join at 2.  Thus, Plaintiff cannot bring his FTCA suit against these individuals because "the United States is the only proper defendant."  *Davis*, 196 F. Supp. 3d at 110 n.2.

Even if the United States was properly named as the correct Defendant, Plaintiff's request to join these six defendants would be futile for several additional reasons.  First, much of the "tortious" conduct Plaintiff alleges appears to have occurred in Japan and thus is independently barred by the FTCA's foreign country exception, *see* 28 U.S.C. § 2680(k), which provides that the limited sovereign immunity waiver in the FTCA "does not extend to acts or omissions arising in territory subject to the sovereign authority of another nation," *Macharia v. United States*, 334 F.3d 61, 69 (D.C. Cir. 2003) (holding that FTCA foreign country exception applied to injuries occurring at a United States embassy).  Second, the tort claims alleged against Wooton involve libel and slander, *see* Pl.'s Mot. to Join at 2, for which the United States has not waived sovereign immunity under the FTCA.  *See* 28 U.S.C. § 2680(h); *Council on Am. Islamic*

*Relations v. Ballenger*, 444 F.3d 659, 666 (D.C. Cir. 2006) (holding that the FTCA barred an organization's defamation claims because the United States had not waived sovereign immunity as to those claims). Third, Plaintiff also has not alleged that he complied with the FTCA's exhaustion requirement. *See* 28 U.S.C. § 2675(a). Under D.C. Circuit precedent, a failure to exhaust administrative remedies under the FTCA is a jurisdictional defect. *See Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir. 2018) (per curiam). Plaintiff's "fail[ure] to allege that [he] satisfied the requirement that [he] exhaust administrative remedies before filing an FTCA claim" would require dismissal. *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 69–70 (D.D.C. 2015). Fourth, Plaintiff fails to demonstrate how the alleged conduct, such as failing to issue a passport or respond to letters, constitute legally cognizable torts. "While a complaint should not be dismissed unless the court determines that the allegations do not support relief on any legal theory, the complaint nonetheless must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984). The Court is under no duty to recognize "a novel theory of recovery unaided by the plaintiff." *Kugel v. United States*, 947 F.2d 1504, 1508 n.3 (D.C. Cir. 1991). Because "the complaint does not adequately inform the court of the plaintiff's legal theory supporting" a valid cause of action, joining the six defendants for Plaintiff to assert these myriad unrecognized claims would be futile. *Id.* Finally, many of Plaintiff's allegations are entirely conclusory. *See, e.g.*, Pl.'s Third Am. Compl. at 15 ("[Renner] engaged in a scheme to commit fraud on the court, falsigying records, and engaging in a systemic scheme to harm Plaintiff, harm that flows directly to his children."); *id.* ("Hagerty's inaction . . . results in irreparable harm to Plaintiff and his children."). A court is "not bound to accept as true a legal

conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678, and this Court will not do so here.

Plaintiff also raises a Privacy Act claim against Wooton, alleging that Wooton disclosed documents with Plaintiff's personal information to the U.S. Embassy in Tokyo before Plaintiff signed a "Privacy Act authorization."  *See* Pl.'s Mot. to Join at 3–5.  However, like the FTCA, the Privacy Act "does not allow a person to seek civil remedies against individuals."  *Armstrong v. U.S. Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997).  Rather, a suit under the Privacy Act must be brought against an "agency," meaning "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  Thus, the Privacy Act does not encompass entities "clearly outside the executive branch."  *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997).  Here, Plaintiff's Privacy Act claim cannot proceed against Wooton as an individual or against the Office of Senator Schatz, which, as an office in the legislative branch, is "clearly outside the executive branch."  *Id.*  Although Plaintiff describes the release-of-information form Wooton requested he sign as a "Privacy Act authorization," Pl.'s Mot. to Join at 5, Wooton never characterized it as such, instead calling it a "Privacy Release Form," Pl.'s Mot. to Join, Ex. C.  While Senator Schatz's office may have a policy of obtaining consent from constituents before sharing their personal information with agencies, it is not a policy regulated by the Privacy Act.

