UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK STONE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-3273 (RC) |
| | : | | |
| v. | : | Re Document No.: | 211 |
| | : | | |
| U.S. EMBASSY TOKYO *et al.*, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### DENYING DEFENDANTS' MOTION FOR ORDER REQUIRING PLAINTIFF TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT AND SANCTIONED

### I. INTRODUCTION

Plaintiff Jack Stone, proceeding *pro se*, sued the Department of State and the United States Embassy in Tokyo (together, "the Government") seeking, among other things, a U.S. passport for his first-born child. The Court has denied Stone's requested relief and Stone is currently appealing his case. The Government moved for an order requiring Stone to show cause why he should not be sanctioned for his willful and admitted violations of the Court's protective order. For the reasons discussed below, the Court will not sanction Stone now but warns that it may impose dismissal as a sanction if he attempts to bring additional claims.

### II. BACKGROUND

During litigation on Stone's request for a passport for his first-born child, the Government moved for *ex parte* and *in camera* review for parts of the administrative record. *See* Defs.' Mot. to Submit Portions of Admin. R. *Ex Parte* and *In Camera* or Under Seal and Subject to Protective Order, ECF No. 114-1. In the alternative, the Government moved to place parts of the administrative record under seal and subject to a protective order. *See id.* The Government's

motion sought to protect sensitive nonpublic information from the U.S. Department of State Foreign Affairs Manual ("FAM"). *Id*. Stone objected to *in camera* review. He argued that a protective order was sufficient and promised to adhere to such an order. *See* Pl.'s Resp. to Defs.' Ex Parte and In Camera Mot. at 8, ECF No. 125. Two weeks after making that promise, however, Stone wrote a letter to the Ambassadors of China, Iran, Russia, and Venezuela, in which he offered to disclose the FAM in exchange for assistance from those countries. *See* Pl.'s Resp. to Defs.' DE 140 ("Pl.'s DE 140 Resp.") at 1, 9–11, ECF No. 141.

The Court agreed to place the relevant portions of the FAM under seal and subject to a protective order, but it expressed "concern that mere weeks after" asserting he would comply with such an order, Stone offered to disclose sealed materials. *See Stone v. U.S. Embassy Tokyo (Stone II)*, No. 19-cv-3273, 2020 WL 5775196, at *4 (D.D.C. Sept. 28, 2020). The protective order explained that protected material could not be "disclosed or distributed to any person or entity" without the Court's authorization. Protective Order at 2, ECF No. 192. It also warned that "[a]ny violation . . . may result in consequences including, but not limited to, dismissal of Plaintiff's suit and/or a charge of contempt of Court." *Id.*

An hour after receiving the FAM, Stone quoted protected parts of it in an email to Judge Peter Messitte of the District of Maryland and Judge Beryl Howell of this district. *See* Pl.'s Resp. to Defs.' DE 218 and 219, at 10–12, ECF No. 221; *see also* Defs.' Mem. Supp. Mot. for Order to Show Cause Why Pl. Should Not Be Held in Contempt and Sanctioned ("Defs.' Mot.") at 6 & n.1, ECF No. 211-1. Three days later, Stone filed a publicly available document with this Court that quoted extensively from protected information in the FAM. *See* Pl.'s Resp. to Court's Oct. Min. Orders ("Pl.'s Min. Orders Resp."), ECF No. 208. In subsequent publicly available filings that are now sealed, Stone continued to quote from protected information in the FAM.

2

*See* Pl.'s Resp. to Defs.' DE 218 and 219. Stone even included his emails to Judge Messitte and Judge Howell in a publicly available filing in a parallel case in the Court of Claims. *See* Pl.'s Compl. in Court of Federal Claims, Ex. D., ECF No. 219. He then further disobeyed the protective order by publishing a blog post and a related PDF document containing protected information from the FAM. *See* Email from Pl. to Defs.' Counsel, ECF No. 229. He said that he sent the PDF document to "every child abduction NGO, to numerous attorneys who specialize in abduction cases, and every major media outlet." *Id.* at 2.

Stone admitted to disregarding the Court's warnings. After the Court issued the protective order, Stone stated, "Contreras, you can order what you want, but that doesn't mean I'll comply." Pl.'s Resp. to Defs.' DE 218 and 219, at 3. He further emphasized that he had "retained financing to produce a documentary on the underlying matters, and without fail the portions of text defendants don't want publicly exposed will be disclosed." *Id.* at 7. In addition, Stone has repeatedly used foul and threatening language against Government counsel and the Court. *See* Min. Order (Oct. 13, 2020); Order Granting Defs.' Mot. for Relief from Local Civil Rule 7(m), ECF No. 210; *see also, e.g.*, Email from Pl. to Ct. (Sept. 5, 2020), ECF No. 210-1; Pl.'s Resp. to Defs.' DE 238, ECF No. 240.