In sum, there is ample reason to deny as futile Plaintiff's request to join the six proposed defendants in their official capacities to assert FTCA and Privacy Act claims.

### iii.   Claim Concerning Defendant's Wife's Form I-485 Application

Finally, Plaintiff complains of actions taken by the U.S. Citizenship and Immigration Services ("USCIS") concerning USCIS's denial of his wife's Form I-485, the application to register or adjust status to legal permanent residence.[4]  Pl.'s Third Am. Compl. at 20–26. Plaintiff seems to challenge an underlying determination of his wife's eligibility for adjustment; namely, whether USCIS received a federal income tax return for the sponsor (here, Plaintiff) on the required Affidavit of Support (Form I-864).  *Id.* at 22, Ex. V.  Plaintiff additionally seeks to join USCIS as a defendant.  *Id.* at 16–17.

At first glance, 8 U.S.C. § 1252(a)(2)(B)(i) seems to deny this Court's jurisdiction to hear Plaintiff's claim.  That provision provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title [the section relating to adjustment of status]."  8 U.S.C. § 1252(a)(2)(B)(i).  However, the proper interpretation of this provision is a matter of debate in this district and between the circuits.  Some courts have held that it completely divests district courts of the authority to review *any* decisions that either grant or deny adjustment of status pursuant to 8 U.S.C. § 1255.  *See, e.g.*, *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 620 (4th Cir. 2010) (holding that the exclusive means of judicial review of a legal issue related to the denial of an adjustment of status is by petition for review to the court of appeals from a final order of removal); *Djodeir v. Mayorkas*, 657 F. Supp. 2d 22, 24 (D.D.C. 2009).  Other courts have held that the provision divests district courts only of the authority to review discretionary decisions, while permitting district courts to review an agency's nondiscretionary, or purely legal, decisions.  *See, e.g.*, *Hosseini v. Johnson*, 826 F.3d

---

[4] Plaintiff refers to this denial as a "visa denial."  Pl.'s Third Am. Compl. at 20. However, given the documentary evidence Plaintiff submitted in his complaint, *see id.* Ex. V, the Court understands that he is referring to the denial of his wife's Form I-485 application.

354, 359 & n.6 (6th Cir. 2016) (finding that "courts can review non-discretionary decisions in this context," including "eligibility determinations underlying the agency's decision"); *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 906 (8th Cir. 2005) (noting that a court may "consider the predicate legal question whether the [agency] properly applied the law to the facts" in making an eligibility determination); *Mawalla v. Chertoff*, 468 F. Supp. 2d 177, 181 (D.D.C. 2007).

The Court need not wade into this debate, however, because even assuming the Court has jurisdiction to hear Plaintiff's claim and that the eligibility determination that USCIS did not receive a federal income tax return for Plaintiff is "nondiscretionary," Plaintiff's claim would still be futile because the agency "properly applied the law to the facts" in making that eligibility determination.  *See Reyes-Vasquez*, 395 F.3d at 906.

In order for an immediate relative of a U.S. citizen (such as Plaintiff's wife) to demonstrate eligibility for adjustment, a sponsor must submit an affidavit of support, *see* 8 C.F.R. § 213a.2(a)(2)(i)(A), and the "sponsor must include with an affidavit of support either a photocopy or an Internal Revenue Service-issued transcript of his or her complete Federal income tax return for the most recent taxable year," *id.* § 213a.2(c)(2)(i)(A).  USCIS's Notice of Decision indicates that the agency concluded that Plaintiff's wife was not eligible for adjustment of status because she did not submit a copy of her sponsor's—*i.e.*, Plaintiff's—federal income tax returns.  Pl.'s Third Am. Compl. at 123.  Plaintiff concedes that he did not comply with the requirement of § 213a.2(c)(2)(i)(A).  *See id.* at 22.  Plaintiff counters, though, that he "did not owe taxes to the IRS" for 2017 and therefore submitted a Japanese tax document for that year, along with a translation.  *Id.*  However, "[i]f the sponsor had no legal duty to file a Federal income tax return for the most recent tax year, the sponsor must explain why he or she had no legal duty to a file a Federal income tax return for that year," along with "evidence of the amount