Since Stone's violations of the protective order, the Court disposed of his remaining claims. It has now dismissed or granted summary judgment on all his claims. *See Stone v. U.S. Embassy Tokyo (Stone I)*, No. 19-cv-3273, 2020 WL 4260711 (D.D.C. Jul. 24, 2020); *Stone v. U.S. Embassy Tokyo (Stone III)*, No. 19-cv-3273, 2020 WL 6701078 (D.D.C. Nov. 12, 2020); *Stone v. U.S. Embassy Tokyo (Stone IV)*, No. 19-cv-3273, 2020 WL 6746925 (D.D.C. Nov. 16, 2020); *see also Stone II*, 2020 WL 5775196. The case is currently on appeal. There is only one item outstanding on this Court's docket: the Government's motion for an order directing Stone to

show cause why he should not be sanctioned for violating the protective order. *See* Defs.' Mot. Today, the Court resolves that motion.

### III. LEGAL STANDARD

Courts have inherent power to impose sanctions to protect the integrity of the judicial process. *See Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474–75 (D.C. Cir. 1995); *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 43 (D.D.C. 2019). Courts also have sanction power under Federal Rule of Civil Procedure 37(b)(2), which provides that a court may sanction a party who "fails to obey an order to provide or permit discovery." Regardless of the source of sanction power that a court draws on, the relevant considerations are the same. *See Webb v. District of Columbia*, 146 F.3d 964, 971 n.15 (D.C. Cir. 1998). Although courts tend to be lenient with *pro se* litigants, sanctions may be warranted when the *pro se* party is aware of the rules and their consequences but violates them anyway. *See Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 151, 155 (D.D.C. 2003).

A court may dismiss an action "because of a party's failure to comply with court orders." *See Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990). Dismissal as a sanction is warranted when (1) there is clear and convincing evidence showing a violation occurred; and (2) a lesser sanction would not effectively punish and deter the misconduct. *See Mikkilineni*, 271 F. Supp. 2d at 154 (citing *Shepherd*, 62 F.3d at 1472). In its evaluation, a court may consider prejudice to the defendant, the effects of the plaintiff's misconduct on the judicial system, the need to deter the plaintiff's misconduct, and whether the plaintiff failed to comply with the order while aware of its consequences. *Id.* at 155. It does not need to try lesser sanctions before resorting to dismissal, but it does need to explain why lesser sanctions are inappropriate. *Webb*, 146 F.3d at 971–72; *Shepherd*, 62 F.3d at 1478.

## IV.  ANALYSIS

The Court concludes that Stone's actions are egregious enough to warrant dismissal as a sanction.  There is clear and convincing evidence that Stone willfully violated the protective order and that lesser sanctions will not sufficiently punish or deter his misconduct.  Nevertheless, there is no longer a case before the Court to dismiss.  If Stone attempts to file additional motions or claims to resuscitate his case, however, the Court will consider such a sanction.

### A.  Dismissal as a Sanction Is Warranted

Stone willfully violated the Court's protective order.  A litigant's willful disobedience of court orders—as opposed to inadvertent disobedience—supports dismissal.  *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (affirming dismissal sanction because plaintiffs' "wilful and unexcused violations of the protective order" qualified as "contumacious conduct").  And ignoring warnings is evidence of willfulness.  *See Arias v. Dyncorp Aerospace Operations, LLC*, 677 F. Supp. 2d 330, 332 (D.D.C. 2010).  Here, the protective order emphasized that Stone could not disclose or distribute the protected material without prior authorization.  Protective Order at 2.  It even warned that a violation of its terms could result in dismissal or a contempt charge.  *Id.*  Despite the order's clear and unambiguous terms, however, Stone waited less than an hour before commencing a string of violations.  After receiving the FAM, Stone emailed, publicly filed, and published protected material.  *See* Pl.'s Resp. to Defs.' DE 218 and 219; Pl.'s Min. Orders Resp; Email from Pl. to Defs.' Counsel.  Most egregiously, he admitted he had no regard for the protective order and swore to expose protected material in a documentary.  *See, e.g.*, Pl.'s Resp. to Defs.' DE 218 and 219, at 3.  Stone's repeated willful and admitted disobedience of the Court's protective order would support dismissal.