11

and source of the income that the sponsor claims was exempt from taxation and a copy of the provisions of any statute, treaty, or regulation that supports the claim that he or she had no duty to file an income tax return." 8 C.F.R. § 213a.2(c)(2)(i)(B). Plaintiff does not allege that he complied with that requirement. Without this explanation to USCIS, the Court concludes that USCIS "properly applied the law to the facts" in determining that Plaintiff's wife was not eligible for adjustment of status. *Reyes-Vasquez*, 395 F.3d at 906. Consequently, the Court will deny as futile Plaintiff's motion for leave to amend his complaint to include a claim challenging the denial of his wife's Form I-485 application and alleged monetary damages emanating from that denial.[5] Because there are no other remaining claims against USCIS, the Court will also deny as futile Plaintiff's motion to join USCIS as a defendant.

## B. Defendants' Motion to Dismiss

Defendants move to dismiss the claim relating to an order to compel citizenship for Plaintiff's putative second minor child, S.S, which the Court did permit Plaintiff to add to his complaint. *See* Defs.' Mot. & Opp'n at 6–15. Defendants argue that there is no final agency action for this Court to review. *Id.*

As discussed above, the APA generally limits causes of action to those challenging final agency action. *Trudeau*, 456 F.3d at 188–89. "Final agency action 'mark[s] the consummation of the agency's decision making process' and is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Reliable Automatic Sprinkler Co*, 324 F.3d at 731 (quoting *Bennett*, 520 U.S. at 177–78). In evaluating finality, courts look to "the

---

[5] Plaintiff has also not demonstrated that the United States waived sovereign immunity and allowed him to sue for monetary damages, given that 5 U.S.C. § 702, the APA section relating to judicial review of agency action, "waives the Government's immunity from actions seeking relief *other than money damages*." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999) (internal quotation marks omitted) (emphasis added).

way in which the agency subsequently treats the challenged action." *Sw. Airlines, Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016).  Although the court does not lose jurisdiction solely because a claim under the APA lacks final agency action, that claim might not survive a motion to dismiss.  *Reliable Automatic Sprinkler Co*, 324 F.3d at 731 (determining that lack of final agency action "was no basis for dismissal under Rule 12(b)(1)" but the trial court's dismissal of the case "may [be] properly affirm[ed] . . . pursuant to Rule 12(b)(6)").  Courts may review a delay in agency action when it is "extremely lengthy" or when "'exigent circumstances render it equivalent to a final denial of petitioners' request.'"  *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 32 (D.C. Cir. 1984) (quoting *Envtl. Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1098 (D.C. Cir. 1970)).

In its opinion dated July 24, 2020, this Court granted Plaintiff's motion to amend his complaint to include an order to compel Defendants to grant citizenship for S.S.  *See Stone*, 2020 WL 4260711, at *5.  Opposing Plaintiff's proposed amendment to his complaint, defendants made a similar nonfinality argument there, arguing that Plaintiff's Consular Report of Birth Abroad ("CRBA") application was deficient because the application contained blank signature blocks, because Plaintiff had not appeared at a U.S. embassy to complete the application, and because Plaintiff had not presented the original passport of S.S.'s mother.  *Id.*  For his part, Plaintiff claimed that "he completed a valid CRBA application and that any additional in-person interview or documentation requirements [were] unnecessary or illegal, at least while COVID-19 makes an in-person appointment at the Embassy impossible."  *Id.*  Finding the parties at a legal and factual impasse, this Court was not convinced by Defendant's non-finality argument, noting that "[w]hile the Department of State has not formally 'denied' the citizenship application, the agency has considered the CRBA application and found it deficient," which struck the Court as