5

Lesser sanctions would not adequately punish or deter Stone's misconduct. Monetary sanctions are ineffective if it is unlikely that the plaintiff could pay fines or other monetary sanctions. *See Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003). That is true here. Stone says that he is unemployed and has no monthly income or cash on hand. *See* Pl.'s Mot. Appeal In Forma Pauperis at 3–4, ECF No. 233. He is therefore unlikely to be punished or deterred by monetary sanctions that he cannot pay. In addition, issue-related sanctions do not make sense here because the Court has already disposed of the merits of Stone's case. *Cf. Shepherd*, 62 F.3d at 1478 (defining issue-related sanctions as an "adverse evidentiary determination, along with the related sanction of precluding the admission of evidence"). Finally, civil contempt would be inappropriate. Its purpose is to force a party into compliance, *SEC v. Bankers All. Corp.*, 881 F. Supp. 673, 678 (D.D.C. 1995), but Stone's willful disclosure of protected portions of the FAM cannot be undone or corrected. So although dismissal is a sanction of last resort, *see Webb*, 146 F.3d at 971; *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996), it would be warranted here because other sanctions would not effectively punish or deter Stone from future misconduct.

Dismissal would also be proportionate to Stone's flagrant disregard of the protective order and the offensiveness of his conduct throughout this litigation. *See Bonds*, 93 F.3d at 808 (explaining that a court's choice of sanction should be proportionate to the party's offense). It is bad enough that Stone has repeatedly used foul and threatening language throughout this litigation. *See Kindig v. Whole Foods Mkt. Group, Inc.*, 971 F. Supp. 2d 37, 48 (D.D.C. 2013) (dismissing case partly because plaintiff used "invective" language against judges and parties). But Stone's conduct has not just been disrespectful—he willfully disregarded a protective order explicitly warning him that violations could lead to "dismissal of Plaintiff's suit." *See* Protective

6

Order at 2.  After representing that he would adhere to the order, Stone emailed, publicly filed, and published protected excerpts from the FAM.  Between Stone's utter disrespect for the Court and his blatant violations of the protective order, dismissal would be a proportionate sanction.

### B. The Court Will Not Sanction Stone For Now

While Stone's violations and attitude toward the Court warrant dismissal, the Court is unable to dismiss his case because there are no claims pending before it.  It has already ruled on the merits of the case, and Stone is currently appealing the Court's decisions.  *See Stone I*, 2020 WL 4260711; *Stone III*, 2020 WL 6701078; *Stone IV*, 2020 WL 6746925; *see also* Notice of Appeal, ECF No. 234.

But the Court would be within its authority to impose dismissal as a sanction if Stone brings new claims or tries to resuscitate his old ones.  In *Mikkilineni*, the court found that dismissal of a *pro se* plaintiff's case was warranted because he refiled a complaint identical to one the court had struck five weeks earlier.  *See Mikkilineni*, 271 F. Supp. 2d at 155.  Further disregarding the court's order, the plaintiff moved to consolidate the two cases, which would have effectively revived the first action.  *Id.*  Dismissal was the only option to appropriately deter and punish the plaintiff for wasting judicial resources and challenging the integrity of court orders.  *Id.* at 156.  Similarly, in *Reynolds*, the plaintiff tried to revive a suit after the district court granted summary judgment and the circuit court affirmed.  *See Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 21–23 (D.D.C. 2004).  He filed a second complaint nearly identical to his original one (which was dismissed) and then asked to add the same claim to an unrelated matter against the same defendant.  *See id.* at 22–23.  The court found that the plaintiff's frivolous and repetitive conduct constituted bad faith, dismissed his case, and granted the defendant's motion for Rule 11 sanctions.  *See id.* at 22 n.3, 24–26.

Just like the *Mikkilineni* and *Reynolds* courts, this Court will be wary of any attempt by Stone to revive his suit. Stone willfully disobeyed the protective order and consistently displays an attitude of disrespect toward the Court. On top of all that, he has already filed numerous repetitive motions that have drained the Court's resources. If he tries to renew his case with additional such motions, the Court may well hold his history of willful disobedience and attitude of disrespect against him. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 706–09 (D.C. 2013) (remarking that trial judge could have justifiably dismissed case as sanction when plaintiff disregarded court's order after having sapped court resources with numerous filings); *see also Bristol*, 901 F.2d at 167 (affirming dismissal and refusal to reinstate case when plaintiff disobeyed court order to appear at status conference). For now, however, the Court will not require him to show cause as to why he should not be sanctioned.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for order to show cause (ECF No. 211) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 23, 2021                                                                 RUDOLPH CONTRERAS
                                                                                                          United States District Judge

8