"a decision from which legal consequences flow." *Id.* The animating concern for this Court was that the Government "could indefinitely avoid judicial review of its actions here by postponing a 'formal' decision." *Id.* The Court noted that Defendants did not address in their briefing "whether the Department of State requires that the child's mother be present at an embassy or provide certain documentation to complete the CRBA process" or "whether the in-person requirement can or should be waived under present circumstances." *Id.* The Court further directed Plaintiff to adequately explain in his amended complaint "why Defendants' actions here qualify as final under the APA or why finality is not required." *Id.*

In their present motion to dismiss, Defendants offer a more thorough explanation of the in-person appearance requirement. Defendants point out that the U.S. Embassy in Japan's website makes clear that in-person appointments are required for CRBA applications and that the Department of State "cannot accept incomplete applications." Defs.' Mot. & Opp'n at 7. Furthermore, they note that Plaintiff was informed on multiple occasions that an in-person appointment was required to complete the CRBA application and that Plaintiff concedes that he knew of the in-person requirement. *Id.* at 7–8. Defendants explain that "waiver of the personal appearance requirement . . . [is] rarely provided," *id.* at 12, given that the in-person requirement is essential to ensuring "the standards for citizenship and issuance of a CRBA have been met," *id.* at 11. *See* 22 C.F.R. §§ 50.5, 50.7(a) (requiring that the applicant submit proof of the child's "birth, identity, and citizenship" to the satisfaction of the consular officer in order to issue a CRBA). According to Defendants, the concerns animating the in-person requirement are heightened in this case, where there is some question whether Plaintiff is the biological father of S.S. Defs.' Mot. & Opp'n at 7, 11. In sum, Defendants conclude, there is no actual or constructive final agency action here because "the Department of State has maintained the

14

application and advised Plaintiff of the additional steps necessary to complete the process," but Plaintiff refuses to complete the process. *Id.* at 14.

As to whether the Department of State requires original documentation of S.S.'s mother's passport, Defendants note that "communications from the U.S. Embassy make this request, but do not state categorically that Plaintiff's application will be denied on this basis." *Id.* at 11–12.

In response, Plaintiff states that the COVID-19 pandemic makes an in-person appearance at a U.S. embassy dangerous and impossible and thus any in-person appearance requirements are "unreasonable." Pl.'s Third Am. Compl. at 5–9. He notes that he does not have access to S.S., and therefore cannot bring S.S. to a U.S. embassy for an in-person appearance. *Id.* at 5. And he has filed correspondence from the U.S. Embassy in Tokyo indicating that the Embassy considered and denied a waiver of the in-person requirement for Plaintiff and S.S. *See* ECF No. 216, Ex. A. In addition, Plaintiff challenges the suggested requirement of providing S.S.'s mother's original passport to the Department of State to obtain citizenship for his child, considering that he is unable to obtain his wife's passport and that the Department of State already reviewed S.S.'s mother's original passport when Plaintiff applied for citizenship for his first-born child. Pl.'s Third Am. Compl. at 4–5.

With the benefit of additional briefing, the Court concludes that the Department of State's determination that Plaintiff's CRBA application is deficient is not an actual or constructive final denial subject to judicial review. In evaluating how the agency "treats the challenged action," *Sw. Airlines Co.*, 832 F.3d at 275, it is clear that the Department of State does not treat the present application as the "consummation of the agency's decision making process," *Bennett*, 520 U.S. at 177–78. As Defendants note, the Department of State has maintained an active application and advised Plaintiff of the additional steps necessary to complete the process, but

Plaintiff has refused to complete the process.  Defs.' Mot. & Opp'n at 14.  Indeed, recent correspondence from the U.S. Embassy in Tokyo to Plaintiff label the application as "pending" and give Plaintiff the choice of appearing in person with S.S. at the embassy or having the "pending application" adjudicated based on the information already received.  *See id.* at 8 n.3; ECF No. 216, Ex. A.  The Department of State has also advised Plaintiff that if he does not make an appointment and appear at a U.S. embassy by December 18, 2020, the CRBA application will be denied and Plaintiff's evidence will be returned to him.  *See* Defs.' Mot. & Opp'n at 8 n.3; ECF No. 181, Ex. A.  Thus, while the Court was concerned in its July 24, 2020 opinion that the Government "could indefinitely avoid judicial review of its actions here by postponing a 'formal' decision," *Stone*, 2020 WL 4260711, at *5, it appears from the additional briefing that the Department of State stands ready to promptly adjudicate Plaintiff's CRBA application or deny it on December 18, 2020, negating any suggestion that the Government has already consummated its decisionmaking process.  *See Bennett*, 520 U.S. at 177–78.  Rather, it appears that the actions of Plaintiff have postponed a final decision on the CRBA application.  Plaintiff has not completed the in-person requirement, which the Government now explains, in greater detail than before, is a fundamental component of the CRBA application process.  Defs.' Mot. & Opp'n at 7–8, 10–12.  Plaintiff has also not provided the original passport of S.S.'s mother, which, as Defendants now explain, is not necessarily fatal to Plaintiff's CRBA application.  *Id.* at 11–12.

Plaintiff protests that Defendants' insistence on the in-person requirement and obtaining the original passport of S.S.'s mother is "unreasonable," "irrational," and "arbitrary and

capricious" in light of the COVID-19 pandemic and his familial disputes.[6]  Pl.'s Third Am.

Compl. at 3–5.  Perhaps that is so.  But these arguments have nothing to do with finality, the

narrow issue that Plaintiff was directed by this Court to explain in his amended complaint.  *See*

*Stone*, 2020 WL 4260711, at *5.  Indeed, this Court can evaluate if agency action is arbitrary and

capricious *only if* that agency action is *final*.  *See, e.g.*, *Ctr. for Law & Educ. v. Dep't of Educ.*,

396 F.3d 1152, 1165 (D.C. Cir. 2005) (Edwards, J., concurring in the judgment in part) ("[T]he

APA . . . bars review prior to final agency action.").  However, because it does not appear that

the Department of State has taken any final agency action or action "equivalent to a final denial"

of the CRBA application, *see Pub. Citizen Health Research Grp.*, 740 F.2d at 32, and because

the Court is reassured that the Department of State is not indefinitely withholding agency action

to avoid judicial review, judicial review of agency action related to the CRBA application is

premature at this juncture.  Given the lack of finality, Plaintiff has failed to "state a claim to

relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Thus, the Court will grant

Defendants' motion to dismiss Plaintiff's claim for an order to compel citizenship for S.S. and

the associated claims for damages.[7]

---

[6] The Court questions the sincerity of Plaintiff's COVID-19 exigent circumstances argument, considering that Plaintiff states that "under no circumstances" will he appear at a U.S. embassy, "[e]ven if there was no pandemic."  Pl.'s Third Am. Compl. at 9.

[7] Plaintiff also adds a claim for an order to compel issuance of a Social Security card for S.S.—a claim that, as Defendants note, is arguably beyond the scope of what this Court permitted Plaintiff to add in its July 24, 2020 opinion.  *See* Defs.' Mot. & Opp'n at 13 n.5.  However, as noted in Plaintiff's Third Amended Complaint, a CBRA is a necessary predicate to the issuance of a Social Security card.  *See* Pl.'s Third Am. Compl., Ex. Q.  Because the Court dismisses Plaintiff's claim regarding the issuance of the CBRA, the Court must necessarily dismiss Plaintiff's claims related to the issuance of a Social Security card.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for leave to amend the third amended complaint (ECF No. 171) and Plaintiff's motion to join Jennifer Wooton as a defendant (ECF No. 154).  It grants Defendants' motion to dismiss (ECF No. 186).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 16, 2020                                    RUDOLPH CONTRERAS
                                                            United States District Judge